# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

--------------------------------------------------------------------x

EAST 64TH STREET REALTY PARTNERS LLC,

                                  Plaintiff,

                    -against-

184 EAST 64TH STREET HOLDING LLC,
184 EAST 64TH STREET ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 184 LLC,

                               Defendants.

--------------------------------------------------------------------x

Plaintiff designates Westchester
County as the Place of Trial

Index No.:

**SUMMONS**

To the above named Defendants:

       **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or **within** 30 days after the service is complete if this
summons is not personally delivered to you **within the** State of New York); and in case of your
failure to appear or answer, judgment will be **taken** against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:      184 EAST 64TH STREET HOLDING LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                184 EAST 64TH STREET ASSOCAITES LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                MICHAEL PAUL D'ALESSIO
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                  White Plains, New York 10601

                                MICHAEL PAUL ENTERPRISES, LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                  White Plains, New York 10601

FILED: WESTCHESTER COUNTY CLERK 03/13/2018 05:55 PM
INDEX NO. 53547/2018
NYSCEF DOC. NO. 1
18-22552-shl   Doc 33-3   Filed 06/08/18   Entered 06/08/18 16:17:13   Exhibit C
RECEIVED NYSCEF: 03/13/2018
Pg 3 of 25

BLUESTONE 184 LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
      March 13, 2018

                        **ROSENFELD & KAPLAN, LLP**

By:    Tab K. Rosenfeld
        Steven M. Kaplan
        Nicole E. Meyer
        1180 Avenue of the Americas, Suite 1920
        New York, NY 10036
        (212) 682-1400
        *Attorneys for Plaintiff*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------x
EAST 64TH STREET REALTY PARTNERS LLC,

                            Plaintiff,                Index No.:

           -against-                   **VERIFIED COMPLAINT**

184 EAST 64TH STREET HOLDING LLC,
184 EAST 64TH STREET ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 184 LLC,

                         Defendants.
------------------------------------------------------------------x

       Plaintiff East 64th Street Realty Partners, LLC ("plaintiff"), by its attorneys, Rosenfeld &

Kaplan, LLP, for its Verified Complaint against defendants 184 East 64th Street Holding LLC,

184 East 64th Street Associates LLC, Michael Paul D'Alessio, Michael Paul Enterprises, LLC,

and Bluestone 184 LLC, alleges as follows:

## NATURE OF THE ACTION

    1.      Plaintiff brings this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiff, an investor in a real estate project

devised by defendants located at 184 East 64th Street, New York, New York (the "East 64th

Street Project").

    2.      The defendants purchased the property with a plan to demolish the existing five-

story building and construct and develop in its place a new six-story building containing five

newly-constructed luxury residential condominium units to be offered for sale.

3.  Plaintiff was induced by defendants to invest millions of dollars in the East 64th Street Project, with such investment made through 184 East 84th Street Holding LLC, which D'Alessio promised would bring in an "equity return" of 16% per year and would allow for quick turn-around on a return of all capital invested.

4.  Rather than putting the funds toward their intended use, however, defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the East 64th Street Project with other projects owned and controlled by D'Alessio, using the assets of East 64th Holding to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.  Having divested 184 East 64th Street Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiff and other investors that the East 64th Street Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.  As a result of defendants' acts of financial defalcation, the East 64th Street Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiff and other investors.

## PARTIES

7.      Plaintiff East 64th Street Realty Partners, LLC ("East 64th" or "plaintiff") is a domestic limited liability company with a principal place of business of 542 Main Street, New Rochelle, New York, NY 10801.  Plaintiff is a member of defendant 184 East 64th Street Holding LLC.

8.      Defendant 184 East 64th Street Holding LLC ("East 64th Holding") is a New York limited liability company formed in 2015 as an investment vehicle to develop real property located at 184 East 64th Street, New York, New York (the "Property").  East 64th Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC 12 Water Street, White Plains, New York 10601.  East 64th Holding is the sole member of 184 East 64th Street Associates LLC.

9.      Defendant 184 East 64th Street Associates LLC ("East 64th Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601.  East 64th Associates holds title to the Property.

