# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MICHAEL P. D'ALESSIO, *et al.*,<br><br>   Debtor.<br><br>―――――――――――――――――――<br><br>BRUCE AZUS, DAVID AZUS, IRA GORDON, STEVEN GUTENPLAN, CHARLES HIRSCH, WILLIAM JEBAILY, TINA JEBAILY-POST, ALLAN MILLER, DAVID MILLER, DAVID SAMUELS, EVAN STEINBACH, DAVID LEVY, RITA LEVY, JOINT VENTURE MBP, LLC, TPS INVESTMENTS, INC., EAA INVESTMENTS, INC., REBECCA LEVY AND MATTHEW LEVY<br><br>   Plaintiffs,<br><br>v.<br><br>MICHAEL P. D'ALESSIO,<br><br>   Defendant. | Case No. 18-22552 (RDD)<br><br>Chapter 7<br><br>(Jointly Administered)<br><br><br><br><br><br><br><br>Adv. Proc. No. _____ |

## COMPLAINT FOR FRAUD AND TO DETERMINE DISCHARGABILITY OF DEBT UNDER 11 U.S.C. §§ 523(a)(2), (4), AND (6)

COMES NOW Bruce Azus, David Azus, Ira Gordon, Steven Gutenplan, Charles Hirsch, William Jebaily, Tina Jebaily-Post, Allan Miller, David Miller, David Samuels, Evan Steinbach, David Levy, Rita Levy, Joint Venture MBP, LLC, TPS Investments, Inc., EAA Investments, Inc., Rebecca Levy and Matthew Levy (collectively, the "**Plaintiffs**"), by and through undersigned counsel, and hereby file this *Complaint To Determine the Dischargeability of Debt Under 11 U.S.C. §§ 523(a)(2), (4), and (6),* (the "**Complaint**") requesting the Court determine that the debt owed by chapter 7 debtor Michael P. D'Alessio (the "**Debtor**") to the Plaintiffs is

nondischargeable. In support of the Complaint, the Plaintiffs respectfully represent as follows:

## PROCEDURAL HISTORY

1. On April 17, 2018, an involuntary petition under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") was filed against the Debtor by petitioning creditors Greater Hudson Bank, the Westchester Bank and BNB Bank.

2. On May 17, 2018, an order for relief was entered on the consent of the Debtor (the "**Petition Date**").

3. On May 30, 2018, the Debtor filed his Schedules of Assets and Liabilities (the "**Schedules**"), Statement of Financial Affairs (the "**SOFA**") and related documents.

4. On June 14, 2018, a meeting of creditors was held pursuant to 11 U.S.C. § 341(a) (the "**341 Meeting**").

5. The Debtor's bankruptcy is jointly administered with the chapter 7 bankruptcy cases of twenty-four (24) related entities (collectively, the "**Chapter 7 D'Alessio Entities**").[1]

6. On July 12, 2018, a meeting of creditors was held with respect to the Chapter 7 D'Alessio Entities pursuant to 11 U.S.C. § 341(a) (the "**D'Alessio Entities 341 Meeting**").

7. The D'Alessio Entities 341 Meeting was continued to August 23, 2018.

## PARTIES TO THE ACTION, JURISDICTION AND VENUE

8. Plaintiffs are all residents of New York or Pennsylvania.

---

[1] The Chapter 7 D'Alessio Entities are as follows: Michael Paul Enterprises LLC (18-20004-rdd); East 62nd Street Holding LLC (18-20005-rdd); 145-147 East 64th Street Holding LLC (18-22886-rdd); 184 East 64th Street Associates LLC (18-22887-rdd); 184 Bluestone 184 LLC (18-22888-rdd); Bluestone 67 LLC (18-22889-rdd); 227 E 67th Street Associates LLC (18-22890-rdd); 227 E 67th Street Holding LLC (18-22891-rdd); 145-147 East 62nd Street Associates LLC (18-22892-rdd); Bluestone 163-165 LLC (18-22893-rdd); 163-165 East 62nd Street Associates LLC (18-22894-rdd); 163-165 East 62nd Street Holding LLC (18-22895-rdd); 3 Sandpiper Court Holding LLC (18-22904-rdd); 45 Middle Pond Road Associates LLC (18-22909-rdd); 43 Middle Pond Road Associates LLC (18-22910-rdd); 41 Middle Pond Road Associates LLC (18-22911-rdd); 43 Middle Pond Road Holding LLC (18-22952-rdd); 41-45 MPR Holding LLC (18-22953-rdd); Bluestone Sandpiper LLC (18-22954-rdd); 3 Sandpiper Court LLC (18-22955-rdd); 15-17 Circle Holding LLC (18-22965-rdd); MBI Partners LLC (18-22967-rdd); 15 Circle Rd-MBI LLC (18-22991-rdd); and 17 Circle Rd-MBI LLC (18-22992-rdd).