10.     Defendant Michael Paul D'Alessio is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.

11.     Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited liability company with an address at 12 Water Street, White Plains, New York 10601.  Upon information and belief, MPE is controlled by D'Alessio.

12.     Defendant Bluestone 184 LLC ("Bluestone") is a domestic limited liability company formed in 2015.  Upon information and belief, Bluestone is owned and controlled by D'Alessio.  Bluestone is the managing member of East 64th Holding and maintains its offices at 12 Water Street, #204, White Plains, New York 10601.

3

## FACTS

13.    East 64th Holding was created in 2015 by D'Alessio to acquire the Property through East 64th Associates and thereafter to demolish the existing five-story building and construct and develop in its place a new six-story building with five luxury condominium units to be sold upon completion.

14.    East 64th Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

15.    All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member, with construction to be done by MPE, an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601, serving as the office for the Company, with a promised "equity return" of 10% to 16% per year, with a quick turn-around on a return of all capital invested, and with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

16.    Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

17.    East 64th Holding followed the investment structure used by D'Alessio.

18.    In East 64th Holding's Confidential Private Placement Memorandum (the "PPM") dated April 20, 2015, East 64th Holding, Bluestone and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $23,447,200."

4

FILED: WESTCHESTER COUNTY CLERK 03/13/2018 05:55 PM
INDEX NO. 53547/2018
NYSCEF DOC. NO. 2
18-22552-shl    Doc 33-3    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit C
RECEIVED NYSCEF: 03/13/2018
Pg 8 of 25

19.    Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the $23,447,200 Project cost. The *Pro Forma* listed the costs as: Land Purchase Price, $14,250,000; Soft Costs, $1,925,250; and Hard Costs, $7,271,950.

20.    The *Pro Forma* also listed the source of funding for the Project Costs as: Senior Debt, $11,723,600; Sponsor Equity Contribution $2,423,600; and Joint Venture Equity Partner's Contribution, $9,300,000.

21.    The PPM stated in Section J, paragraph 1, that the construction of the East 64th Street Project would be done by MPE, an affiliate of Bluestone and D'Alessio, for a "fixed price of $7,272,950," and provided that the "Manager has personally guaranteed payment of hard costs of construction in excess of the contract sum."

22.    The PPM provided that "Members of the Company, other than the Managing Member . . . are entitled to (a) an Equity Return of 16% per annum, payable monthly on the amount of their Capital Contribution, beginning as of the date such Capital Contribution is actually fully paid to the Company; and (b) return of the full amount of their Capital Contributions within 24 months."

23.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

24.    The PPM identified D'Alessio as the manager of East 64th Holding.

25.    The PPM identified Bluestone as the managing member of East 64th Holding and identified D'Alessio as the managing member of Bluestone and its sole manager.

26.     The PPM provided that while funds raised or acquired by East 64th Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

27.     On or about May 5, 2015, plaintiff executed a subscription agreement for 20 "units" in East 64th Holding, which afforded it a 10% interest in East 64th Holding.

28.     Plaintiff thereafter wired the sum of $1,860,000 to East 64th Holding as payment for its 10% interest in the company.

29.     Plaintiff and Bluestone thereafter entered into an Operating Agreement for East 64th Holding (the "Operating Agreement").

30.     D'Alessio, on behalf of Bluestone and individually as "Guarantor," signed the Operating Agreement.

31.     Paragraph 6 of the Operating Agreement afforded Bluestone, as manager, with "full and complete authority, power and discretion" to control all of East 64th Holding's affairs, including full control over the financial affairs of East 64th Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

32.     D'Alessio structured the investment so that money from investors would flow into East 64th Holding and would be funneled to East 64th Associates, and then to MPE, purportedly for work to be done on the East 64th Street Project.

33.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiff and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

34.     At the time that he was soliciting investments from the plaintiff and others,
D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the
ability to satisfy his personal obligations, and could not timely complete any of his promised
developments in order to return either capital to his investors or pay the promised preferential
return.

35.     Bluestone was, according to the PPM, supposed to invest $2,423,600. Upon
information and belief, instead of making an equity investment, D'Alessio and Bluestone moved
money into and out of East 64th Holding's account, depositing funds from unknown sources and
then withdrawing those funds.