9. Plaintiff Joint Venture MBP, LLC is a limited liability corporation organized under the laws of New York.[2]

10. Plaintiffs TPS Investments, Inc. ("**TPS**") and EAA Investments, Inc. ("**EAA**) are corporations organized under the laws of New York.[3]

11. Debtor Michael P. D'Alessio is an individual residing in the State of New York.

12. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. The subject matter of the Complaint is a core proceeding under 28 U.S.C. § 157(b)(2)(J). The statutory predicate for the relief requested herein are Sections 523(a)(2), (4), and (6) of the Bankruptcy Code and Bankruptcy Rule 4007.

13. Venue of this adversary proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1391, 1408, and 1409.

## FACTUAL ALLEGATIONS

14. The Debtor holds an interest in over seventy-four (74) entities, including the Chapter 7 D'Alessio Entities (together, the "**D'Alessio Entities**" and each individually a "**D'Alessio Entity**").

15. Upon information and belief, prior to the Petition Date, the Debtor used the D'Alessio Entities to carry out a massive fraud on numerous investors, including the Plaintiffs, by soliciting investments in various real estate projects with complex financing arrangements utilizing knowingly false material information, and then utilizing those investments to enrich himself or pay other investors in order to perpetrate the fraud.

---

[2] Plaintiff Charles Hirsch holds his interest in the D'Alessio Entity (defined in paragraph 14) through Plaintiff Joint Venture MBP, LLC.
[3] Plaintiff Evan Steinbach invested in the the D'Alessio Entities (defined in paragraph 14) through TPS and EAA.

16.     Upon information and belief, Debtor used the D'Alessio Entities to raise over $150 million dollars from investors, including Plaintiffs, for these real estate projects.

17.     Specifically, the Debtor received in excess of $2,810,500 from Plaintiffs in exchange for ownership interests in certain of the D'Alessio Entities (collectively, the "**Investments**").

18.     All of the materials used to induce Plaintiffs' Investments contained promises for various rates of annual "equity returns" on these Investments, and Debtor guaranteed to Plaintiffs that such returns would in fact be received.

**The Debtor Used the D'Alessio Entities as a Mechanism for a Massive Fraudulent Scheme**

19.     The Debtor's fraud was perpetrated through the use of the D'Alessio Entities.

20.     The Debtor created the D'Alessio Entities as real estate investment companies, in which the Debtor or an affiliated company would serve as the managing member, with sole control over that entity's finances.  The Debtor approached Plaintiffs and other investors and induced them into purchasing "subscriptions" – minority equity interests – in individual D'Alessio Entities that themselves held fee title specific properties for development.  The Debtor solicited Plaintiffs' Investments through offerings, direct solicitations and other representations, utilizing knowingly false material information.

21.     The following chart traces Investments made by the Plaintiffs[4] to particular D'Alessio Entities:

---

[4] The Plaintiffs are also scheduled as creditors on the Debtor's Schedule E/F.

| Plaintiff | 227 E 67th Street Holding LLC | 163-165 East 62nd Street Holding LLC | 184 East 64th Street Holding LLC | 15-17 Circle Holding LLC | 3 Sandpiper Court Holding LLC | 43 Middle Pond Road Holding LLC | 323 E. 53rd St. Holding LLC | 2800 Bruckner Holding LLC |
|---|---|---|---|---|---|---|---|---|
| Bruce Azus | $67,000 | $100,000 | $93,000 | $50,000 | $50,0000 | | $105,600 | |
| David Azus | | | | | | | $52,800 | |
| Ira Gordon | $67,000 | | | | | | $52,800 | |
| Steven Gutenplan | $67,000 | | | | | | | |
| Charles Hirsch[5] | | | | | | | $528,000 | |
| William Jebailey | | $100,000 | $186,000 | | | | | |
| Tina Jebailey-Post | | | $93,000 | | | | | |
| Allan Miller | $134,000 | | | | | $50,000 | | $100,000 |
| David Miller | $134,000 | | | | | | | $50,000 |
| David Samuels | $67,000 | | | | | $100,000 | | |
| Evan Steinbach[6] | $33,500 | $100,000 | | | | | $52,800 | |
| David Levy | $33,500 | $50,000 | $46,500 | | $25,000 | | | |
| Rita Levy | $33,500 | $50,000 | $46,500 | | $25,000 | | | |
| Rebecca Levy | $33,500 | | | | | | | |
| Matthew Levy | $33,500 | | | | | | | |
| Totals | $703,500 | $400,000 | $465,000 | $50,000 | $100,000 | $150,000 | $792,000 | $150,000 |
| | | | | | | | | $2,810,500 |

---

[5] Plaintiff Charles Hirsch holds his interest in 323 E. 53rd St. Holding, LLC through Plaintiff Joint Venture MBP, LLC.