36.     Upon information and belief, the source of the funds was MPE, where funds from
multiple D'Alessio sponsored investments were co-mingled and thereafter used for purposes in
direct violation of the operating agreements of each of those investments.

37.     According to East 64th Holding's books and records, in 2015, Bluestone
contributed $2,000,000 in equity investment. It thereafter took back $500,000 of those funds,
leaving an ending balance of $1,500,000 as of December 31, 2015.

38.     In 2017, Bluestone contributed an additional $2,442,000 in equity investments,
but withdrew $2,366,000.

39.     As of December 31, 2017, the net equity investment of Bluestone was
$1,576,000, a shortfall of $847,600.

40.     Neither D'Alessio nor any of the defendants disclosed to plaintiff or any other
investors that Bluestone was moving money into and out of the East 64th Holding account.

41.     Neither D'Alessio nor any of the defendants disclosed to plaintiff or any other
investors that Bluestone had not made its equity contribution.

42.    Instead, on October 26, 2017 (the "October Letter") D'Alessio wrote to plaintiff and other investors claiming that the problems with the East 64th Street Project arose because of construction delays. D'Alessio wrote: "I have cancelled my country club memberships which were used in part to conduct business and entertainment on behalf of my businesses. I have borrowed up to the limit on my lines of credit, and mortgaged my home in order to keep investors current."

43.    Upon information and belief, the transfers of funds into and out of the East 64th Holding account were in furtherance of the financial fraud being engaged in by D'Alessio, whereby he was moving funds between his various sponsored investments, using MPE as his conduit, and in total disregard for the manner in which such funds could be used under the terms of the applicable operating agreements of the D'Alessio-sponsored investments.

44.    In the PPM and Operating Agreement, D'Alessio and Bluestone represented that construction would be done by MPE for a fixed price of $7,271,950. That fixed price included a supervisory fee and construction management fee of $714,500.

45.    The PPM stated that "The Manager [D'Alessio] has personally guaranteed payment of hard costs of construction in excess of the contract sum."

46.    The books and records of East 64th Holding reflect that in 2015, MPE was paid the sum of $5,029,010, and in 2016-2017, the sum of $6,963,103. Additional vendors were paid $6,147, bringing the total construction costs to $11,998,260.

47.    As a result of journal entries and other manipulations of the East 64th Holding books and records, by the end of 2017, those books still reflected "net construction" hard costs of $8,446,640, still $1,174,690 in excess of the fixed price cited in the PPM.

FILED: WESTCHESTER COUNTY CLERK 03/13/2018 05:55 PM
NYSCEF DOC. NO. 2
INDEX NO. 53547/2018
RECEIVED NYSCEF: 03/13/2018
18-22552-shl    Doc 33-3    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit C
Pg 12 of 25

48.     Additional payments were made to MPE during the period from 2015 to 2017 totaling $540,000. These were "categorized" as "soft cost" payments.

49.     Upon information and belief, fictitious records were created by MPE and the defendants to document construction expenses.

50.     Upon information and belief, funds were transferred from East 64th Holding to East 64th Associates and then MPE for the ostensible purpose of paying subcontractor invoices which were then not paid and which remain due and owing.

51.     The books and records of East 64th Holding reflect numerous other unauthorized financial transactions whereby money raised or secured by East 64th Holding was looted by D'Alessio and the defendants.

52.     During 2016, there were numerous payments between East 64th Associates and D'Alessio, which totaled a net of $1,328,000 to D'Alessio from East 64th Associates.

53.     On August 15, 2016, East 64th Associates received funds of $2,166,936 from a construction loan. On that same day, East 64th Associates wrote a check to D'Alessio for $2,100,000.

54.     During 2017, there were numerous payments between D'Alessio and East 64th Associates, which totaled a net of $259,440 to D'Alessio from East 64th Associates.

55.     On September 19, 2017, East 64th Holding received funds of $4,500,000 from a refinanced bank loan. Two days later, on September 21, 2017, D'Alessio received two checks totaling $933,440 recorded in his loan payable account on the balance sheet as well as a check for $2,366,000 recorded as an equity draw against the capital investment of East 64th Holding.