[6] Plaintiff Evan Steinbach holds his interest in 227 E 67th Street Holding, LLC, 163-165 East 62nd Street Holding, LLC and 323 E. 53rd St. Holding, LLC through TPS Investments, and EAA.

- 5 -

22. The Debtor knowingly and falsely represented to the Plaintiffs that each D'Alessio Entity would use its capital Investments to purchase property for real estate construction and development, with the construction work ostensibly carried out by an entity affiliated with the Debtor.

23. The Debtor guaranteed all construction cost overruns exceeding the amount of purported fixed price contracts with the Debtor's affiliated construction company, and knowingly falsely represented to the Plaintiffs that he would make a capital contribution of a fixed amount for each project.

24. In actuality, at the time the Debtor was soliciting investments from the Plaintiffs and others, the Debtor lacked the financing to meet his capital contribution obligations on the various projects and he knew that he could not complete the various promised developments in order to either return capital to the Plaintiffs or pay the promised equity returns.

25. In almost every instance either no or very little construction took place on the properties, despite payments being remitted from the D'Alessio Entities to the Debtor's construction affiliates.

26. Upon information and belief, the Debtor comingled funds he raised among the D'Alessio Entities, including the Plaintiff's Investments, which were otherwise earmarked for specific projects. These funds were then funneled and otherwise diverted through the various D'Alessio Entities or to the Debtor himself.

27. The Debtor also testified in his 341 Meeting that he was using funds from investors on one real estate project to pay investors from another real estate project. *See* 341 Transcript 80:20 – 81:13 (July 12, 2018).

28. Upon information and belief, Debtor has and continues to use the D'Alessio Entities which are not currently in bankruptcy to perpetuate his fraudulent scheme.

### The 341 Meeting

29. The Debtor's testimony at the 341 Meeting revealed material inconsistencies with the Debtor's sworn statements on the SOFA.

30. SOFA question No. 15 requires a debtor to disclose "Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster or gambling?" The Debtor's SOFA answers "No".

31. However, the Debtor's testimony reveals that he had lost hundreds of thousands of dollars at the Borgata Hotel in Atlantic City. *See* 341 Transcript 70:2 -72:5 (July 12, 2018).

32. SOFA Question No. 20 requires a debtor to disclose "within 1 year before you filed for bankruptcy were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved or transferred?" The Debtor's SOFA answers that 12 bank accounts were closed, with a total value of approximately $300,000.

33. Upon information and belief, based on testimony at the Debtor's 341 Meeting, certain assets, both cash and property, were transferred to the Debtor's ex-wife.

34. Ten of these accounts were closed, sold, moved or transferred after a temporary restraining order was entered on March 29, 2018, restraining the Debtor from transferring any of his assets aside for reasonable and necessary living expenses.

35. When asked at the 341 Meeting where he put the $300,000 from the closed accounts, the Debtor responded that he converted it to cash to live off of, which is inconsistent with Schedule A/B question 16 in which the Debtor answers that he has "no" cash. *See 341 Transcript 72:21 – 73:3. (July 12, 2018).*

36. The Debtor's signature on the SOFA represents his declaration under penalty of perjury that the answers contained therein are true and correct; however, the testimony elicited at the 341 Meeting clearly demonstrates that the Debtor has perjured himself through these misrepresentations on his SOFA and others to be uncovered through discovery.

## **COUNT I – FRAUD**

37. Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

38. To induce Plaintiffs to deliver money to him and invest in the D'Alessio Entities, the Debtor made multiple representations to Plaintiffs, including, without limitation:

  a) The Investments would be used exclusively for specific real estate projects and would not be comingled with funds belonging to other D'Alessio Entities, or used for any other purposes;

  b) The Debtor would make a specified capital contribution to each project connected to the relevant D'Alessio Entity; and

  c) The full capital of each Plaintiff would be returned within 12 months.

39. The foregoing representations were false at the time they were made, and the Debtor knew that they were false at the time they were made.

40. The misrepresentations of fact were material.

41. The Debtor made the misrepresentations knowing that Plaintiffs would rely upon them.

42. The Plaintiffs reasonably and justifiably relied on Debtor's misrepresentations and transferred more than $2,810,500 to the Debtor for the purpose of investing in specific real estate projects.

43. The Debtor did not use the Investments for the agreed upon business purposes.

44. Rather, the Debtor used the Investments to pay other investors and/or enrich himself without the knowledge of, or approval of, the Plaintiffs.

45. Because Debtor procured the Investments through fraudulent means, the Plaintiffs have been damaged by an amount of not less than $2,810,500.

46. By virtue of the above-referenced fraudulent misrepresentation, the Plaintiffs are entitled to a judgment in an amount to be proven at trial, but not less than $2,810,500.