9

56.     Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiff, choosing instead to conceal their financial improprieties.

57.     Despite the fact that the costs of the East 64th Street Project were fixed, consisting primarily of the purchase price and the construction contract, with any cost overruns guaranteed by Bluestone and D'Alessio, since the commencement of the Project, the defendants increased the amount of senior (bank) debt by almost $11 million, and East 64th Holding now has senior debt of at least $22 million, almost double the amount list in the *Pro Forma* provided to investors.

58.     By letter dated October 26, 2017 (the "October Letter"), D'Alessio, writing on behalf of East 64th Holding, wrote to investors, stating that while the building is 100% complete and the company has obtained the Final Certificate of Occupancy, East 64th Holding has been unsuccessful in selling the units.

59.     The October Letter went on to state that three of the five units are currently rented with a total monthly income of $100,000 and that the current rental income is sufficient to cover operating expenses and a portion of the secured debt service but, with only three units rented, there isn't enough cash flow to cover the entire debt service and make dividend payments.

60.     D'Alessio then stated that he was evaluating all of his real estate holdings and monetizing them where appropriate and doing "everything possible to honor the agreement" with plaintiff and would follow up with articulated plans and potential alternative structures.

61.     The October Letter did not disclose the fact that senior debt on the underlying Property had increased by approximately 100% (going from $11 million to $22 million), that Bluestone had already taken out much of its capital, that construction costs had been fabricated,

10

that sub-contractors had not been paid, that MPE had been paid sums far in excess of that to which it was contractually entitled, that D'Alessio had moved millions of dollars into his own account, and that Bluestone and D'Alessio had moved money into and out of the East 64th Holding account as if it were their personal piggy bank.

62.    By letter dated November 27, 2017 (the "November Letter"), D'Alessio, writing on behalf of East 64th Holding, wrote to plaintiff advising it that he retained a national Financial Advisory firm, Ankura Consulting Group, LLC, to help him evaluate his current situation and recommend possible actions for his properties.

63.    He went on to state that he believed that best possible approach for the East 64th Street Project would be: a) to defer all sales activities until market conditions improve; b) to convert any vacancies in the Property to rentals; c) to request that all investors release their guaranteed equity returns and convert to a distribution of profits every January starting in 2019 based upon the prior twelve-month results; and d) to continue debt service payments allowing for principal amortization reducing the senior debt.

64.    By letter dated February 26, 2018 (the "February Letter"), D'Alessio wrote to investors in all of the D'Alessio Holding Companies to advise them that he decided to turn over the keys and deeds over to the banks to avoid the high cost of foreclosure.

65.    The "equity return" promised to plaintiff and other investors has been discontinued.

66.    Upon information and belief, defendants are attempting to sell the Property and extinguish their obligations to the investors in East 64th Holding.

67.    Upon information and belief, substantial funds were transferred from East 64th Associates to MPE, where such funds were either co-mingled with funds of other D'Alessio

11

Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

68.     Upon information and belief, funds were taken by the defendants for construction that did not take place.

69.     Upon information and belief, the defendants utilized the funds of East 64th Holding to pay for fictitious expenses but recorded such expenditures in such a way as to conceal the misuse of funds belonging to East 64th Associates.

70.     Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiff and earmarked for the East 64th Street Project for his own personal use.

71.     Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

## **FIRST CAUSE OF ACTION**
(Fraud as Against Defendants D'Alessio, East 64th Holding and Bluestone)

72.     Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 71 above, as if fully set forth herein.

73.     To induce the plaintiff to invest in East 64th Holding, D'Alessio, on behalf of himself and on behalf of East 64[nd] Holding and Bluestone, made multiple misrepresentations, including, without limitation:

    a.    That the funds raised by East 64th Holding would be used exclusively on behalf of East 64th Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

12

b. That the full capital of each investor would be returned within 24 months;

c. That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns; and

d. That investments made into East 64th Holding would receive a return of their capital before D'Alessio received a repayment of his investment or any profit distribution.