## COUNT II – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(2)

47. Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

48. 11 U.S.C. § 523(a)(2)(A) provides that a discharge does not discharge an individual debtor from debts for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud…."

49. To induce Plaintiffs to deliver money to him and invest in the D'Alessio Entities, the Debtor made multiple representations to Plaintiffs, including, without limitation:

   d) The Investments would be used exclusively for specific real estate projects and would not be comingled with funds belonging to other D'Alessio Entities, or used for any other purposes;

   e) The Debtor would make a specified capital contribution to each project connected to the relevant D'Alessio Entity; and

   f) The full capital of each Plaintiff would be returned within 12 months.

50. The foregoing representations were false at the time they were made, and the Debtor knew that they were false at the time they were made.

51. The misrepresentations of fact were material.

52. The Debtor made the misrepresentations knowing that Plaintiffs would rely upon them.

53. The Plaintiffs reasonably and justifiably relied on Debtor's misrepresentations and transferred more than $2,810,500 to the Debtor for the purpose of investing in specific real estate projects.

54. The Debtor did not use the Investments for the agreed upon business purposes.

55. Rather, the Debtor used the Investments to pay other investors and/or enrich himself without the knowledge of, or approval of, the Plaintiffs.

56. Because Debtor procured the Investments through fraudulent means, the debt owed to the Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

57. By virtue of the above-referenced fraudulent misrepresentation, the Plaintiffs are entitled to a judgment in an amount to be proven at trial, but not less than $2,810,500, and the same amount should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT III – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(4)

58. Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth at length herein.

59. 11 U.S.C. § 523(a)(4) provides that a discharge does not discharge an individual debtor from debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

60. Debtor embezzled and stole no less than $2,810,500 from the Plaintiffs.

61. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.

62. The Plaintiffs entrusted the Investments to the Debtor for use in connection with specific real estate projects

63. Debtor committed embezzlement against the Plaintiffs by converting and using their Investments to pay other investors and/or enrich himself.

64. The Plaintiffs' Investments, although in the possession of Debtor, constitute property of the Plaintiffs.

65. The Debtor wrongfully converted the Plaintiffs' Investments and appropriated it for his personal use and to pay other investors.

66. Debtor appropriated the Plaintiffs' Investments with the intent to perpetrate a fraud on the Plaintiffs.

67. Debtor concealed his use of the funds appropriated from the Plaintiffs as well as the nature of his current and prospective business interests.

68. Because Debtor embezzled funds representing the Plaintiffs' Investments by converting and appropriating them for his personal use and by using those funds to pay other investors, the debt owed to the Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(4).

69. By virtue of the above-referenced theft and embezzlement, the Plaintiffs are entitled to a judgment in an amount to be proven at trial, but not less than $2,810,500, and the same amount should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

**COUNT IV – OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(6)**

70. Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth at length herein

71. 11 U.S.C. § 523(a)(6) provides that a discharge does not discharge an individual debtor from debts for "willful and malicious injury by the debtor to another entity or to the property of another entity."

72. The Debtor willfully and deliberately injured the Plaintiffs by inducing them to invest funds for specific projects, which the Debtor then use to pay others and/or enrich himself.

73. The Plaintiff's injuries were the direct results of the Debtor's wrongful and intentional act.

74. The Debtor's fraudulent conduct resulting in injury to the Plaintiffs' was without just cause or excuse.

75. Because Debtor willfully and maliciously injured the Plaintiffs' by converting and appropriating their Investments for his personal use and to pay other investors, the debt owed to the Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(6).

76. By virtue of the above-referenced willful and malicious injury, the Plaintiffs are entitled to a judgment in an amount to be proven at trial, but not less than $2,810,500 and the same amount should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays that the Court grant the following relief:

1. Enter a judgment in favor of Plaintiffs and against the Debtor in an amount to be proven at trial, but not less than $2,810,500, plus prejudgment and post judgment interest as provided by law, reasonable attorneys' fees, costs, and expenses;

2. Enter a judgment in favor of Plaintiffs and against the Debtor in an amount to be proven at trial for any and all further damages, plus prejudgment and post judgment interest as provided by law, reasonable attorneys' fees, costs, and expenses;

3. Entry of an order declaring the debt owed by the Debtor to the Plaintiffs constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A);

4. Entry of an order declaring the debt owed by the Debtor to the Plaintiffs constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4);

5. Entry of an order declaring the debt owed by the Debtor to the Plaintiffs constitutes a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6); and

6. Any other relief this Court finds just and proper.

Respectfully submitted this 13th day of August 2018.

By:/s/ James J. Vincequerra
James J. Vincequerra, Esq.
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Phone: 212-210-9400
James.Vincequerra@Alston.com

*Attorneys for Plaintiffs*