74.    The foregoing representations were false and D'Alessio, on behalf of himself, East 64th Holding, and Bluestone, made these representations knowing them to be false.

75.    At the time that he was making these statements to induce investments in East 64th Holding, D'Alessio knew:

a. that money raised by East 64th Holding would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b. that the East 64th Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months;

c. that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors; and

d. that D'Alessio intended to remove his funds - - whether through construction "advances," loans or distributions in advance of repaying the capital of investors.

76.    D'Alessio, on behalf of himself, East 64th Holding, and Bluestone, made these representations to the plaintiff in order to induce it to invest the East 64th Street Project.

77. Plaintiff reasonably relied on the accuracy of the information provided to it by D'Alessio, on behalf of himself, East 64th Holding, and Bluestone.

78. As a direct and proximate result of the fraud, plaintiff has been damaged in an amount to be determined at trial, but not less than $2,000,000, with interest thereon.

79. The conduct of East 64th Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiff's rights, entitling plaintiff to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

80. Plaintiff repeats, realleges and incorporates each of the allegations set forth in paragraphs 1 through 79 above, as if fully set forth in full herein.

81. Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiff as described above.

82. D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

83. The objective of the conspiracy was to induce the plaintiff to invest in East 64th Holding based on the false and fraudulent representations set forth above.

84. Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from East 64th Holding to East 64th Associates and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to East 64th Holding or the East 64th Street Project.

85.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiff.

86.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiff's rights.

87.     Defendants intended these actions to occur and intended to cause injury to plaintiff as a part of their conspiratorial scheme.

88.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiff, defendants are liable for the above-described acts committed by each conspirator.

89.     As a result of these acts and conduct, plaintiff has suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiff is entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $2,000,000, plus interest and costs.

90.     Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiff's rights, entitling plaintiff to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, East 64th Associates, and MPE)

91.     Plaintiff repeats, realleges and incorporates each of the allegations set forth in paragraphs 1 through 90 above, as if fully set forth in full herein.

15

92.    Defendants D'Alessio, East 64th Associates, and MPE caused funds that were intended for the development of the East 64th Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

93.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from East 64th Holding.

94.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiff.

95.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them. No other remedy at law can adequately compensate plaintiff for the economic damages resulting to it from the defendants' wrongful actions as alleged herein.

96.    By virtue of the foregoing, plaintiff seeks damages in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

## FOURTH CAUSE OF ACTION
### (Conversion against all Defendants)

97.    Plaintiff repeats, realleges, and incorporates each of the allegations set forth in paragraphs 1 through 96 above, as if fully set forth in full herein.

98.    Plaintiff invested funds into East 64th Holding for the purposes of construction and development of the East 64th Street Project and to secure the returns that were promised.

99.    Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiff.

16

100.    As a proximate result of defendants' acts of conversion, plaintiff has been deprived of its rights, and has suffered damages in an amount to be determined, but believed to be in excess of $5,000,000, plus interest and costs.

101.    By virtue of the foregoing, plaintiff seeks damages from defendants in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

### FIFTH CAUSE OF ACTION
(Breach of Guaranty against D'Alessio)

102.    Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 101 above, as if fully set forth herein.

103.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

104.    At all times, D'Alessio has served as the manager of East 64th Holding.

105.    D'Alessio executed the Operating Agreement of East 64th Holding in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

106.    East 64th Holding has discontinued the payment of the return on investor equity.

107.    There remains due and owing to the plaintiff unpaid returns on the equity invested in an amount to be determined at trial.

108.    There remains due and owing to the plaintiff unrepaid investor capital of at least $1,860,000.

109.    By virtue of the foregoing, plaintiff is entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $2,000,000, plus interest and costs.

17

## SIXTH CAUSE OF ACTION
(Breach of Contract as against East 64th Holding)

110.    Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 9 above, as if fully set forth herein.

111.    The Operating Agreement of East 64th Holding constitutes a valid and binding contract between plaintiff and defendant East 64th Holding.

112.    Plaintiff has performed all of its material obligations under that contract.

113.    East 64th Holding has breached its obligations to plaintiff under the contract by failing to pay the returns on equity invested.

114.    East 64th Holding has breached its obligations to plaintiff under the contract by failing to repay investor capital of at least $1,860,000.

115.    By virtue of the foregoing, plaintiff is entitled to the recovery of damages as against East 64th Holding in an amount to be determined at trial, but believed to be excess of $2,000,000, plus interest and costs.

## SEVENTH CAUSE OF ACTION
(For a Constructive Trust against D'Alessio, East 64th Associates, and MPE)

116.    Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 115 above, as if fully set forth herein.

117.    Pursuant to the terms of the Operating Agreement, D'Alessio and Bluestone were fiduciaries obligated to act in the best interest of East 64th Holding and its investors.

118.    D'Alessio and Bluestone, on behalf of themselves and East 64th Associates and MPE, expressly promised that they would utilize the funds invested by plaintiff and other investors, and the funds obtained from other sources, solely for the development of the East 64th Street Project and not to enrich themselves.

18

119.     The plaintiff invested in Est 64th Holding in reliance on the representations made to it in the PPM and by D'Alessio and Bluestone.

120.     D'Alessio has threatened to turn over the Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiff and all other investors of 100% of their equity.

121.     Upon information and belief, D'Alessio is attempting to sell the Property to pay off his obligations and to divest the plaintiff and all other investors of 100% of their equity.

122.     A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to satisfy their obligations while simultaneously stripping the plaintiff of all of its capital and all of its interest in the Property.

123.     Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

124.     Plaintiff repeats, realleges and incorporates paragraphs 1 through 123 above as if fully set forth herein.

125.     In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

126.     Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiff will suffer irreparable harm, in that plaintiff will be divested of its capital interest in the Property.

19

127.    Plaintiff has no adequate remedy at law.

128.    Accordingly, plaintiff is entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against defendants D'Alessio, East 64th Holding, and Bluestone, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.    On the Second Cause of Action, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.    On the Third Cause of Action as against defendants D'Alessio, East 64th Associates, and MPE, awarding plaintiff damages in an amount to be determined at trial, but not less than $5,000,000, with interest thereon;

d.    On the Fourth Cause of Action, awarding plaintiff damages in an amount to be determined at trial, but not less than $5,000,000, with interest thereon;

e.    On the Fifth Cause of Action as against D'Alessio, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon;

f.    On the Sixth Cause of Action as against East 64th Holding, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon;

g.    On the Seventh Cause of Action as against defendants D'Alessio, East 64th Associates, and MPE, imposing a constructive trust with respect to the real property located at

184 East 64th Street, New York, New York, or with respect to any proceeds paid as a result of any sale of the real property located at 184 East 64th Street, New York, New York;

       h.      On the Eighth Cause of Action, issuing an Order preliminarily and permanently enjoining and restraining defendants from selling or otherwise transferring the real property located at 184 East 64th Street, New York, New York;

       i.      Awarding the costs and fees, including reasonable attorneys' fees, to the plaintiff; and

       j.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
      March 13, 2018

                       ROSENFELD & KAPLAN, LLP

By: _____
                       Tab K. Rosenfeld
                       Steven M. Kaplan
                       Nicole E. Meyer
                       1180 Avenue of the Americas
                       Suite 1920
                       New York, New York 10036
                       (212) 682-1400
                       *Attorneys for plaintiff*

FILED: WESTCHESTER COUNTY CLERK 03/13/2018 05:55 PM
INDEX NO. 53547/2018
NYSCEF DOC. NO. 2
18-22552-shl    Doc 33-3    Filed 06/08/18    Entered 06/08/18 16:17:13    Exhibit C
RECEIVED NYSCEF: 03/13/2018
Pg 25 of 25

## VERIFICATION

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK  )

I, Tab K. Rosenfeld, affirm that I am an attorney admitted to practice law in the courts of the State of New York, and that I am the attorney of record for the plaintiff in this matter.  I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe them to be true.  The reason this verification is made by me and not by the plaintiff is because the plaintiff resides outside the county where the office with which I am associated maintains its office.

Dated: New York, New York
       March 13, 2018

_____
          Tab K. Rosenfeld