# EXHIBIT A

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Co-Counsel for Attis Properties, Inc.*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

and

ROSENFELD & KAPLAN, LLP
*Co-Counsel for Attis Properties, Inc. and*
*Counsel to Bonni Stanley, Marilyn Shendell, Douglas*
*Scibelli, Sanley Company, RNG WEA LLC,*
*Jacqueline Martinez, Keith Hummel, Philip Healy,*
*Ellen Goldstein, Philip Goldstein, Stacey Gendels,*
*Glen Feller, East 64th Street Realty Partners LLC,*
*Robert Cicero, Angie Brown, Joshua Brown, Rella*
*Fogliano, and Joseph Breda*
1180 Avenue of the Americas, Suite 1920
New York, New York 10036
(212) 682-1400
Tab Rosenfeld, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:

                                  Chapter 11

MICHAEL P. D'ALESSIO,               Case No. 18-22552-rdd

                  Debtor.
--------------------------------------------------------------X

### APPLICATION FOR AN ORDER DIRECTING THE PRODUCTION OF DOCUMENTS AND SCHEDULING AN EXAMINATION OF THE DEBTOR PURSUANT TO BANKRUPTCY RULE 2004

**TO: THE HONORABLE ROBERT D. DRAIN:**
    **UNITED STATES BANKRUPTCY JUDGE:**

       Attis Properties, Inc. ("Attis"), through its co-counsel DelBello, Donnellan, Weingarten,

Wise & Wiederkehr, LLP and Rosenfeld & Kaplan LLP, and Bonni Stanley, Marilyn Shendell,

Douglas Scibelli, Sanley Company, RNG WEA LLC, Jacqueline Martinez, Keith Hummel,

Philip Healy, Ellen Goldstein, Philip Goldstein, Stacey Gendels, Glen Feller, East 64th Street

Realty Partners LLC, Robert J Cicero, Angie Brown, Joshua Brown, Rella Fogliano, and Joseph

Breda (collectively with Attis, the "Applicants") through their counsel Rosenfeld & Kaplan LLP,

hereby file this Application pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure,

to direct the production of documents and scheduling examinations of Michael P. D'Alessio (the

"Debtor" or "D'Alessio"). In support of the Application, the Applicants respectfully set forth as

follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for relief requested herein is Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. The Applicants are each creditors of the Debtor, and investors in a number of real

estate projects devised by the Debtor, which are described herein as follows:

a) a real estate project located at 227 East 67th Street, New York, New York, and

involving certain non-debtor entities: 227 E 67th Street Holding LLC, 227 E 67th Associates,

LLC, Michael Paul Enterprises, LLC and Bluestone 67 LLC;

b) a real estate project located at 15-17 Circle Road, Scarsdale, New York, and

involving certain non-debtor entities/individuals: 15-17 Circle Holding LLC, 15 Circle Rd –

MBI LLC, 17 Circle Rd – MBI LLC, William Orrico, Michael Paul Enterprises, LLC, and MBI

Partners LLC;

c) a real estate project located at 41-45 Middle Pond Road, Southampton, New York, and involving certain non-debtor entities: 41-45 MPR Holding LLC, 41 Middle Pond Road Associates LLC, 43 Middle Pond Road Associates LLC, 45 Middle Pond Road Associates LLC, Michael Paul Enterprises, LLC, and 3700 Tremont Associates, Inc.;

d) a real estate project located at 184 East 64th Street, New York, New York, and involving certain non-debtor entities: 184 East 64th Street Holding LLC, 184 East 64th Street Associates LLC, Michael Paul Enterprises, LLC, and Bluestone 184 LLC;

e) a real estate project located at 145-147 East 62nd Street, New York, New York, and involving certain non-debtor entities/individuals: 145-147 East 62nd Street Holding LLC, 145-147 East 62nd Street Associates LLC, Anthony Carbone, Michael Paul Enterprises and FCP 145 Holding LLC;

f) a real estate project located at 163-165 East 62nd Street, New York, New York, and involving certain non-debtor entities: 163-165 East 62nd Street Holding, LLC, 163-165 East 62nd Street Associates LLC, Michael Paul Enterprises, LLC, and Bluestone 163-165 LLC; and

g) a real estate project located at 3 Sandpiper Court, Westhampton, New York, and involving certain non-debtor entities: 3 Sandpiper Court Holding LLC, 3 Sandpiper Court LLC, Michael Paul Enterprises, LLC, and Bluestone Sandpiper LLC.

The above-described projects shall be collectively referred to as the "D'Alessio Projects." The non-debtor entities and individuals with respect to each of the D'Alessio Projects shall be collectively referred to as the "Non-Debtor Entities."

5. The Applicants commenced a series of related actions (collectively, the "Actions") against the Debtor in March 2018 alleging, inter alia, fraud, conversion and breach of fiduciary duty and seeking damages exceeding eighteen million dollars ($18,000,000). A copy

of each of the Complaints in the seven related Actions are annexed as **Exhibits A-G**.  The

Debtor has asserted in those Actions that the Non-Debtor Entities enjoy the protections of the

automatic stay in effect in the Debtor's Chapter 7 case.  Accordingly, the Applicants intend to

seek a comfort order from this Court with respect to their continued litigation against the Non-

Debtor Entities.

6.      Counsel for the Applicants have reviewed the Schedules of Assets and Liabilities

and Statement of Financial Affairs (the "Schedules") filed by the Debtor and believe that certain

information contained therein has been misrepresented, and extensive relevant financial

information has been omitted.

7.      For example, as to the 15-17 Circle Road Project:

a)       Investors contributed approximately $600,000 to 15-17 Circle Holding LLC

("Circle Holding"), an entity which D'Alessio is co-manager of, yet the Schedules contain no

explanation as to where this money actually went.

b)      Despite little to no construction being done on the 15-17 Circle Road Project,

Michael Paul Enterprises, LLC ("MPE"), an entity 100% owned by D'Alessio, has billed in

excess of $1.5 million in construction charges. The Schedules are devoid of information as to

where the $1,344,638 paid to MPE for said construction has gone.

c)      Furthermore, in April and May of 2016, D'Alessio "borrowed" approximately

$2.3 million from Circle Holding. The Schedules contain no explanation for the basis of this

transaction. Similarly, in or about July 2017, D'Alessio reinvested $2.3 million into Circle

Holding. Again, the Schedules are lacking information detailing the source and use of these

funds.

8.      As to the East 64th Street Project:

4

a)      The Investor contributed approximately $1.8 million to 184 East 64th Holding

LLC ("East 64th Holding"), an entity controlled by D'Alessio[1], yet the Schedules contain no

explanation as to where this money actually went.

b)      Similarly, as per the PPM, Bluestone 184 LLC, an entity which D'Alessio has a

50% ownership interest in, was supposed to invest $2,423,600. However, it is believed that

D'Alessio and Bluestone 184 LLC used funds from MPE, an entity in which D'Alessio is a

100% owner, to make the equity contribution of Bluestone 184 LLC. Debtor failed to adequately

disclose information pertaining to this transaction on the Schedules.

c)      Moreover, in 2015, Bluestone 184 LLC contributed approximately $2 million in

equity investments, but thereafter took back $500,000 of those funds. The Schedules contain no

explanation for the purpose of this transaction, nor do the Schedules detail what became of the

withdrawn monies.

d)      Likewise, in 2017, Bluestone 184 LLC contributed an additional $2,442,000 in

equity investments, but withdrew $2,366,000. Again, there is no information in the Schedules

that explains the purpose of this withdrawal.

e)      MPE was paid a total of approximately $11.9 million in construction costs despite

the fixed price of construction being set at $7,271,950 in both the PPM and Operating

Agreement. The Schedules do not provide an explanation of where the payments in excess of the

fixed construction costs went.

f)      There were also numerous payments made from 184 East 64th Street Associates

---

[1] D'Alessio controls East 64th Holding by way of Bluestone 184 LLC, as Bluestone 184 LLC is the managing member of East 64th Holding. Specifically, Paragraph 6 of the Operating Agreement of East 64th Holding affords Bluestone 184 LLC, as manager with "full and complete authority, power and discretion" to control all of East 64th Holding's affairs, including full control over the financial affairs of East 64th Holding and the use of investment and funds acquired by it. Moreover, the PPM identified D'Alessio as the manager of East 64th Holding.

5

LLC ("East 64th Associates") to D'Alessio, the purpose and substance of which are not detailed in the Schedules. For example, during 2016, East 64th Associates made payments to D'Alessio totaling approximately $1.3 million. Similarly, during 2017, East 64th Associates made payments to D'Alessio totaling approximately $259,440.

g)  The Schedules also fail to explain why on two occasions, East 64th Associates paid monies from loans to D'Alessio. For example, on August 15, 2016, East 64th Associates received funds of approximately $2.2 million from a construction loan. That same day, East 64th Associates wrote a check to D'Alessio for $2.1 million. Likewise, on September 19, 2017, East 64th Holding received funds of $4.5 million from a refinanced bank loan. Two days later, on September 21, 2017, D'Alessio received two checks totaling $933,440 and $2,366,000 respectively.

9.  As to the 145-147 East 62nd Street Project:

a)  Investors contributed approximately $1,050,000 to 145-147 East 62nd Holding LLC ("145-147 East 62nd Holding"), an entity controlled by D'Alessio[2], yet the Schedules contain no explanation as to where this money actually went.

b)  Despite little to no construction taking place on the 145-147 East 62nd Street Project, 145-147 East 62nd Street Holding transferred $2,706,000 to MPE, an entity wholly-owned by D'Alessio, for "construction costs." The Schedules do not detail where this money went.

---

2 D'Alessio controls 145-147 East 62nd Holding by way of FCP 145 Holding LLC ("FCP"), as D'Alessio is a 100% owner of FCP and FCP is the managing member of 145-147 East 62nd Holding. Specifically, paragraph 6 of the Operating Agreement of 145-147 East 62nd Holding afforded FCP, as manager, with "full and complete authority, power and discretion" to control all of 145-147 East 62nd Holding's affairs, including full control over the financial affairs of 145-147 East 62nd Holding and the use of investments and funds acquired by it. The PPM also identified D'Alessio as a co-manager of 145-147 East 62nd Holding.

6

c)      Additionally, the 145-147 East 62nd Street Project produced a negative cash flow of approximately $43,000. The Schedules do not detail as to how this $43,000 negative cash flow has been funded.

10.     As to the 163-165 East 62nd Street Project:

a)      Investors contributed approximately $1,900,000 to 163-165 East 62nd Street Holding LLC ("163-165 East 62nd Holding"), an entity in which D'Alessio is a 50.59% owner, yet the Schedules contain no explanation as to where this money actually went.

b)      Despite doing no significant construction on the 163-165 East 62nd Street Project in 2015 and 2016, MPE, an entity in which D'Alessio is a 100% owner, was paid approximately $8.56 million by 163-165 East 62nd Street Associates LLC ("163-165 East 62nd Associates") for construction costs. Specifically, MPE received about $8.5 million as a "construction advance" and D'Alessio received in excess of $500,000 individually as a "construction expense." The Schedules are devoid of any information detailing these transactions.

c)      Between 2015 and 2017, 163-165 East 62nd Associates received in excess of $49 million in funds for the 163-167 62nd Street Project, including $26,427,003 in investment funding from 163-167 East 62nd Holding. The Schedules are devoid of information pertaining to these transactions.

11.     As to the 3 Sandpiper Court Project:

a)      Investors contributed approximately $200,000 to 3 Sandpiper Court Holding LLC ("Sandpiper Court Holding"), an entity controlled by D'Alessio[3], yet the Schedules contain no

---

3  D'Alessio controls Sandpiper Court Holding by way of Bluestone Sandpiper LLC, as e D'Alessio is a 100% owner of Bluestone Sandpiper LLC and Bluestone Sandpiper LLC is the managing member of Sandpiper Court Holding. Specifically, paragraph 6 of the Operating Agreement of Sandpiper Court Holding, afforded Bluestone Sandpiper LLC, as manager, with "full and complete authority, power and discretion" to control all of Sandpiper Court Holding's affairs, including full control over the financial affairs of Sandpiper Court Holding and the use of

explanation as to where this money actually went.

  b)  In June and July, 2016, Sandpiper Court Holding issued checks to MPE, an entity 100% owned by D'Alessio, totaling $330,000. The Schedules contain no information pertaining to this transaction.

  c)  Moreover, per the PPM, Bluestone Sandpiper LLC, another entity 100% owned by D'Alessio was obligated to invest $225,250 in capital in Sandpiper Court Holding. As such, Bluestone Sandpiper LLC transferred $310,000 into Sandpiper Court Holding but then withdrew $200,000. The Schedules do not disclose the purpose of this transaction nor what the withdrawn monies were used for.

  d)  Similarly, in 2017, Bluestone Sandpiper LLC transferred $374,000 into Sandpiper Court Holding but then withdrew $97,000. Again, the Schedules do not contain any explanation as to why $97,000 was withdrawn and what became of those funds.

  12.  As to the 41-46 Middle Pond Road Project:

  a)  Investors contributed approximately $550,000 to 41-45 MPR Holding LLC ("MPR Holding"), an entity in which D'Alessio is a 97.20% owner, yet the Schedules contain no explanation as to where this money actually went.

  b)  In 2017, D'Alessio contributed $700,000 of the represented $1,520,000 as an equity investment in MPR Holding. Later, D'Alessio withdrew the full amount of the capital investment. The Schedules contain no explanation as to why this transaction occurred.

  13.  As to the East 67th Street Project:

  a)  Investors contributed approximately $737,000 to 227 67th Street Holding LLC

---

investments and funds acquired by it. The PPM also identified D'Alessio as manager of Sandpiper Court Holding.

("67th Holding"), an entity controlled by D'Alessio[4] yet the Schedules contain no explanation as to where this money actually went.

b)      Per the PPM, the equity investment of Bluestone 67 LLC, an entity which D'Alessio has a 98.50% ownership interest in, was to be $958,000. Upon information and belief, instead of making an equity investment, D'Alessio and Bluestone 67 LLC moved money into and out of 67th Street Holding's account, depositing funds from unknown sources and then withdrawing those funds. The Schedules do not detail the source of said funds.

c)      Moreover, on or around June 30, 2017, Bluestone 67 LLC withdrew $2,897,000 from East 67th Holding. The Schedules contain no explanation as to why this transaction occurred or what became of the withdrawn monies.

14.      Furthermore, upon information and belief, D'Alessio transferred significant assets to Yvonne Schettino pursuant to a divorce agreement between them that are not fully disclosed on the Schedules.

15.      As such, the Applicants seek to review financial documents of the Debtor and to investigate the acts, conduct, property, liabilities and financial condition of the Debtor.

## RELIEF REQUESTED

16.      Any party in interest has a right to seek information concerning a debtor's assets and liabilities, particularly where that creditor is a significant creditor.

17.      Here, the Applicants are significant creditors who are acknowledged in the Debtor's Schedule F.  As such, their request should be given great weight.

---

[4]  D'Alessio controls East 67th Holding by way of Bluestone 67 LLC, as D'Alessio is a 98.50% owner of Bluestone 67 LLC and Bluestone 67 LLC is the managing member of East 67th Holding. Specifically, paragraph 6 of the Operating Agreement of East 67th Holding afforded Bluestone 67 LLC, as manager, with "full and complete authority, power and discretion" to control all of East 67th Holding's affairs, including full control over the financial affairs of East 67th Holding and the use of investments and funds acquired by it.

9

18-22552-shl   Doc 200-1   Filed 10/25/18   Entered 10/25/18 17:51:15   Exhibit A
Pg 10 of 99

    18.    Bankruptcy Rule 2004 states in relevant part:

        (a)  On motion of any party in interest, the Court may order the examination of any entity,

        (b)  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

    19.    The language of Bankruptcy Rule 2004 has been interpreted as providing latitude to conduct discovery broader in scope than that provided for under the Federal Rules of Civil Procedure, and has even been described as a valid "fishing expedition."  <u>See</u> <u>In Re Ecam Publications, Inc.</u>, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991).

    20.    By this application, the Applicants seek to examine the Debtor to inquire as to, <u>inter alia</u>, the nature and status of his assets, liabilities, income and expenses.

## <u>CONCLUSION</u>

    21.    For all of the foregoing reasons, the Applicants respectfully request entry of an order, substantially in the form annexed hereto as **Exhibit H**, directing the Debtor to produce the documents and appear for examinations, together with such other and further relief as may be appropriate under the circumstances, for all of which no prior request has been made in this or any other Court.

Dated: White Plains, New York
June 6, 2018

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Co-Counsel for Attis Properties, Inc.*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200

By: _____*/s/ Dawn Kirby*_____
        Dawn Kirby

ROSENFELD & KAPLAN, LLP
*Co-Counsel for Attis Properties, Inc. and Counsel to
Bonni Stanley, Marilyn Shendell, Douglas Scibelli,
Sanley Company, RNG WEA LLC, Jacqueline
Martinez, Keith Hummel, Philip Healy, Ellen Goldstein,
Philip Goldstein, Stacey Gendels, Glen Feller, East
64th Street Realty Partners LLC, Robert Cicero, Angie
Brown, Joshua Brown, Rella Fogliano, and Joseph
Breda*
1180 Avenue of the Americas, Suite 1920
New York, New York 10036
(212) 682-1400

By: _____*/s/ Tab Rosenfeld*_____
        Tab Rosenfeld

11

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------x
ATTIS PROPERTIES, INC., JOSHUA BROWN,
ANGIE BROWN, PHILIP GOLDSTEIN, ELLEN
GOLDSTEIN, and SANLEY COMPANY,

                          Plaintiffs,

                  -against-

15-17 CIRCLE HOLDING LLC, 15 CIRCLE
RD - MBI LLC, 17 CIRCLE RD - MBI LLC,
MICHAEL PAUL D'ALESSIO, WILLIAM
ORRICO, MICHAEL PAUL ENTERPRISES, LLC,
and MBI PARTNERS LLC,

                          Defendants.
-------------------------------------------------------------------x

Plaintiffs designate Westchester
County as the Place of Trial

Index No.:

**SUMMONS**

To the above named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:     15-17 CIRCLE HOLDING LLC
                             c/o Michael Paul Enterprises, LLC
                             12 Water Street
                             White Plains, New York 10601

                             15 CIRCLE RD - MBI LLC
                             c/o Michael Paul Enterprises, LLC
                             12 Water Street
                             White Plains, New York 10601

                             17 CIRCLE RD - MBI LLC
                             c/o Michael Paul Enterprises, LLC
                             12 Water Street
                             White Plains, New York 10601

MICHAEL PAUL D'ALESSIO
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

WILLIAM ORRICO
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MBI PARTNERS LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
      March 28, 2018

                       **ROSENFELD & KAPLAN, LLP**

By:     Tab K. Rosenfeld
          Steven M. Kaplan
          Nicole E. Meyer
          1180 Avenue of the Americas, Suite 1920
          New York, NY 10036
          (212) 682-1400
          *Attorneys for Plaintiffs*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

ATTIS PROPERTIES, INC., JOSHUA BROWN,
ANGIE BROWN, PHILIP GOLDSTEIN, ELLEN
GOLDSTEIN, and SANLEY COMPANY,

                             Plaintiffs,              Index No.:

             -against-                      **VERIFIED COMPLAINT**

15-17 CIRCLE HOLDING LLC, 15 CIRCLE
RD - MBI LLC, 17 CIRCLE RD - MBI LLC,
MICHAEL PAUL D'ALESSIO, WILLIAM
ORRICO, MICHAEL PAUL ENTERPRISES, LLC,
and MBI PARTNERS LLC,

                            Defendants.

-----------------------------------------------------------------x

       Plaintiffs Attis Properties, Inc., Joshua Brown, Angie Brown, Philip Goldstein, Ellen

Goldstein, and Sanley Company (collectively, the "plaintiffs") for their Verified Complaint

against defendants 15-17 Circle Holding LLC, 15 Circle Rd – MBI LLC, 17 Circle Rd – MBI

LLC, Michael Paul D'Alessio, William Orrico, Michael Paul Enterprises, LLC, and MBI

Partners LLC (collectively, the "defendants"), allege as follows:

### NATURE OF THE ACTION

       1.      Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 15-17 Circle Road, Scarsdale, New York (the

"Circle Road Project")

       2.      The defendants purchased the property, which consisted of two adjacent empty

lots, with a plan to build a 6,000+ square-foot luxury home on each of the lots and offer them for

sale upon completion.

3.    Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the Circle Road Project, with such investments being made through 15-17 Circle Holding LLC, which D'Alessio promised would bring in an "equity return" of 12% per year and would allow for quick turn-around on a return of all capital invested.

4.    Rather than putting the funds toward their intended use, however, the defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the Circle Road Project with other projects owned and controlled by D'Alessio, using the assets of 15-17 Circle Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.    Having divested 15-17 Circle Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiffs and other investors that the Circle Road Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.    As a result of defendants' acts of financial defalcation, the Circle Road Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

**PARTIES**

7.    Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528.  Attis was formerly known as S. & G. Gross Co., Inc.  Attis is a member of 15-17 Circle Holding LLC.

8.    Plaintiff Joshua Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905.  Joshua Brown, together with his wife Angie Brown, is a member of 15-17 Circle Holding LLC.

9.    Plaintiff Angie Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905. Angie Brown, together with her husband Joshua Brown, is a member of 15-17 Circle Holding LLC.

10.    Plaintiff Philip Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463.  Philip Goldstein, together with his wife Ellen Goldstein, is a member of 15-17 Circle Holding LLC.

11.    Plaintiff Ellen Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463. Ellen Goldstein, together with her husband Philip Goldstein, is a member of 15-17 Circle Holding LLC.

12.    Plaintiff Sanley Company is a New York partnership with an address at c/o Anchin, Block & Anchin, LLP, Attn: Gene Greenfest, 1375 Broadway, 17th Floor, New York, NY 10018.  Sanley Company is a member of 15-17 Circle Holding LLC.

13.    Defendant 15-17 Circle Holding LLC ("Circle Holding") is a domestic limited liability company formed in 2017 as an investment vehicle to develop real property located at 15-17 Circle Road, Scarsdale, New York (the "Property").  Circle Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New

York 10601.  Circle Holding is the sole member of 15 Circle Rd - MBI LLC and 17 Circle Rd -

MBI LLC.

14.    Defendant 15 Circle Rd - MBI LLC ("15 Circle LLC") is a New York limited

liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White

Plains, New York 10601.  15 Circle LLC holds title to the portion of the Property located at 15

Circle Road, Scarsdale, New York..

15.    Defendant 17 Circle Rd - MBI LLC ("17 Circle LLC") is a New York limited

liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White

Plains, New York 10601.  17 Circle LLC holds title to the portion of the Property located at 17

Circle Road, Scarsdale, New York.

16.    Defendant Michael Paul D'Alessio is a New York resident with a business

address at 12 Water Street, White Plains, New York 10601.  D'Alessio is one of the two "Co-

Managers" of Circle Holding.

17.    Upon information and belief, defendant William Orrico ("Orrico") is a New York

resident with a business address at 12 Water Street, White Plains, New York 10601.  Orrico is

one of the two "Co-Managers" of Circle Holding.

18.    Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited

liability company with an address at 12 Water Street, White Plains, New York 10601.  Upon

information and belief, MPE is controlled by D'Alessio.

19.    Defendant MBI Partners LLC ("MBI Partners") is a domestic limited liability

company formed in 2017.  Upon information and belief, MBI Partners is controlled by Michael

Paul D'Alessio.  MBI Partners is the managing member of Circle Holding and maintains its

offices at 12 Water Street, #204, White Plains, New York 10601.

4

## FACTS

20.     Circle Holding was created in 2017 by D'Alessio to acquire the Property through 15 Circle LLC and 17 Circle LLC and to thereafter to build a 6,000+ square-foot home on each of the two parcels to be offered for sale.

21.     Circle Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

22.     All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601 serving as the office for the Company, with a promised "equity return" of 9% to 16% per year, with a quick turn-around on a return of all capital invested, and with a guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

23.     Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

24.     Circle Holding followed the investment structure used by D'Alessio.

25.     Circle Holding's Confidential Private Placement Memorandum, dated March 30, 2017 (the "PPM") stated that the "Company, through its wholly-owned subsidiaries, the Owners, has entered into written contracts to purchase title to the Premises. The Owners will then develop the Premises by erecting a newly-constructed home on each parcel and offer each new home for sale, although, depending upon market conditions and other factors, the Owners may decide to furnish and rent the homes, or either of them."

26.     The PPM stated that "The lots have been approved and building permits have

been issued for construction of single-family residences having approximately 6,372 and 6,997

square feet, respectively."

27.     The PPM stated that "The projected date for completion of work on the Premises

is approximately 12 months after acquisition."

28.     In the PPM, MBI Partners and D'Alessio represented that the "[p]rojected overall

cost of the Project is approximately $5,648,653."

29.     Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the

$5,648,653 Project cost.  The *Pro Forma* listed the costs as: Land Purchase Price, $2,200,000;

Land Soft Costs, $126,000; Project Soft Costs, $448,318; Project Hard Costs, $ 2,874,335.

30.     The *Pro Forma* also listed the source of funding for the Project Costs as: Senior

Debt, $2,800,000; Managing Member's Capital Contribution, $548,653; and Investors' Capital

Contributions, $2,300,000.

31.     The PPM stated in Section J, paragraph 1, that the construction of the Project

would be done by MPE, an affiliate of D'Alessio, for a "fixed price in the amount of

$2,874,335," and provided that the "Co-Managers have personally guaranteed payment of hard

costs of construction in excess of the contract sum."

32.     The PPM provided that "Members of the Company, other than the Managing

Member . . . are entitled to (a) an Equity Return of 12% per annum, payable monthly on the

amount of their Capital Contribution, beginning as of the date such Capital Contribution is

actually fully paid to the Company, until repayment in full of the such Capital Contribution; and

(b) return of the full amount of their Capital Contributions within 12 months and prior to the

Managing Member receiving return of any portion of its Capital Contribution."

6

33.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Co-Managers."

34.     The PPM identified MBI Partners as the managing member of Circle Holding, and identified D'Alessio and Orrico as co-managers.

35.     The PPM provided that while funds raised or acquired by Circle Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

36.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in Circle Holding.

37.     On or about April 3, 2017, plaintiff Attis executed a subscription agreement for 5 "units" in Circle Holding at a total price of $250,000.

38.     Plaintiffs Joshua and Angie Brown jointly executed a subscription agreement for 1 "unit" in Circle Holding at a total price of $50,000.

39.     Plaintiffs Philip and Ellen Goldstein jointly executed a subscription agreement for 1 "unit" in Circle Holding at a total price of $50,000

40.     On or about April 5, 2017, plaintiff Sanley Company executed a subscription agreement for 5 "units" in Circle Holding at a total price of $250,000.

41.     Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and MBI Partners thereafter entered into an Operating Agreement for Circle Holding (the "Operating Agreement"). D'Alessio, on behalf of MBI Partners and individually as a "Guarantor," signed the Operating Agreement. Orrico, on behalf of MBI Partners and individually as a "Guarantor," signed the Operating Agreement.

42.     Paragraph 6 of the Operating Agreement afforded MBI Partners, as managing member, with "full and complete authority, power and discretion" to control all of Circle Holding's affairs, including full control over the financial affairs Circle Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

43.     D'Alessio structured the investment so that money from investors would flow into Circle Holding and would be funneled to 15 Circle LLC and 17 Circle LLC, and then to MPE, purportedly for work to be done on the Circle Road Project.

44.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

45.     At the time that he was soliciting investments from the plaintiffs and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

46.     Per the PPM, MBI Partners, as managing member, represented that it would invest $548,653 as its equity contribution, and accounted for these funds as part of the required capitalization for this Project.

47.     MBI Partners has failed to contribute any of its equity investment, and the books and records of Circle Holding do not reflect any equity contributed by MBI Partners.

48.     On or about April 3, 2017, MPE sent an "Investor Newsletter" via e-mail to investors, stating "In the next 30 days we plan to close on the vacant lots and obtain permits to begin construction."

49.     On or about July 17, 2017, MPE sent an "Investor Newsletter" via email to investors, stating as the status of the Project: "We closed on the property, obtained our building permits and have begun construction."

50.     The books and records of 15 Circle LLC and 17 Circle LLC reflect that from March 2017 through February 2018, MPE billed a total of $1,576,004 for construction hard costs.

51.     As of February 22, 2018, $1,344,638 had been paid to MPE for construction, with $231,366 payable outstanding.

52.     Included in MPE's construction charges were charges of $415,740 for construction on the 15 Circle Road parcel.

53.     On information and belief, little, if any, construction has done on the 15 Circle Road parcel.

54.     MPE has billed $1,160,362 in construction charges for 17 Circle Road. Upon information and belief, only a fraction of the work billed was actually performed.

55.     The books and records of Circle Holding reflect that in April and May, 2017, D'Alessio "borrowed" approximately $2.3 from Circle Holding.

56.     Neither the PPM nor the Operating Agreement of Circle Holding provide for the use of Circle Holding's funds for any purpose other than the development of the Circle Road Project.

57.    In or about July, 2017, the books and records of Circle Holding reflect an "investment" of $2.3 million by D'Alessio, thereby negating the amounts "borrowed."

58.    D'Alessio did not disclose to the plaintiffs that funds belonging to Circle Holding had been used for a purpose other than the development of the Circle Road Project.

59.    The "guaranteed" "equity return" promised in the PPM and provided for in the Operating Agreement was discontinued to plaintiffs and other investors.

60.    Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiffs, choosing instead to conceal their financial improprieties.

61.    Upon information and belief, defendants are attempting to sell the Property and extinguish their obligations to the investors in Circle Holding.

62.    Upon information and belief, substantial funds were transferred from 15 Circle LLC and 17 Circle LLC to MPE, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

63.    Upon information and belief, funds were taken by the defendants for construction that did not take place.

64.    Upon information and belief, the defendants utilized the funds Circle Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to Circle Holding.

65.    Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the Circle Road Project for his own personal use.

10

66.    Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

### FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, Orrico, Circle Holding, and MBI Partners)

67.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 66 above, as if fully set forth herein.

68.    To induce the plaintiffs to invest in Circle Holding, D'Alessio and Orrico, on behalf of themselves and on behalf of Circle Holding, and MBI Partners, made multiple misrepresentations, including, without limitation:

    a.  That the funds raised by Circle Holding would be used exclusively on behalf of Circle Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

    b.  That the Project would be completed within 12 months;

    c.  That the funds invested would only be used for the Circle Road Project;

    d.  That MBI Partners, as managing member, would invest $548,653 as its equity contribution;

    e.  That MBI Partners' equity contribution was an accounted for component of the required capitalization for this Project.

    f.  That the full capital of each investor would be returned within 12 months;

    g.  That D'Alessio and Orrico personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns.

11

69.     The foregoing representations were false and D'Alessio and Orrico, on behalf of themselves, Circle Holding, and MBI Partners, made these representations knowing them to be false.

70.     At the time that they were making these statements to induce investments in Circle Holding, D'Alessio and Orrico knew:

   a.   that money raised by Circle Holding would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

   b.   that the Circle Road Project could not be completed within 12 months;

   c.   that funds raised by Circle Holding would be "loaned" to D'Alessio;

   d.   that the Circle Road Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 12 months; and

   e.   that D'Alessio and Orrico lacked the ability to satisfy their personal guarantees, and thus that the promise of D'Alessio's and Orrico's personal guarantee was a fiction which provided no protection for investors.

71.     D'Alessio and Orrico, on behalf of themselves, Circle Holding, and MBI Partners, made these representations to the plaintiffs in order to induce them to invest the Circle Road Project.

72.     Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio and Orrico, on behalf of themselves, Circle Holding, and MBI Partners.

12

73.     As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $1,000,000, with interest thereon.

74.     The conduct of Circle Holding, D'Alessio, Orrico, and MBI Partners was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

75.     Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 74 above, as if fully set forth in full herein.

76.     Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

77.     D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

78.     The objective of the conspiracy was to induce the plaintiffs to invest in Circle Holding based on the false and fraudulent representations set forth above.

79.     Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from Circle Holding to 15 Circle LLC and 17 Circle LLC and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to Circle Holding or the Circle Road Project.

13

80.     In furtherance of this conspiracy, D'Alessio and Orrico, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiffs.

81.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiffs' rights.

82.     Defendants intended these actions to occur and intended to cause injury to plaintiffs as a part of their conspiratorial scheme.

83.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs, defendants are liable for the above-described acts committed by each conspirator.

84.     As a result of these acts and conduct, plaintiffs have suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

85.     Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, Orrico, 15 Circle LLC, 17 Circle LLC, and MPE)

86.     Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 85 above, as if fully set forth in full herein.

14

87.     Defendants D'Alessio, Orrico, 15 Circle LLC, 17 Circle LLC, and MPE caused funds that were intended for the development of the Circle Road Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

88.     Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, funds used for "loans," and other funds wrongfully taken from Circle Holding.

89.     By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

90.     The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them.  No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

91.     By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

## FOURTH CAUSE OF ACTION
(Conversion against all Defendants)

92.     Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 91 above, as if fully set forth in full herein.

93.     Plaintiffs invested funds into Circle Holding for the purposes of construction and development of the Circle Road Project and to secure the returns that were promised.

94.     Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

15

95.     As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $1,000,000, plus interest and costs.

96.     By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

### FIFTH CAUSE OF ACTION
(Breach of Guaranty against D'Alessio and Orrico)

97.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 96 above, as if fully set forth herein.

98.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Co-Managers."

99.     At all times, Orrico and D'Alessio have served as Co-Managers of Circle Holding.

100.     D'Alessio and Orrico each executed the Operating Agreement individually, as "Guarantor," guaranteeing the payment of the both the investor equity as well as the return on money invested.

101.     Circle Holding has discontinued the payment of the return on investor equity.

102.     There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial.

103.     There remains due and owing to the plaintiffs unrepaid investor capital of at least $600,000.

16

104. By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against D'Alessio and Orrico in an amount to be determined at trial, but believed to be excess of $650,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
### (Breach of Contract as against Circle Holding)

105. Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 104 above, as if fully set forth herein.

106. The Operating Agreement of Circle Holding constitutes a valid and binding contract between plaintiffs and defendant Circle Holding.

107. Plaintiffs have performed all of their material obligations under that contract.

108. Circle Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

109. Circle Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $650,000.

110. By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against Circle Holding in an amount to be determined at trial, but believed to be excess of $650,000, plus interest and costs.

## SEVENTH CAUSE OF ACTION
### (For a Constructive Trust against D'Alessio, Orrico, 15 Circle LLC, 17 Circle LLC, and MPE)

111. Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 110 above, as if fully set forth herein.

112. Pursuant to the terms of the Operating Agreement, D'Alessio, Orrico, and MBI Partners were fiduciaries obligated to act in the best interest of Circle Holding and its investors.

113.    D'Alessio, Orrico, and MBI Partners, on behalf of themselves and 15 Circle LLC,

17 Circle LLC and MPE, expressly promised that they would utilize the funds invested by

plaintiffs and other investors, and the funds obtained from other sources, solely for the

development of the Circle Road Project and not to enrich themselves.

114.    The plaintiffs invested in Circle Holding in reliance on the representations made

to them in the PPM and by D'Alessio, Orrico, and MBI Partners.

115.    D'Alessio has threatened to turn over the Property to its secure lenders simply to

relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other

investors of 100% of their equity.

116.    Upon information and belief, D'Alessio is attempting to sell the Property to pay

off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

117.    A constructive trust should be imposed to prevent the defendants from being

unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to

satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all

of their interest in the Property.

118.    Accordingly, a constructive trust should be imposed with respect to the Property

and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

119.    Plaintiffs repeat, reallege, and incorporate paragraphs 1 through 118 above as if

fully set forth herein.

120.    In furtherance of his fraudulent scheme, D'Alessio and the other defendants have

left the Property financially overextended, are seeking to dispose of the Property at a massive

discount and in a manner designed to rid D'Alessio and his managing member entity of any

guarantees to the first mortgagor, and thereby to divest the investors of their capital.

121.    Unless defendants are restrained and enjoined from the transfer and/or sale of the

Property, plaintiffs will suffer irreparable harm, in that plaintiffs will be divested of their capital

interest in the Property.

122.    Plaintiffs have no adequate remedy at law.

123.    Accordingly, plaintiffs are entitled to an Order preliminary and permanently

enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against defendants D'Alessio, Orrico, Circle

Holding, and MBI Partners, awarding plaintiffs damages in an amount to be determined at trial,

but not less than $1,000,000, with interest thereon, as well as punitive damages in an amount to

be determined at trial;

b.    On the Second Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial, but not less than $1,000,000, with interest thereon, as well as punitive

damages in an amount to be determined at trial;

c.    On the Third Cause of Action as against defendants D'Alessio, Orrico, 15 Circle

LLC, 17 Circle LLC, and MPE, awarding plaintiffs damages in an amount to be determined at

trial, but not less than $1,000,000, with interest thereon;

d.    On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial, but not less than $1,000,000, with interest thereon;

e.    On the Fifth Cause of Action as against D'Alessio and Orrico, awarding plaintiffs

damages in an amount to be determined at trial but not less than $650,000, with interest thereon;

f.    On the Sixth Cause of Action as against Circle Holding, awarding plaintiffs

damages in an amount to be determined at trial but not less than $650,000, with interest thereon;

g.    On the Seventh Cause of Action as against defendants D'Alessio, Orrico, 15

Circle LLC, 17 Circle LLC, and MPE, imposing a constructive trust with respect to the real

property located at 15-17 Circle Road, Scarsdale, New York, or with respect to any proceeds

paid as a result of any sale of the real property located at 15-17 Circle Road, Scarsdale, New

York;

h.    On the Eighth Cause of Action, issuing an Order preliminarily and permanently

enjoining and restraining defendants from selling or otherwise transferring the real property

located at 15-17 Circle Road Scarsdale, New York;

i.    Awarding the costs and fees, including reasonable attorneys' fees, to the

plaintiffs; and

j.    Awarding such other and further relief as is just and proper.

Dated: New York, New York
       March 27, 2018

ROSENFELD & KAPLAN, LLP

By:    _Tab K Rosenfeld_
       Tab K. Rosenfeld
       Steven M. Kaplan
       Nicole E. Meyer
       1180 Avenue of the Americas
       Suite 1920
       New York, New York 10036
       (212) 682-1400
       *Attorneys for the plaintiffs*

## VERIFICATION

STATE OF ~~NEW YORK~~ Florida ⎞
                                          ⎟ ss.:
COUNTY OF ~~WESTCHESTER~~ Miami-Dade ⎟

    **MICHAEL KOHN**, being duly sworn, deposes and says:

    I am an officer of the plaintiff Attis Properties, Inc. in this action. I have read the

foregoing Verified Complaint and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

as to those matters, I believe them to be true.

                                                        _____
                                                      Michael Kohn

Sworn to me before me this         March 27
   day of March, 2018

_____
     Notary Public

drivers license #

184 701 478



BRIAN BEAN
Notary Public - State of Florida
Commission # GG 031741
My Comm. Expires Nov 12, 2020
Bonded through National Notary Assn

# EXHIBIT B

1822552-100   Doc 39-21   Filed 06/08/18   Entered 06/08/18 16:17:15   Exhibit A
Pg 2 of 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

ATTIS PROPERTIES, INC., KEITH HUMMEL,
and PHILIP HEALY,

                                          Plaintiffs,

                     -against-

41-45 MPR HOLDING LLC, 41 MIDDLE POND ROAD
ASSOCIATES LLC, 43 MIDDLE POND ROAD
ASSOCIATES LLC, 45 MIDDLE POND ROAD
ASSOCIATES LLC, MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
3700 TREMONT ASSOCIATES, INC.,

                                    Defendants.

-----------------------------------------------------------------x

Plaintiffs designate Westchester
County as the Place of Trial

Index No.:

**<u>SUMMONS</u>**

To the above named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:       41-45 MPR HOLDING LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                41 MIDDLE POND ROAD ASSOCIATES LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                43 MIDDLE POND ROAD ASSOCIATES LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

45 MIDDLE POND ROAD ASSOCIATES LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL D'ALESSIO
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

3700 TREMONT ASSOCIATES, INC.
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
     March 27, 2018

          **ROSENFELD & KAPLAN, LLP**

By:    Tab K. Rosenfeld
        Steven M. Kaplan
        Nicole E. Meyer
        1180 Avenue of the Americas, Suite 1920
        New York, NY 10036
        (212) 682-1400
        *Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------x

ATTIS PROPERTIES, INC., KEITH HUMMEL,
and PHILIP HEALY,

         Plaintiffs,       Index No.:

     -against-        **VERIFIED COMPLAINT**

41-45 MPR HOLDING LLC, 41 MIDDLE POND ROAD
ASSOCIATES LLC, 43 MIDDLE POND ROAD
ASSOCIATES LLC, 45 MIDDLE POND ROAD
ASSOCIATES LLC, MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
3700 TREMONT ASSOCIATES, INC.,

         Defendants.

-------------------------------------------------------------------x

   Plaintiffs Attis Properties, Inc., Keith Hummel, and Philip Healy (collectively, the

"plaintiffs") for their Verified Complaint against defendants 41-45 MPR Holding LLC, 41

Middle Pond Road Associates LLC, 43 Middle Pond Road Associates LLC, 45 Middle Pond

Road Associates LLC, Michael Paul D'Alessio, Michael Paul Enterprises, LLC, and 3700

Tremont Associates, Inc. (collectively, the "defendants"), allege as follows:

## NATURE OF THE ACTION

  1.  Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 41-45 Middle Pond Road, Southampton, New

York (the "MPR Project")

  2.  The defendants purchased the property, which consisted of three adjacent lots,

with a plan to build a 6,000+ square-foot luxury home on each of the lots and offer them for sale

upon completion.

3.      Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the MPR Project, with such investments being made through 41-45 MPR Holding LLC, which D'Alessio promised would bring in an "equity return" of 12% per year and would allow for quick turn-around on a return of all capital invested.

4.      Rather than putting the funds toward their intended use, however, the defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the MPR Project with other projects owned and controlled by D'Alessio, using the assets of 41-45 MPR Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.      Having divested 41-45 MPR Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiffs and other investors that the MPR Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.      As a result of defendants' acts of financial defalcation, the MPR Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

## PARTIES

7.      Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528.  Attis was formerly known as S. & G. Gross Co., Inc.  Attis is a member of 41-45 MPR Holding LLC.

2

8.      Plaintiff Keith Hummel ("Hummel") is a New York resident with an address at 10 Carriage Hill Road, West Harrison, NY 10604. Hummel is a member of 41-45 MPR Holding LLC.

9.      Plaintiff Philip Healy ("Healy") is a New Hampshire resident with an address at 12 Knoll Crest, Bedford, NH. Healy is a member of 41-45 MPR Holding LLC.

10.      Defendant 41-45 MPR Holding LLC ("MPR Holding") is a domestic limited liability company formed in 2017 as an investment vehicle to develop real property located at 41-45 Middle Pond Road, Westhampton, New York (the "Property"). MPR Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. MPR Holding is the sole member of 41 Middle Pond Road Associates LLC, 43 Middle Pond Road Associates LLC, and 45 Middle Pond Road Associates LLC.

11.      Defendant 41 Middle Pond Road Associates LLC ("41 Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. 41 Associates holds title to the portion of the Property located at 41 Middle Pond Road, Southampton, New York.

12.      Defendant 43 Middle Pond Road Associates LLC ("43 Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. 43 Associates holds title to the portion of the Property located at 43 Middle Pond Road, Southampton, New York.

13.      Defendant 45 Middle Pond Road Associates LLC ("45 Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. 45 Associates holds title to the portion of the Property located at 45 Middle Pond Road, Southampton, New York.

3

14.     Defendant Michael Paul D'Alessio is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.  D'Alessio is the manager of MPR Holding.

15.     Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited liability company with an address at 12 Water Street, White Plains, New York 10601. Upon information and belief, MPE is controlled by D'Alessio.

16.     Defendant 3700 Tremont Associates, Inc. ("Tremont") is a domestic corporation formed in 1999.  Upon information and belief, Tremont is controlled by Michael Paul D'Alessio. Tremont is the managing member of MPR Holding and maintains its offices at 12 Water Street, #204, White Plains, New York 10601.

### FACTS

17.     MPR Holding was created in 2017 by D'Alessio to acquire the Property through 41 Associates, 43 Associates, and 45 Associates, which consisted of three adjacent lots, one of which was vacant and the other two of which were each improved by a modest, single-family home, to demolish any existing improvements, and to thereafter to build a 6,000+ square-foot home on each of the three parcels to be offered for sale upon completion.

18.     MPR Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

19.     All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601 serving as the office for the Company, with a promised "equity return" of 9% to 16% per year, with a quick turn-around on a return of all capital invested, and

4

with a guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

20.    Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

21.    MPR Holding followed the investment structure used by D'Alessio.

22.    MPR Holding's Confidential Private Placement Memorandum, dated September 14, 2017 (the "PPM") stated that the "Company will acquire 100% of the membership interests in the Owners from the current holders of such interests. The Owners will then develop the Premises by demolishing existing improvements, if any, and erecting a newly constructed, approximately 6,000 square foot luxury home (each, a "Home") on each parcel."

23.    The PPM stated that "The Manager is in the process of seeking building permits for the Project. The projected date for completion of construction of the new homes is approximately 12-18 months from the date of this Offering."

24.    In the PPM, D'Alessio and Tremont represented that the "[p]rojected overall cost of the Project is approximately $11,620,000."

25.    Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the $11,620,000 Project cost. The *Pro Forma* listed the costs as: Land Purchase Price, $2,460,000; Land Soft Costs, $460,000; Project Soft Costs, $1,680,000; Project Hard Costs, $7,020,000.

26.    The *Pro Forma* also listed the source of funding for the Project Costs as: Mortgage, $5,100,000; Manager's Capital Contribution, $1,520,000; and Investors' Capital Contributions, $5,000,000.

27.     The PPM stated in Section J, paragraph 1, that the construction of the Project would be done by MPE, an affiliate of D'Alessio, for a "fixed price in the amount of $7,020,000" and provided that "D'Alessio has personally guaranteed payment of hard costs of construction in excess of the contract sum."

28.     The PPM provided that "Members of the Company, other than the Manager . . . are entitled to (a) an Equity Return of 12% per annum, payable monthly on the amount of their Capital Contribution, beginning as of the date such Capital Contribution is actually fully paid to the Company, until repayment in full of the such Capital Contribution; and (b) return of the full amount of their Capital Contributions within 24 months and prior to the Manager receiving return of any portion of its Capital Contribution."

29.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

30.     The PPM identified D'Alessio as the "Manager."

31.     The PPM provided that while funds raised or acquired by MPR Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

32.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in MPR Holding.

33.     On or about September 14, 2017, plaintiff Attis executed a subscription agreement for 4 "units" in MPR Holding at a total price of $200,000.

34.     Plaintiff Hummel executed a subscription agreement for 2 "units" in MPR Holding at a total price of $100,000.

6

NYSCEF DOC. NO. 2

35.     On or about September 15, 2017, plaintiff Healy executed a subscription agreement for 5 "unites" in MPR Holding at a total price of $250,000.

36.     Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and Tremont thereafter entered into an Operating Agreement for MPR Holding (the "Operating Agreement"). D'Alessio, on behalf of Tremont and individually as a "Guarantor," signed the Operating Agreement.

37.     Paragraph 6 of the Operating Agreement afforded D'Alessio, as manager, with "full and complete authority, power and discretion" to control all of MPR Holding's affairs, including full control over the financial affairs MPR Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

38.     D'Alessio structured the investment so that money from investors would flow into MPR Holding and would be funneled to 41 Associates, 43 Associates, and 45 Associates, and then to MPE, purportedly for work to be done on the MPR Project.

39.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

40.     At the time that he was soliciting investments from the plaintiffs and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

41.     Per the PPM, D'Alessio represented that the Manager was investing $1,520,000 in MPR Holding, and accounted for these funds as part of the required capitalization for this Project.

42.     According to the PPM, no repayment of the Manager's capital contribution was to be made until each investor had received both the full 12% Equity Return and the full repayment of the investor's capital.

43.     According to MPR Holding's books and records, in 2017, D'Alessio contributed $700,000 of the represented $1,520,000 as an equity investment in MPR Holding.

44.     The MPR Holding's books and records reflect that later in 2017, D'Alessio withdrew the full amount of the capital invested, leaving a capital balance of $0.

45.     Per the PPM, D'Alessio planned to raise $5,000,000 in investor contributions.

46.     According to MPR Holding's books and records, as of February 22, 2018, only $700,000 in investor capital had been raised by MPR Holding.

47.     On or about July 17, 2017, D'Alessio sent an "Investor Newsletter" via email to investors, stating "We have closed on 43 Middle Pond Road parcel, and are awaiting our final building permit. We have signed contracts for the two adjacent and contiguous parcels - 41 & 45 Middle Pond Road - which will allow us to build a total of 4 new homes," and that "We are in the process of getting approvals and building permits to begin construction."

48.     Neither D'Alessio nor any of the defendants disclosed to plaintiffs or any other investors that D'Alessio was moving money into and out of the MPR Holding account, that D'Alessio failed to make his promised equity contribution, or that the MPR Project was severely undercapitalized.

8

49.    Upon information and belief, to date, there has been no construction undertaken on the Property.

50.    Upon information and belief, the Property now consists of vacant lots, with only demolition work having occurred.

51.    Upon information and belief, despite the absence of construction, the books and records of MPR Holdings reflect that MPE has incurred $258,405 in net construction hard costs, $251,983 of which was billed to MPR Holding and remains outstanding.

52.    The "guaranteed" "equity return" promised in the PPM and provided for in the Operating Agreement was discontinued to plaintiffs and other investors.

53.    Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiffs, choosing instead to conceal their financial improprieties.

54.    Upon information and belief, defendants are attempting to sell the Property and extinguish their obligations to the investors in MPR Holding.

55.    Upon information and belief, substantial funds were transferred from 41 Associates, 43 Associates, and 45 Associates, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

56.    Upon information and belief, funds were taken by the defendants for construction that did not take place.

57.    Upon information and belief, the defendants utilized the funds of MPR Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to MPR Holding.

58.    Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the MPR Project for his own personal use.

59.    Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

## FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, MPR Holding, and Tremont)

60.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 59 above, as if fully set forth herein.

61.    To induce the plaintiffs to invest in MPR Holding, D'Alessio, on behalf of himself and on behalf of MPR Holding and Tremont, made multiple misrepresentations, including, without limitation:

a.    That the funds raised by MPR Holding would be used exclusively on behalf of MPR Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

b.    That the Manager would be investing $1,520,000 in capital toward the Project;

c.    That the Manager would not receive back any of its capital until each investor had received their full 12% Equity Return and the full return of capital;

d.    That the Project would be completed within 12-18 months;

e.    That the full capital of each investor would be returned within 24 months;

f.    That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of all the preferred returns.

10

62.    The foregoing representations were false and D'Alessio, on behalf of himself, MPR Holding, and Tremont, made these representations knowing them to be false.

63.    At the time that they were making these statements to induce investments in MPR Holding, D'Alessio knew:

a.    that money raised by MPR Holding would be co-mingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b.    that the MPR Project could not be completed within 12-18 months;

c.    that the MPR Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months;

d.    that D'Alessio lacked the ability to contribute $1,520,000 in capital to the Project, and had no intention of doing so;

e.    that D'Alessio and Tremont would remove funds, including supposed Manager capital, ahead of any payments to the plaintiffs and other investors; and

f.    that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors.

64.    D'Alessio, on behalf of himself, MPR Holding, and Tremont, made these representations to the plaintiffs in order to induce them to invest the MPR Project.

65.    Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, MPR Holding, and Tremont.

11

66.     As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $1,000,000, with interest thereon.

67.     The conduct of MPR Holding, D'Alessio, and Tremont was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

68.     Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 67 above, as if fully set forth in full herein.

69.     Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

70.     D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

71.     The objective of the conspiracy was to induce the plaintiffs to invest in MPR Holding based on the false and fraudulent representations set forth above.

72.     Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from MPR Holding to 41 Associates, 43 Associates, and 45 Associates, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to MPR Holding or the MPR Project.

73.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiffs.

74.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiffs' rights.

75.     Defendants intended these actions to occur and intended to cause injury to plaintiffs as a part of their conspiratorial scheme.

76.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs, defendants are liable for the above-described acts committed by each conspirator.

77.     As a result of these acts and conduct, plaintiffs have suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

78.     Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, 41 Associates, 43 Associates, 45 Associates, and MPE)

79.     Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 78 above, as if fully set forth in full herein.

80.     Defendants D'Alessio, 41 Associates, 43 Associates, 45 Associates, and MPE caused funds that were intended for the development of the MPR Project to be diverted for

13

improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

81.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, repayment of capital to D'Alessio and Tremont in advance of the payments due to the plaintiffs and other investors, and other funds wrongfully taken from MPR Holding.

82.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

83.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them.  No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

84.    By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

### FOURTH CAUSE OF ACTION
(Conversion against all Defendants)

85.    Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 84 above, as if fully set forth in full herein.

86.    Plaintiffs invested funds into MPR Holding for the purposes of construction and development of the MPR Project and to secure the returns that were promised.

87.    Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

88.     As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $1,000,000, plus interest and costs.

89.     By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

**FIFTH CAUSE OF ACTION**
(Breach of Guaranty against D'Alessio)

90.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 89 above, as if fully set forth herein.

91.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

92.     At all times, D'Alessio has served as manager of MPR Holding.

93.     D'Alessio executed the Operating Agreement individually, as "Guarantor," guaranteeing the payment of the both the investor equity as well as the return on money invested.

94.     MPR Holding has discontinued the payment of the return on investor equity.

95.     There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial.

96.     There remains due and owing to the plaintiffs investor capital of at least $550,000.

97.     By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against Bluestone in an amount to be determined at trial, but believed to be excess of $600,000, plus interest and costs.

15

## SIXTH CAUSE OF ACTION
(Breach of Contract as against MPR Holding)

98.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 97 above, as if fully set forth herein.

99.    The Operating Agreement of MPR Holding constitutes a valid and binding contract between plaintiffs and defendant MPR Holding.

100.    Plaintiffs have performed all of their material obligations under that contract.

101.    MPR Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

102.    MPR Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $550,000.

103.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against MPR Holding in an amount to be determined at trial, but believed to be excess of $600,000, plus interest and costs.

## SEVENTH CAUSE OF ACTION
(For a Constructive Trust against D'Alessio, 41 Associates, 43 Associates, 45 Associates, and MPE)

104.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 103 above, as if fully set forth herein.

105.    Pursuant to the terms of the Operating Agreement, D'Alessio and Tremont were fiduciaries obligated to act in the best interest of MPR Holding and its investors.

106.    D'Alessio and Tremont, on behalf of themselves and 41 Associates, 43 Associates, 45 Associates and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the MPR Project and not to enrich themselves.

16

107.    The plaintiffs invested in MPR Holding in reliance on the representations made to them in the PPM and by D'Alessio and Tremont.

108.    D'Alessio has threatened to turn over the Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

109.    Upon information and belief, D'Alessio is attempting to sell the Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

110.    A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all of their interest in the Property.

111.    Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

## EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

112.    Plaintiffs repeat, reallege, and incorporate paragraphs 1 through 111 above as if fully set forth herein.

113.    In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

114.    Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiffs will suffer irreparable harm, in that plaintiffs will be divested of their capital interest in the Property.

17

115.    Plaintiffs have no adequate remedy at law.

116.    Accordingly, plaintiffs are entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against defendants D'Alessio, MPR Holding, and Tremont, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.    On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.    On the Third Cause of Action as against defendants D'Alessio, 41 Associates, 43 Associates, 45 Associates, and MPE, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon;

d.    On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon;

e.    On the Fifth Cause of Action as against D'Alessio, awarding plaintiffs damages in an amount to be determined at trial but not less than $600,000, with interest thereon;

f.    On the Sixth Cause of Action as against MPR Holding, awarding plaintiffs damages in an amount to be determined at trial but not less than $600,000, with interest thereon;

g.    On the Seventh Cause of Action as against defendants D'Alessio, 41 Associates, 43 Associates, 45 Associates, and MPE, imposing a constructive trust with respect to the real property located at 41-45 Middle Pond Road, Southampton, New York, or with respect to any

18

proceeds paid as a result of any sale of the real property located at 41-45 Middle Pond Road,

Southampton, New York;

h.    On the Eighth Cause of Action, issuing an Order preliminarily and permanently

enjoining and restraining defendants from selling or otherwise transferring the real property

located at 41-45 Middle Pond Road, Southampton, New York;

i.    Awarding the costs and fees, including reasonable attorneys' fees, to the

plaintiffs; and

j.    Awarding such other and further relief as is just and proper.

Dated: New York, New York
    March 27, 2018

ROSENFELD & KAPLAN, LLP

By:    _____
    Tab K. Rosenfeld
    Steven M. Kaplan
    Nicole E. Meyer
    1180 Avenue of the Americas
    Suite 1920
    New York, New York 10036
    (212) 682-1400
    *Attorneys for the plaintiffs*

18-22552-rdd          Doc 39-1          Filed 06/08/18          Entered 06/08/18 16:17:35          Exhibit A
Pg 59 of 199

## VERIFICATION

STATE OF NEW YORK    )
                        )ss.:
COUNTY OF NEW YORK  )

      I, Tab K. Rosenfeld, affirm that I am an attorney admitted to practice law in the courts of

the State of New York, and that I am the attorney of record for the plaintiffs in this matter.  I

have read the foregoing Verified Complaint and know the contents thereof; the same is true to

my own knowledge, except as to the matters therein alleged to be on information and belief, and

as to those matters I believe them to be true.  The reason this verification is made by me and not

by any of the plaintiffs is because each of the plaintiffs reside outside the county where the office

with which I am associated maintains its office.

Dated: New York, New York
      March 27, 2018

                                       Tab K. Rosenfeld

20

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------x

EAST 64TH STREET REALTY PARTNERS LLC,

                    Plaintiff,

        -against-

184 EAST 64TH STREET HOLDING LLC,
184 EAST 64TH STREET ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 184 LLC,

                    Defendants.

-------------------------------------------------------------------x

Plaintiff designates Westchester County as the Place of Trial

Index No.:

**SUMMONS**

To the above named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and to serve a copy of your answer, or, if the verified complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the verified complaint.

Defendants' Addresses:      184 EAST 64TH STREET HOLDING LLC
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

                              184 EAST 64TH STREET ASSOCAITES LLC
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

                              MICHAEL PAUL D'ALESSIO
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

                              MICHAEL PAUL ENTERPRISES, LLC
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

BLUESTONE 184 LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
     March 13, 2018

                    **ROSENFELD & KAPLAN, LLP**

By:     Tab K. Rosenfeld
          Steven M. Kaplan
          Nicole E. Meyer
          1180 Avenue of the Americas, Suite 1920
          New York, NY 10036
          (212) 682-1400
          *Attorneys for Plaintiff*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------x

EAST 64TH STREET REALTY PARTNERS LLC,

|  |  |
|---|---|
| Plaintiff, | Index No.: |
| -against- | **VERIFIED COMPLAINT** |

184 EAST 64TH STREET HOLDING LLC,
184 EAST 64TH STREET ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 184 LLC,

Defendants.

-------------------------------------------------------------------x

Plaintiff East 64th Street Realty Partners, LLC ("plaintiff"), by its attorneys, Rosenfeld &

Kaplan, LLP, for its Verified Complaint against defendants 184 East 64th Street Holding LLC,

184 East 64th Street Associates LLC, Michael Paul D'Alessio, Michael Paul Enterprises, LLC,

and Bluestone 184 LLC, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiff, an investor in a real estate project

devised by defendants located at 184 East 64th Street, New York, New York (the "East 64th

Street Project").

2.      The defendants purchased the property with a plan to demolish the existing five-

story building and construct and develop in its place a new six-story building containing five

newly-constructed luxury residential condominium units to be offered for sale.

3.  Plaintiff was induced by defendants to invest millions of dollars in the East 64th Street Project, with such investment made through 184 East 84th Street Holding LLC, which D'Alessio promised would bring in an "equity return" of 16% per year and would allow for quick turn-around on a return of all capital invested.

4.  Rather than putting the funds toward their intended use, however, defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the East 64th Street Project with other projects owned and controlled by D'Alessio, using the assets of East 64th Holding to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.  Having divested 184 East 64th Street Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility. The defendants, nonetheless, continued to represent to the plaintiff and other investors that the East 64th Street Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.  As a result of defendants' acts of financial defalcation, the East 64th Street Project has become overextended. Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiff and other investors.

2

## PARTIES

7.      Plaintiff East 64th Street Realty Partners, LLC ("East 64th" or "plaintiff") is a
domestic limited liability company with a principal place of business of 542 Main Street, New
Rochelle, New York, NY 10801.  Plaintiff is a member of defendant 184 East 64th Street Holding
LLC.

8.      Defendant 184 East 64th Street Holding LLC ("East 64th Holding") is a New York
limited liability company formed in 2015 as an investment vehicle to develop real property
located at 184 East 64th Street, New York, New York (the "Property").  East 64th Holding lists its
office for the conduct of business as c/o Michael Paul Enterprises, LLC 12 Water Street, White
Plains, New York 10601.  East 64th Holding is the sole member of 184 East 64th Street
Associates LLC.

9.      Defendant 184 East 64th Street Associates LLC ("East 64th Associates") is a New
York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water
Street, White Plains, New York 10601.  East 64th Associates holds title to the Property.

10.     Defendant Michael Paul D'Alessio is a New York resident with a business
address at 12 Water Street, White Plains, New York 10601.

11.     Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited
liability company with an address at 12 Water Street, White Plains, New York 10601.  Upon
information and belief, MPE is controlled by D'Alessio.

12.     Defendant Bluestone 184 LLC ("Bluestone") is a domestic limited liability
company formed in 2015.  Upon information and belief, Bluestone is owned and controlled by
D'Alessio.  Bluestone is the managing member of East 64th Holding and maintains its offices at
12 Water Street, #204, White Plains, New York 10601.

3

## FACTS

13.    East 64th Holding was created in 2015 by D'Alessio to acquire the Property through East 64th Associates and thereafter to demolish the existing five-story building and construct and develop in its place a new six-story building with five luxury condominium units to be sold upon completion.

14.    East 64th Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

15.    All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member, with construction to be done by MPE, an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601, serving as the office for the Company, with a promised "equity return" of 10% to 16% per year, with a quick turn-around on a return of all capital invested, and with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

16.    Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

17.    East 64th Holding followed the investment structure used by D'Alessio.

18.    In East 64th Holding's Confidential Private Placement Memorandum (the "PPM") dated April 20, 2015, East 64th Holding, Bluestone and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $23,447,200."

4

19.    Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the

$23,447,200 Project cost. The *Pro Forma* listed the costs as: Land Purchase Price, $14,250,000;

Soft Costs, $1,925,250; and Hard Costs, $7,271,950.

20.    The *Pro Forma* also listed the source of funding for the Project Costs as: Senior

Debt, $11,723,600; Sponsor Equity Contribution $2,423,600; and Joint Venture Equity Partner's

Contribution, $9,300,000.

21.    The PPM stated in Section J, paragraph 1, that the construction of the East 64th

Street Project would be done by MPE, an affiliate of Bluestone and D'Alessio, for a "fixed price

of $7,272,950," and provided that the "Manager has personally guaranteed payment of hard costs

of construction in excess of the contract sum."

22.    The PPM provided that "Members of the Company, other than the Managing

Member  .  .  .  are entitled to (a) an Equity Return of 16% per annum, payable monthly on the

amount of their Capital Contribution, beginning as of the date such Capital Contribution is

actually fully paid to the Company; and (b) return of the full amount of their Capital

Contributions within 24 months."

23.    The PPM provided that "Payment of the Investors' Equity Return and repayment

of Capital Contributions in accordance with the foregoing will be guaranteed personally by the

Manager."

24.    The PPM identified D'Alessio as the manager of East 64th Holding.

25.    The PPM identified Bluestone as the managing member of East 64th Holding and

identified D'Alessio as the managing member of Bluestone and its sole manager.

26.     The PPM provided that while funds raised or acquired by East 64th Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

27.     On or about May 5, 2015, plaintiff executed a subscription agreement for 20 "units" in East 64th Holding, which afforded it a 10% interest in East 64th Holding.

28.     Plaintiff thereafter wired the sum of $1,860,000 to East 64th Holding as payment for its 10% interest in the company.

29.     Plaintiff and Bluestone thereafter entered into an Operating Agreement for East 64th Holding (the "Operating Agreement").

30.     D'Alessio, on behalf of Bluestone and individually as "Guarantor," signed the Operating Agreement.

31.     Paragraph 6 of the Operating Agreement afforded Bluestone, as manager, with "full and complete authority, power and discretion" to control all of East 64th Holding's affairs, including full control over the financial affairs of East 64th Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

32.     D'Alessio structured the investment so that money from investors would flow into East 64th Holding and would be funneled to East 64th Associates, and then to MPE, purportedly for work to be done on the East 64th Street Project.

33.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiff and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

34.     At the time that he was soliciting investments from the plaintiff and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

35.     Bluestone was, according to the PPM, supposed to invest $2,423,600. Upon information and belief, instead of making an equity investment, D'Alessio and Bluestone moved money into and out of East 64th Holding's account, depositing funds from unknown sources and then withdrawing those funds.

36.     Upon information and belief, the source of the funds was MPE, where funds from multiple D'Alessio sponsored investments were co-mingled and thereafter used for purposes in direct violation of the operating agreements of each of those investments.

37.     According to East 64th Holding's books and records, in 2015, Bluestone contributed $2,000,000 in equity investment. It thereafter took back $500,000 of those funds, leaving an ending balance of $1,500,000 as of December 31, 2015.

38.     In 2017, Bluestone contributed an additional $2,442,000 in equity investments, but withdrew $2,366,000.

39.     As of December 31, 2017, the net equity investment of Bluestone was $1,576,000, a shortfall of $847,600.

40.     Neither D'Alessio nor any of the defendants disclosed to plaintiff or any other investors that Bluestone was moving money into and out of the East 64th Holding account.

41.     Neither D'Alessio nor any of the defendants disclosed to plaintiff or any other investors that Bluestone had not made its equity contribution.

7

42.     Instead, on October 26, 2017 (the "October Letter") D'Alessio wrote to plaintiff and other investors claiming that the problems with the East 64th Street Project arose because of construction delays. D'Alessio wrote: "I have cancelled my country club memberships which were used in part to conduct business and entertainment on behalf of my businesses. I have borrowed up to the limit on my lines of credit, and mortgaged my home in order to keep investors current."

43.     Upon information and belief, the transfers of funds into and out of the East 64th Holding account were in furtherance of the financial fraud being engaged in by D'Alessio, whereby he was moving funds between his various sponsored investments, using MPE as his conduit, and in total disregard for the manner in which such funds could be used under the terms of the applicable operating agreements of the D'Alessio-sponsored investments.

44.     In the PPM and Operating Agreement, D'Alessio and Bluestone represented that construction would be done by MPE for a fixed price of $7,271,950. That fixed price included a supervisory fee and construction management fee of $714,500.

45.     The PPM stated that "The Manager [D'Alessio] has personally guaranteed payment of hard costs of construction in excess of the contract sum."

46.     The books and records of East 64th Holding reflect that in 2015, MPE was paid the sum of $5,029,010, and in 2016-2017, the sum of $6,963,103. Additional vendors were paid $6,147, bringing the total construction costs to $11,998,260.

47.     As a result of journal entries and other manipulations of the East 64th Holding books and records, by the end of 2017, those books still reflected "net construction" hard costs of $8,446,640, still $1,174,690 in excess of the fixed price cited in the PPM.

8

48.     Additional payments were made to MPE during the period from 2015 to 2017 totaling $540,000.  These were "categorized" as "soft cost" payments.

49.     Upon information and belief, fictitious records were created by MPE and the defendants to document construction expenses.

50.     Upon information and belief, funds were transferred from East 64th Holding to East 64th Associates and then MPE for the ostensible purpose of paying subcontractor invoices which were then not paid and which remain due and owing.

51.     The books and records of East 64th Holding reflect numerous other unauthorized financial transactions whereby money raised or secured by East 64th Holding was looted by D'Alessio and the defendants.

52.     During 2016, there were numerous payments between East 64th Associates and D'Alessio, which totaled a net of $1,328,000 to D'Alessio from East 64th Associates.

53.     On August 15, 2016, East 64th Associates received funds of $2,166,936 from a construction loan.  On that same day, East 64th Associates wrote a check to D'Alessio for $2,100,000.

54.     During 2017, there were numerous payments between D'Alessio and East 64th Associates, which totaled a net of $259,440 to D'Alessio from East 64th Associates.

55.     On September 19, 2017, East 64th Holding received funds of $4,500,000 from a refinanced bank loan.  Two days later, on September 21, 2017, D'Alessio received two checks totaling $933,440 recorded in his loan payable account on the balance sheet as well as a check for $2,366,000 recorded as an equity draw against the capital investment of East 64th Holding.

9

56.     Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiff, choosing instead to conceal their financial improprieties.

57.     Despite the fact that the costs of the East 64th Street Project were fixed, consisting primarily of the purchase price and the construction contract, with any cost overruns guaranteed by Bluestone and D'Alessio, since the commencement of the Project, the defendants increased the amount of senior (bank) debt by almost $11 million, and East 64th Holding now has senior debt of at least $22 million, almost double the amount list in the *Pro Forma* provided to investors.

58.     By letter dated October 26, 2017 (the "October Letter"), D'Alessio, writing on behalf of East 64th Holding, wrote to investors, stating that while the building is 100% complete and the company has obtained the Final Certificate of Occupancy, East 64th Holding has been unsuccessful in selling the units.

59.     The October Letter went on to state that three of the five units are currently rented with a total monthly income of $100,000 and that the current rental income is sufficient to cover operating expenses and a portion of the secured debt service but, with only three units rented, there isn't enough cash flow to cover the entire debt service and make dividend payments.

60.     D'Alessio then stated that he was evaluating all of his real estate holdings and monetizing them where appropriate and doing "everything possible to honor the agreement" with plaintiff and would follow up with articulated plans and potential alternative structures.

61.     The October Letter did not disclose the fact that senior debt on the underlying Property had increased by approximately 100% (going from $11 million to $22 million), that Bluestone had already taken out much of its capital, that construction costs had been fabricated,

10

that sub-contractors had not been paid, that MPE had been paid sums far in excess of that to which it was contractually entitled, that D'Alessio had moved millions of dollars into his own account, and that Bluestone and D'Alessio had moved money into and out of the East 64th Holding account as if it were their personal piggy bank.

62.    By letter dated November 27, 2017 (the "November Letter"), D'Alessio, writing on behalf of East 64th Holding, wrote to plaintiff advising it that he retained a national Financial Advisory firm, Ankura Consulting Group, LLC, to help him evaluate his current situation and recommend possible actions for his properties.

63.    He went on to state that he believed that best possible approach for the East 64th Street Project would be: a) to defer all sales activities until market conditions improve; b) to convert any vacancies in the Property to rentals; c) to request that all investors release their guaranteed equity returns and convert to a distribution of profits every January starting in 2019 based upon the prior twelve-month results; and d) to continue debt service payments allowing for principal amortization reducing the senior debt.

64.    By letter dated February 26, 2018 (the "February Letter"), D'Alessio wrote to investors in all of the D'Alessio Holding Companies to advise them that he decided to turn over the keys and deeds over to the banks to avoid the high cost of foreclosure.

65.    The "equity return" promised to plaintiff and other investors has been discontinued.

66.    Upon information and belief, defendants are attempting to sell the Property and extinguish their obligations to the investors in East 64th Holding.

67.    Upon information and belief, substantial funds were transferred from East 64th Associates to MPE, where such funds were either co-mingled with funds of other D'Alessio

Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

68.     Upon information and belief, funds were taken by the defendants for construction that did not take place.

69.     Upon information and belief, the defendants utilized the funds of East 64th Holding to pay for fictitious expenses but recorded such expenditures in such a way as to conceal the misuse of funds belonging to East 64th Associates.

70.     Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiff and earmarked for the East 64th Street Project for his own personal use.

71.     Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

## FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, East 64th Holding and Bluestone)

72.     Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 71 above, as if fully set forth herein.

73.     To induce the plaintiff to invest in East 64th Holding, D'Alessio, on behalf of himself and on behalf of East 64nd Holding and Bluestone, made multiple misrepresentations, including, without limitation:

    a.  That the funds raised by East 64th Holding would be used exclusively on behalf of East 64th Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

12

    b.   That the full capital of each investor would be returned within 24 months;

    c.   That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns; and

    d.   That investments made into East 64th Holding would receive a return of their capital before D'Alessio received a repayment of his investment or any profit distribution.

74.    The foregoing representations were false and D'Alessio, on behalf of himself, East 64th Holding, and Bluestone, made these representations knowing them to be false.

75.    At the time that he was making these statements to induce investments in East 64th Holding, D'Alessio knew:

    a.   that money raised by East 64th Holding would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

    b.   that the East 64th Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months;

    c.   that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors; and

    d.   that D'Alessio intended to remove his funds - - whether through construction "advances," loans or distributions in advance of repaying the capital of investors.

76.    D'Alessio, on behalf of himself, East 64th Holding, and Bluestone, made these representations to the plaintiff in order to induce it to invest the East 64th Street Project.

77.    Plaintiff reasonably relied on the accuracy of the information provided to it by D'Alessio, on behalf of himself, East 64th Holding, and Bluestone.

78.    As a direct and proximate result of the fraud, plaintiff has been damaged in an amount to be determined at trial, but not less than $2,000,000, with interest thereon.

79.    The conduct of East 64th Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiff's rights, entitling plaintiff to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

80.    Plaintiff repeats, realleges and incorporates each of the allegations set forth in paragraphs 1 through 79 above, as if fully set forth in full herein.

81.    Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiff as described above.

82.    D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

83.    The objective of the conspiracy was to induce the plaintiff to invest in East 64th Holding based on the false and fraudulent representations set forth above.

84.    Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from East 64th Holding to East 64th Associates and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to East 64th Holding or the East 64th Street Project.

14

85.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiff.

86.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiff's rights.

87.     Defendants intended these actions to occur and intended to cause injury to plaintiff as a part of their conspiratorial scheme.

88.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiff, defendants are liable for the above-described acts committed by each conspirator.

89.     As a result of these acts and conduct, plaintiff has suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiff is entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $2,000,000, plus interest and costs.

90.     Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiff's rights, entitling plaintiff to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, East 64th Associates, and MPE)

91.     Plaintiff repeats, realleges and incorporates each of the allegations set forth in paragraphs 1 through 90 above, as if fully set forth in full herein.

92.     Defendants D'Alessio, East 64th Associates, and MPE caused funds that were intended for the development of the East 64th Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

93.     Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from East 64th Holding.

94.     By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiff.

95.     The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them.  No other remedy at law can adequately compensate plaintiff for the economic damages resulting to it from the defendants' wrongful actions as alleged herein.

96.     By virtue of the foregoing, plaintiff seeks damages in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

## FOURTH CAUSE OF ACTION
(Conversion against all Defendants)

97.     Plaintiff repeats, realleges, and incorporates each of the allegations set forth in paragraphs 1 through 96 above, as if fully set forth in full herein.

98.     Plaintiff invested funds into East 64th Holding for the purposes of construction and development of the East 64th Street Project and to secure the returns that were promised.

99.     Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiff.

16

100.    As a proximate result of defendants' acts of conversion, plaintiff has been deprived of its rights, and has suffered damages in an amount to be determined, but believed to be in excess of $5,000,000, plus interest and costs.

101.    By virtue of the foregoing, plaintiff seeks damages from defendants in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

### FIFTH CAUSE OF ACTION
(Breach of Guaranty against D'Alessio)

102.    Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 101 above, as if fully set forth herein.

103.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

104.    At all times, D'Alessio has served as the manager of East 64th Holding.

105.    D'Alessio executed the Operating Agreement of East 64th Holding in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

106.    East 64th Holding has discontinued the payment of the return on investor equity.

107.    There remains due and owing to the plaintiff unpaid returns on the equity invested in an amount to be determined at trial.

108.    There remains due and owing to the plaintiff unrepaid investor capital of at least $1,860,000.

109.    By virtue of the foregoing, plaintiff is entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $2,000,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
(Breach of Contract as against East 64th Holding)

110.     Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 9 above, as if fully set forth herein.

111.     The Operating Agreement of East 64th Holding constitutes a valid and binding contract between plaintiff and defendant East 64th Holding.

112.     Plaintiff has performed all of its material obligations under that contract.

113.     East 64th Holding has breached its obligations to plaintiff under the contract by failing to pay the returns on equity invested.

114.     East 64th Holding has breached its obligations to plaintiff under the contract by failing to repay investor capital of at least $1,860,000.

115.     By virtue of the foregoing, plaintiff is entitled to the recovery of damages as against East 64th Holding in an amount to be determined at trial, but believed to be excess of $2,000,000, plus interest and costs.

## SEVENTH CAUSE OF ACTION
(For a Constructive Trust against D'Alessio, East 64th Associates, and MPE)

116.     Plaintiff repeats, realleges and incorporates each and every allegation contained in paragraphs 1 to 115 above, as if fully set forth herein.

117.     Pursuant to the terms of the Operating Agreement, D'Alessio and Bluestone were fiduciaries obligated to act in the best interest of East 64th Holding and its investors.

118.     D'Alessio and Bluestone, on behalf of themselves and East 64th Associates and MPE, expressly promised that they would utilize the funds invested by plaintiff and other investors, and the funds obtained from other sources, solely for the development of the East 64th Street Project and not to enrich themselves.

18

119.    The plaintiff invested in Est 64th Holding in reliance on the representations made

to it in the PPM and by D'Alessio and Bluestone.

120.    D'Alessio has threatened to turn over the Property to its secure lenders simply to

relieve himself of potential liability to such lenders, and to divest the plaintiff and all other

investors of 100% of their equity.

121.    Upon information and belief, D'Alessio is attempting to sell the Property to pay

off his obligations and to divest the plaintiff and all other investors of 100% of their equity.

122.    A constructive trust should be imposed to prevent the defendants from being

unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to

satisfy their obligations while simultaneously stripping the plaintiff of all of its capital and all of

its interest in the Property.

123.    Accordingly, a constructive trust should be imposed with respect to the Property

and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

124.    Plaintiff repeats, realleges and incorporates paragraphs 1 through 123 above as if

fully set forth herein.

125.    In furtherance of his fraudulent scheme, D'Alessio and the other defendants have

left the Property financially overextended, are seeking to dispose of the Property at a massive

discount and in a manner designed to rid D'Alessio and his managing member entity of any

guarantees to the first mortgagor, and thereby to divest the investors of their capital.

126.    Unless defendants are restrained and enjoined from the transfer and/or sale of the

Property, plaintiff will suffer irreparable harm, in that plaintiff will be divested of its capital

interest in the Property.

19

127.    Plaintiff has no adequate remedy at law.

128.    Accordingly, plaintiff is entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against defendants D'Alessio, East 64th Holding, and Bluestone, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.    On the Second Cause of Action, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.    On the Third Cause of Action as against defendants D'Alessio, East 64th Associates, and MPE, awarding plaintiff damages in an amount to be determined at trial, but not less than $5,000,000, with interest thereon;

d.    On the Fourth Cause of Action, awarding plaintiff damages in an amount to be determined at trial, but not less than $5,000,000, with interest thereon;

e.    On the Fifth Cause of Action as against D'Alessio, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon;

f.    On the Sixth Cause of Action as against East 64th Holding, awarding plaintiff damages in an amount to be determined at trial, but not less than $2,000,000, with interest thereon;

g.    On the Seventh Cause of Action as against defendants D'Alessio, East 64th Associates, and MPE, imposing a constructive trust with respect to the real property located at

184 East 64th Street, New York, New York, or with respect to any proceeds paid as a result of any sale of the real property located at 184 East 64th Street, New York, New York;

      h.      On the Eighth Cause of Action, issuing an Order preliminarily and permanently enjoining and restraining defendants from selling or otherwise transferring the real property located at 184 East 64th Street, New York, New York;

      i.      Awarding the costs and fees, including reasonable attorneys' fees, to the plaintiff; and

      j.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
       March 13, 2018

ROSENFELD & KAPLAN, LLP

By: _____

Tab K. Rosenfeld
Steven M. Kaplan
Nicole E. Meyer
1180 Avenue of the Americas
Suite 1920
New York, New York 10036
(212) 682-1400
*Attorneys for plaintiff*

## VERIFICATION

STATE OF NEW YORK )
                       )ss.:
COUNTY OF NEW YORK )

I, Tab K. Rosenfeld, affirm that I am an attorney admitted to practice law in the courts of

the State of New York, and that I am the attorney of record for the plaintiff in this matter. I have

read the foregoing Verified Complaint and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein alleged to be on information and belief, and as to

those matters I believe them to be true. The reason this verification is made by me and not by

the plaintiff is because the plaintiff resides outside the county where the office with which I am

associated maintains its office.

Dated: New York, New York
       March 13, 2018

_____
Tab K. Rosenfeld

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------x

RELLA FOGLIANO, MARILYN SHENDELL,
ATTIS PROPERTIES, INC., GLEN FELLER,
JOSHUA BROWN, ANGIE BROWN, PHILIP          Plaintiffs designate Westchester
GOLDSTEIN, ELLEN GOLDSTEIN, and SANLEY     County as the Place of Trial
COMPANY,

                              Plaintiffs,         Index No.:

                -against-                         **SUMMONS**

145-147 EAST 62nd STREET HOLDING LLC,
145-147 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO, ANTHONY
CARBONE, MICHAEL PAUL ENTERPRISES,
LLC, and FCP 145 HOLDING LLC,

                              Defendants.

-------------------------------------------------------------------x

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:      145-147 EAST 62nd STREET HOLDING LLC
                            c/o Michael Paul Enterprises, LLC
                            12 Water Street
                            White Plains, New York 10601

                            145-147 EAST 62nd ASSOCIATES LLC
                            c/o Michael Paul Enterprises, LLC
                            12 Water Street
                            White Plains, New York 10601

                            MICHAEL PAUL D'ALESSIO
                            c/o Michael Paul Enterprises, LLC
                            12 Water Street
                            White Plains, New York 10601

ANTHONY CARBONE
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

FCP 145 HOLDING LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
March 14, 2018

ROSENFELD & KAPLAN, LLP

By:  Tab K. Rosenfeld
Steven M. Kaplan
Nicole E. Meyer
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
(212) 682-1400
*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

--------------------------------------------------------------------x

RELLA FOGLIANO, MARILYN SHENDELL,
ATTIS PROPERTIES, INC., GLEN FELLER,
JOSHUA BROWN, ANGIE BROWN, PHILIP
GOLDSTEIN, ELLEN GOLDSTEIN, and SANLEY
COMPANY,

                         Plaintiffs,               Index No.:

         -against-                    **VERIFIED COMPLAINT**

145-147 EAST 62nd STREET HOLDING LLC,
145-147 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO, ANTHONY
CARBONE, MICHAEL PAUL ENTERPRISES,
LLC, and FCP 145 HOLDING LLC,

                        Defendants.

--------------------------------------------------------------------x

      Plaintiffs Rella Fogliano, Marilyn Shendell, Attis Properties, Inc., Glen Feller, Joshua

Brown, Angie Brown, Philip Goldstein, Ellen Goldstein, and Sanley Company (collectively, the

"plaintiffs") for their Verified Complaint against defendants 145-147 East 62nd Street Holding

LLC, 145-147 East 62nd Street Associates LLC, Michael Paul D'Alessio, Anthony Carbone,

Michael Paul Enterprises and FCP 145 Holding LLC (collectively, the "defendants"), allege as

follows:

## NATURE OF THE ACTION

      1.     Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 145-147 East 62nd Street, New York, New York

(the "East 62nd Street Project").

2.      The defendants purchased the property, which consisted of an existing townhouse, with a plan to gut renovate it into a new six-story building containing eight newly-constructed luxury units.

3.      Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the East 62nd Street Project, with such investments being made through 145-147 East 62nd Street Holding LLC, which D'Alessio promised would bring in an "equity return" of 10% per year and would allow for quick turn-around on a return of all capital invested.

4.      Rather than putting the funds toward their intended use, however, the defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the East 62nd Street Project with other projects owned and controlled by D'Alessio, using the assets of 145-147 East 62nd Street Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.      Having divested 145-147 East 62nd Street Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiffs and other investors that the East 62nd Street Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.      As a result of defendants' acts of financial defalcation, the East 62nd Street Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

## PARTIES

7.    Plaintiff Rella Fogliano ("Fogliano") is a New York resident with a business address c/o The MacQuesten Companies, 438 Fifth Avenue, Pelham, NY 10803. Fogliano is a member of 145-147 East 62nd Street Holding LLC.

8.    Plaintiff Marilyn Shendell ("Shendell") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801. Shendell is a member of 145-147 East 62nd Street Holding LLC.

9.    Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528. Attis was formerly known as S. & G. Gross Co., Inc. Attis is a member of 145-147 East 62nd Street Holding LLC.

10.    Plaintiff Glen Feller ("Feller") is a New Jersey resident with an address at 8 Jazz Way, Mt. Laurel, NJ 08054. Feller is a member of 145-147 East 62nd Street Holding LLC.

11.    Plaintiff Joshua Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905. Joshua Brown, together with his wife Angie Brown, is a member of 145-147 East 62nd Street Holding LLC.

12.    Plaintiff Angie Brown is a Connecticut resident with an address at 15 Tally Ho Lane, Stamford CT, 06905. Angie Brown, together with her husband Joshua Brown, is a member of 145-147 East 62nd Street Holding LLC.

13.    Plaintiff Philip Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463. Philip Goldstein, together with his wife Ellen Goldstein, is a member of 145-147 East 62nd Street Holding LLC.

3

14.     Plaintiff Ellen Goldstein is a New York resident with an address at 3975

Sedgwick Avenue, Apt 4H, Bronx New York 10463. Ellen Goldstein, together with her husband

Philip Goldstein, is a member of 145-147 East 62nd Street Holding LLC.

15.     Plaintiff Sanley Company is a New York partnership with an address at c/o

Anchin, Block & Anchin, LLP, Attn: Gene Greenfest, 1375 Broadway, 17th Floor, New York,

NY 10018.  Sanley Company is a member of 145-147 East 62nd Street Holding LLC.

16.     Defendant 145-147 East 62nd Street Holding LLC ("East 62nd Holding") is a

domestic limited liability company formed in 2016 as an investment vehicle to develop real

property located at 145-147 East 62nd Street, New York, New York (the "Property").  East 62nd

Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12

Water Street, White Plains, New York 10601.  East 62nd Holding is the sole member of 145-147

East 62nd Street Associates LLC.

17.     Defendant 145-147 East 62nd Street Associates LLC ("East 62nd Associates") is a

New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12

Water Street, White Plains, New York 10601.  East 62nd Associates holds title to the Property.

18.     Defendant Michael Paul D'Alessio is a New York resident with a business

address at 12 Water Street, White Plains, New York 10601.

19.     Upon information and belief, defendant Anthony Carbone ("Carbone") is a New

York resident with a business address at 12 Water Street, White Plains, New York 10601.

20.     Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited

liability company with an address at 12 Water Street, White Plains, New York 10601. Upon

information and belief, MPE is controlled by D'Alessio.

21.     Defendant FCP 145 Holding LLC ("FCP") is a domestic limited liability

company formed in 2016.  Upon information and belief, FCP is controlled by Michael Paul

D'Alessio.  FCP is the managing member of East 62nd Holding and maintains its offices at 12

Water Street, #204, White Plains, New York 10601.

## FACTS

22.     East 62nd Holding was created in 2016 by D'Alessio to acquire the Property

through East 62nd Associates and to thereafter demolish the existing townhouse and construct in

its place a new six-story building with eight luxury condominium units.

23.     East 62nd Holding is one of a number of real estate investment companies created

by D'Alessio (the "D'Alessio Holding Companies").

24.     All of the D'Alessio Holding Companies utilize a similar structure, with

D'Alessio or an affiliated company serving as the managing member; with construction to be

done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street,

White Plains, New York 10601 serving as the office for the Company, with a promised "equity

return" of 10% to 16% per year, with a quick turn-around on a return of all capital invested, and

with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of

the fixed price contracts with D'Alessio's affiliated construction contract.

25.     Each of the D'Alessio Holding Companies are structured so that D'Alessio or his

affiliated entities have control over the finances of the D'Alessio Holding Company and the use

of the capital secured by such D'Alessio Holding Company.

26.     East 62nd Holding followed the investment structure used by D'Alessio.

27.     The East 62nd Holding's Confidential Private Placement Memorandum (the

"PPM") stated that "The Company, through its wholly-owned subsidiary, the Owner, will

5

acquire title to the Property.  It will thereafter commence gut renovation of the existing Building
. . ."

28.    The PPM stated that "Demolition of the existing Building and construction of the
new improvements is expected to start shortly after the Owner acquires title to the Property."

29.    The PPM stated that "The projected date for the completion of the renovations
and beginning of closings for the Units will be approximately 18-24 months after acquisition."

30.    In the PPM, FCP and D'Alessio represented that the "[p]rojected overall cost of
the Project is approximately $19,924,654.

31.    Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the
$19,924,654 Project cost.  The *Pro Forma* listed the costs as" Land Purchase Price, $5,830,000;
Land Soft Cost, $2,678,400; Project Soft Costs, $3,013,200; and Project Hard Costs, $8,403,054.

32.    The *Pro Forma* also listed the source of funding for the Project Costs as: Senior
Debt, $9,000,000; Sponsor Equity Contribution $1,924,654; and "JV Investor's Equity
Contribution," $9,000,00.

33.    The PPM stated in Section J, paragraph 1, that the construction of the Project
would be done by MPE, an affiliate of FCP and D'Alessio, for a "fixed price of $8,403,054," and
provided that the "Mr. D'Alessio has personally guaranteed payment of hard costs of
construction in excess of the contract sum."

34.    The PPM provided that "Members of the Company, other than the Managing
Member  .  .  .  are entitled to (a) an Equity Return of 10% per annum, payable monthly on the
amount of their Capital Contribution, beginning as of the date such Capital Contribution is
actually fully paid to the Company  .  .  .  ; and (b) return of the full amount of their Capital
Contributions within 24 months."

6

35.     The PPM provided that "Payment of the Investors' Equity Return and repayment
of Capital Contributions in accordance with the foregoing will be guaranteed personally by Mr.
D'Alessio."

36.     The PPM identified FCP as the managing member of East 62nd Holding, and
identified D'Alessio and Anthony Carbone individually as co-managers.

37.     The PPM provided that while funds raised or acquired by East 62nd Holding could
be maintained in a "general account," that such funds would "be in the Company control and
may be used for Company purposes."

38.     The PPM did not disclose that the Property was subject to New York City rent
control regulations and that it was occupied by tenants protected by those rent controlled
regulations.

39.     The PPM did not disclose that demolition of the Property and the gut renovation
could not commence until the tenants subject to New York City rent control regulations had
vacated the Property.

40.     By letters dated September 22, 2016 and November 1, 2016 (the "Solicitation
Letters"), D'Alessio writing on behalf of MPE, wrote to potential investors such as the plaintiffs,
reiterating the figures set forth in the *Pro Forma*, and explicitly stating that "The townhouse will
be **delivered vacant** at closing." (Emphasis added).

41.     At the time the Solicitation Letters were issued, the Property was occupied by
tenants subject to New York City rent regulations.

42.     Upon information and belief, D'Alessio was aware at the time the Solicitation
Letters were issued that the Property was occupied by tenants subject to New York City rent
regulations.

43.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in East 62nd Holding.

44.     On or about October 13, 2016, plaintiff Attis executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

45.     On or about November 8, 2016, plaintiff Fogliano executed a subscription agreement for 10 "units" in East 62nd Holding at a total price of $500,000.

46.     On or about November 14, 2016, plaintiff Sanley Company executed a subscription agreement for 4 "units" in East 62nd Holding at a total price of $200,000.

47.     On or about November 15, 2016, plaintiff Shendell executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

48.     On or about December 23, 2016, plaintiff Feller executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

49.     Plaintiffs Joshua and Angie Brown jointly executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

50.     Plaintiffs Philip and Ellen Goldstein jointly executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

51.     Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and FCP thereafter entered into an Operating Agreement for East 62nd Holding (the "Operating Agreement"). D'Alessio, on behalf of FCP and individually as "Guarantor," signed the Operating Agreement. Carbone, on behalf of FCP, signed the Operating Agreement.

52.     Paragraph 6 of the Operating Agreement afforded FCP, as manager, with "full and complete authority, power and discretion" to control all of East 62nd Holding's affairs,

including full control over the financial affairs East 62nd Holding and the use of investments and funds acquired by it.

## Defendants' Financial Defalcations

53.    D'Alessio structured the investment so that money from investors would flow into East 62nd Holding and would be funneled to East 62nd Associates, and then to MPE, purportedly for work to be done on the East 62nd Street Project.

54.    At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

55.    At the time that he was soliciting investments from the plaintiffs and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

56.    FCP was, according to the PPM, supposed to invest $1,924,654.

57.    The books and records of East 62nd Holding do not reflect any equity investment by FCP.

58.    On information and belief, the East 62nd Property remains partially occupied, making any "gut" renovation impossible.

59.    The books and records of East 62nd Holding reflect transfers of a total $2,706,000 to MPE for "construction costs."

60.    An invoice issued by MPE to East 62nd Holding dated December 19, 2016 reflected construction and construction-related charges of $810,000.

9

61.     An invoice issued by MPE to East 62nd Holding dated February 24, 2017 reflected "construction hard costs," of $1,896,000.

62.     Upon information and belief, little, if any, construction has occurred.

63.     East 62nd Holding has also expended $180,000 to buy out tenants protected by rent controlled regulations.

64.     The PPM and *Pro Forma* annexed to it identified the amount of funding needed to complete the East 62nd Street Project, including the need to obtain $9,000,000 in investor equity and $1,924,654 from FCP.

65.     The books and records of East 62nd Holding reflect member equity of only $3,250,000 and no FCP equity.

66.     On or about April 3, 2017, MPE sent an "Investor Newsletter" via email to the investors stating "we have vacated the two commercial tenants and one rent stabilized tenant and have obtained the permit for the new building" and "are evaluating the next actions regarding the few remaining residential tenants."

67.     On or about July 17, 2017, MPE sent another "Investor Newsletter" via email to the investors, reiterating that two commercial tenants and one rent stabilized tenant had been vacated and that MPE is "evaluating the next actions regarding the few remaining residential tenants" and stating that MPE has "filed a demolition permit with the city and are awaiting approval."

68.     In November, 2017 the defendants advised plaintiffs and other investors that East 62nd Holding is suffering from a "liquidity" problem.

69.     In this November, 2017 communication, the defendants stated the Property was occupied by tenants subject to New York City rent control regulations, and that "[e]xcluding

preferred dividends the project still produces a negative cash flow of $43,000 and the rent controlled structure will continue to require funding deficits."

70.     The defendants provided no information as to how this $43,000 negative cash flow has been funded (or why it was not accounted for in the *Pro Forma*), how the invested proceeds had been utililized, or how East 62nd Holding was able to provide an equity return in the absence of revenue.

71.     At no time did defendants disclose that $2,706,000 had been paid to MPE for construction which was not done.

72.     At no time did defendants disclose that insufficient capital had been raised to fully fund the East 62nd Street Project.

73.     At no time did defendants disclose that FCP had not paid any of its equity contribution.

74.     By letter dated February 26, 2018 (the "February Letter"), D'Alessio, writing on behalf of East 62nd Holding, stated his view that continued efforts to operate the Property no longer made economic sense and that the "Company lacked funds with which to pay the debt service due February 1st and the mortgagee has given notice of its intention to foreclose its mortgage." The letter went on to state that the mortgagee has proposed accepting deeds to the property in lieu of foreclosure and cancelling D'Alessio's personal guarantee of the mortgage, and that East 62nd Holding intended to accept that offer on or about March 5, 2018.

75.     The February Letter stated that "Inability to vacate the rental tenants and other issues have prolonged the development, driving up the Company's carrying costs, including payment of mortgage debt service and Investors' Equity Return payments."

76.     Upon information and belief, defendants have or are about to surrender the Property to the bank or otherwise dispose of the Property at a below-market cost.

77.     Upon information and belief, substantial funds were transferred from East 62nd Associates to MPE, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

78.     Upon information and belief, funds were taken by the defendants for construction that did not take place.

79.     Upon information and belief, the defendants utilized the funds of East 62nd Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to East 62nd Holding.

80.     Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the East 62nd Street Project for his own personal use.

81.     Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

## FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, Carbone, East 62nd Holding, and FCP)

82.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 81 above, as if fully set forth herein.

83.     To induce the plaintiffs to invest in East 62nd Holding, D'Alessio, on behalf of himself and on behalf of Carbone, East 62nd Holding and FCP, made multiple misrepresentations, including, without limitation:

12

a. That the funds raised by East 62nd Holding would be used exclusively on behalf of East 62nd Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

b. That demolition of the East 62nd Street Property would start shortly after title was acquired;

c. That the Project would be completed within 18 to 24 months;

d. That the full capital of each investor would be returned within 24 months;

e. That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns; and

f. The Property would be delivered to D'Alessio vacant at closing.

84.     The foregoing representations were false and D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP, made these representations knowing them to be false.

85.     At the time that he was making these statements to induce investments in East 62nd Holding, D'Alessio knew:

a. that money raised by East 62nd Holding would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b. that demolition could not take place soon after closing because the East 62nd Street Property was occupied by tenants subject to New York City rent control regulations and who could not be removed from the premises absent agreement with them;

c. that the East 62nd Street Project could not be completed within 18 to 24 months because the premises were occupied by tenants protected by New York city rent

13

control regulations and no construction could commence until such tenants had vacated the Property;

    d.   that the East 62nd Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months; and

    e.   that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors.

    86.   D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP, made these representations to the plaintiffs in order to induce them to invest the East 62nd Street Project.

    87.   Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, Carbone, East 62nd Holding, and FCP.

    88.   As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $3,000,000, with interest thereon.

    89.   The conduct of East 62nd Holding, D'Alessio, Carbone, and FCP was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

    90.   Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 89 above, as if fully set forth in full herein.

    91.   Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

92.     D'Alessio devised the overall objective of the conspiracy, and each of the other
defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts
in furtherance of the fraudulent scheme.

93.     The objective of the conspiracy was to induce the plaintiffs to invest in East 62nd
Holding based on the false and fraudulent representations set forth above.

94.     Each of the defendants participated fully in the conspiracy, as the funds
fraudulently induced were transferred from East 62nd Holding to East 62nd Associates and then to
MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to
satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities,
unrelated to East 62nd Holding or the East 62nd Street Project.

95.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the
defendants, made the false and fraudulent statements set forth above, and thereafter conspired to
loot the funds invested by the plaintiffs.

96.     Through concerted action, as agreed upon among associated companies,
associates and managers, as described above, defendants in fact engaged in conduct violative of
plaintiffs' rights.

97.     Defendants intended these actions to occur and intended to cause injury to
plaintiffs as a part of their conspiratorial scheme.

98.     By virtue of the formation and operation of this unlawful conspiracy, and as a
consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs,
defendants are liable for the above-described acts committed by each conspirator.

99.     As a result of these acts and conduct, plaintiffs have suffered and will continue to
suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an

amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

100.    Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, Carbone, East 62nd Associates, and MPE)

101.    Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 100 above, as if fully set forth in full herein.

102.    Defendants D'Alessio, Carbone, East 62nd Associates, and MPE caused funds that were intended for the development of the East 62nd Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

103.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from East 62nd Holding.

104.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

105.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them.  No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

106.    By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

## FOURTH CAUSE OF ACTION
### (Conversion against all Defendants)

107.    Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 106 above, as if fully set forth in full herein.

108.    Plaintiffs invested funds into East 62nd Holding for the purposes of construction and development of the East 62nd Street Project and to secure the returns that were promised.

109.    Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

110.    As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $3,000,000, plus interest and costs.

111.    By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $3,000,000, plus interest and costs.

## FIFTH CAUSE OF ACTION
### (Breach of Guaranty against D'Alessio)

112.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 111 above, as if fully set forth herein.

113.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

114.    At all times, D'Alessio has served as the manager of East 62nd Holding.

17

115.    D'Alessio executed the Operating Agreement of East 62nd Holding in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

116.    East 62nd Holding has discontinued the payment of the return on investor equity.

117.    There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial.

118.    There remains due and owing to the plaintiffs unrepaid investor capital of at least $1,050,000.

119.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $1,200,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
(Breach of Contract as against East 62nd Holding)

120.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 119 above, as if fully set forth herein.

121.    The Operating Agreement of East 62nd Holding constitutes a valid and binding contract between plaintiffs and defendant East 62nd Holding.

122.     Plaintiffs have performed all of their material obligations under that contract.

123.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

124.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $1,050,000.

18

125.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against East 62nd Holding in an amount to be determined at trial, but believed to be excess of $1,200,000, plus interest and costs.

### SEVENTH CAUSE OF ACTION
(For a Constructive Trust against D'Alessio, Carbone, East 62nd Associates, and MPE)

126.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 125 above, as if fully set forth herein.

127.    Pursuant to the terms of the Operating Agreement, D'Alessio and FCP were fiduciaries obligated to act in the best interest of East 62nd Holding and its investors.

128.    D'Alessio and FCP, on behalf of themselves and Carbone, East 62nd Associates, and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the East 62nd Street Project and not to enrich themselves.

129.    The plaintiffs invested in East 62nd Holding in reliance on the representations made to them in the PPM and by D'Alessio and FCP.

130.    D'Alessio has threatened to turn over the 62nd Street Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

131.    Upon information and belief, D'Alessio is attempting to sell the Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

132.    A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all of their interest in the Property.

133.   Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

134.   Plaintiffs repeat, reallege, and incorporate paragraphs 1 through 133 above as if fully set forth herein.

135.   In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

136.   Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiffs will suffer irreparable harm, in that plaintiffs will be divested of their capital interest in the Property.

137.   Plaintiffs have no adequate remedy at law.

138.   Accordingly, plaintiffs are entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.   On the First Cause of Action as against defendants D'Alessio, Carbone, East 62nd Holding, and FCP, awarding plaintiffs damages in an amount to be determined at trial, but not less than $3,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.   On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $3,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

20

c.      On the Third Cause of Action as against defendants D'Alessio, Carbone, East 62nd

Associates, and MPE, awarding plaintiffs damages in an amount to be determined at trial, but not

less than $3,000,000, with interest thereon;

d.      On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial, but not less than $3,000,000, with interest thereon;

e.      On the Fifth Cause of Action as against D'Alessio, awarding plaintiffs damages in

an amount to be determined at trial but not less than $1,200,000, with interest thereon;

f.      On the Sixth Cause of Action as against East 62nd Holding, awarding plaintiffs

damages in an amount to be determined at trial but not less than $1,200,000, with interest

thereon;

g.      On the Seventh Cause of Action as against defendants D'Alessio, Carbone, East

62nd Associates, and MPE, imposing a constructive trust with respect to the real property located

at 145-147 East 62nd Street, New York, New York, or with respect to any proceeds paid as a

result of any sale of the real property located at 145-147 East 62nd Street, New York, New York;

h.      On the Eighth Cause of Action, issuing an Order preliminarily and permanently

enjoining and restraining defendants from selling or otherwise transferring the real property

located at 145-147 East 62nd Street, New York, New York;

i.      Awarding the costs and fees, including reasonable attorneys' fees, to the

plaintiffs; and

j.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
      March 14, 2018

**ROSENFELD & KAPLAN, LLP**

By: _(signature)_

Tab K. Rosenfeld
Steven M. Kaplan
Nicole E. Meyer
1180 Avenue of the Americas
Suite 1920
New York, New York 10036
(212) 682-1400
*Attorneys for the plaintiffs*

## VERIFICATION

STATE OF NEW YORK     )
                            ) ss.:
COUNTY OF WESTCHESTER   )

     MICHAEL KOHN, being duly sworn, deposes and says:

     I am an officer of the plaintiff Attis Properties, Inc. in this action.  I have read the

foregoing Verified Complaint and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

as to those matters, I believe them to be true.

                                                     Michael Kohn

Sworn to me before me this
14th day of March, 2018

                        
Notary Public

**WANDA R. REYNOLDS**
Notary Public, State of New York
No. 01RE5015765
Qualified in Westchester County
Commission Expires 7-26-2021

# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------------x

RELLA FOGLIANO, JOSEPH BREDA,
MARILYN SHENDELL, ATTIS PROPERTIES, INC.,
RNG WEA LLC, JACQUELINE MARTINEZ,          Plaintiffs designate Westchester
DOUGLAS SCIBELLI, JOSHUA BROWN, ANGIE      County as the Place of Trial
BROWN, PHILIP GOLDSTEIN, ELLEN
GOLDSTEIN, ROBERT CICERO, KEITH
HUMMEL, and PHILIP HEALY,

                          Plaintiffs,      Index No.:

            -against-                      **SUMMONS**

163-165 EAST 62nd STREET HOLDING LLC,
163-165 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
BLUESTONE 163-165 LLC,

                          Defendants.

------------------------------------------------------------------x

To the above named Defendants:

        **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:        163-165 EAST 62nd STREET HOLDING LLC
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

                              163-165 EAST 62nd ASSOCIATES LLC
                              c/o Michael Paul Enterprises, LLC
                              12 Water Street
                              White Plains, New York 10601

MICHAEL PAUL D'ALESSIO
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

BLUESTONE 163-165 LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
      March 13, 2018

**ROSENFELD & KAPLAN, LLP**

By:    Tab K. Rosenfeld
         Steven M. Kaplan
         Nicole E. Meyer
         1180 Avenue of the Americas, Suite 1920
         New York, NY 10036
         (212) 682-1400
         *Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------x
RELLA FOGLIANO, JOSEPH BREDA,
MARILYN SHENDELL, ATTIS PROPERTIES, INC.,
RNG WEA LLC, JACQUELINE MARTINEZ,
DOUGLAS SCIBELLI, JOSHUA BROWN, ANGIE
BROWN, PHILIP GOLDSTEIN, ELLEN
GOLDSTEIN, ROBERT CICERO, KEITH
HUMMEL, and PHILIP HEALY,

                               Plaintiffs,           Index No.:

           -against-                **VERIFIED COMPLAINT**

163-165 EAST 62nd STREET HOLDING LLC,
163-165 EAST 62nd ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
BLUESTONE 163-165 LLC,

                         Defendants.
-----------------------------------------------------------------x

      Plaintiffs Rella Fogliano, Joseph Breda, Marilyn Shendell, Attis Properties, Inc., RNG

WEA LLC, Jacqueline Martinez, Douglas Scibelli, Joshua Brown, Angie Brown, Philip

Goldstein, Ellen Goldstein, Robert Cicero, Keith Hummel and Philip Healy (collectively, the

"plaintiffs") for their Verified Complaint against defendants 163-165 East 62nd Street Holding,

LLC, 163-165 East 62nd Street Associates LLC, Michael Paul D'Alessio, Michael Paul

Enterprises, LLC, and Bluestone 163-165 LLC (collectively, the "defendants"), allege as

follows:

## NATURE OF THE ACTION

      1.      Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 163-167 East 62nd Street, New York, New York

(the "East 62nd Street Project").

2.    The defendants purchased the property, which consisted of two existing

townhouses, with a plan demolish those properties and construct in their place a new six-story

building with 5 luxury condominium units.

3.    Plaintiffs were induced by defendants to invest millions of dollars in the East 62nd

Street Project, with such investments being made through 163-165 East 62nd Street Holding

LLC, which D'Alessio promised would bring in an "equity return" of 10% to 16% per year and

would allow for quick turn-around on a return of all capital invested.

4.    Rather than putting the funds toward their intended use, however, the defendants,

upon information and belief, began siphoning the investor funds for personal use, co-mingling

funds earmarked for the East 62nd Street Project with other projects owned and controlled by

D'Alessio, using the assets of 163-165 East 62nd Street Holding LLC to finance other D'Alessio-

controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the

funds entrusted to him by investors.

5.    Having divested 163-165 East 62nd Street Holding LLC of its assets, and having

looted and misused its funds, the defendants took on massive debt on the property, making a

return to the investors an impossibility.  The defendants, nonetheless, continued to represent to

the plaintiffs and other investors that the East 62nd Street Project could still be profitable, and

refused to apprise investors as to the actual financial condition or the massive amount of debt

that had been incurred.

6.    As a result of defendants' acts of financial defalcation, the East 62nd Street Project

has become overextended.  Because of this, the defendants are seeking in this and in other

2

D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

## PARTIES

7.      Plaintiff Rella Fogliano ("Fogliano") is a New York resident with a business address c/o The MacQuesten Companies, 438 Fifth Avenue, Pelham, NY 10803. Fogliano is a member of 163-165 East 62nd Street Holding LLC.

8.      Plaintiff Joseph Breda ("Breda") is a New York resident with a business address c/o The MacQuesten Companies, 438 Fifth Avenue, Pelham, NY 10803. Breda is a member of 163-165 East 62nd Street Holding LLC.

9.      Plaintiff Marilyn Shendell ("Shendell") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801. Shendell is a member of 163-165 East 62nd Street Holding LLC.

10.      Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528. Attis was formerly known as S. & G. Gross Co., Inc. Attis is a member of 163-165 East 62nd Street Holding LLC and Bluestone 163-165 LLC.

11.      Plaintiff RNG WEA LLC ("RNG") is a New York limited liability company with an address of 3 Oxford Court, Morganville, New Jersey 07751. RNG is a member of 163-165 East 62nd Street Holding LLC.

12.      Plaintiff Jacqueline Martinez ("Martinez") is a New York resident with an address at 9 Thomas Drive, Hauppauge, NY 11788. Martinez is a member of 163-165 East 62nd Street Holding LLC.

13.     Plaintiff Douglas Scibelli ("Scibelli") is a New York resident with an address at

605 West 112th Street, Apt. 6B, New York, NY 10025. Scibelli is a member of 163-165 East 62nd

Street Holding LLC.

14.     Plaintiff Joshua Brown is a Connecticut resident with an address at 15 Tally Ho

Lane, Stamford CT, 06905.  Joshua Brown, together with his wife Angie Brown, is a member of

163-165 East 62nd Street Holding LLC.

15.     Plaintiff Angie Brown is a Connecticut resident with an address at 15 Tally Ho

Lane, Stamford CT, 06905. Angie Brown, together with her husband Joshua Brown, is a member

of 163-165 East 62nd Street Holding LLC.

16.     Plaintiff Philip Goldstein is a New York resident with an address at 3975

Sedgwick Avenue, Apt 4H, Bronx, New York 10463.  Philip Goldstein, together with his wife

Ellen Goldstein, is a member of 163-165 East 62nd Street Holding LLC.

17.     Plaintiff Ellen Goldstein is a New York resident with an address at 3975

Sedgwick Avenue, Apt 4H, Bronx New York 10463. Ellen Goldstein, together with her husband

Philip Goldstein, is a member of 163-165 East 62nd Street Holding LLC.

18.     Plaintiff Robert Cicero ("Cicero") is a Connecticut resident with an address at 1

Fox Ridge Drive, New Milford, CT 06776. Cicero is a member of 163-165 East 62nd Street

Holding LLC.

19.     Plaintiff Keith Hummel ("Hummel") is a New York resident with an address at 10

Carriage Hill Road, West Harrison, NY 10604. Hummel is a member of 163-165 East 62nd Street

Holding LLC.

20.     Plaintiff Philip Healy ("Healy") is a New Hampshire resident with an address at

12 Knoll Crest, Bedford, NH.  Healy is a member of Bluestone 163-165 LLC.

4

21.    Defendant 163-165 East 62nd Street Holding LLC ("East 62nd Holding") is a New

York limited liability company formed in 2015 as an investment vehicle to develop real property

located at 163-167 East 62nd Street, New York, New York (the "Property"). East 62nd Holding

lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12 Water Street,

White Plains, New York 10601. East 62nd Holding is the sole member of 163-165 East 62nd

Street Associates LLC.

22.    Defendant 163-165 East 62nd Street Associates LLC ("East 62nd Associates") is a

New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12

Water Street, White Plains, New York 10601. East 62nd Associates holds title to the Property.

23.    Defendant Michael Paul D'Alessio is a New York resident with a business

address at 12 Water Street, White Plains, New York 10601.

24.    Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited

liability company with an address at 12 Water Street, White Plains, New York 10601. Upon

information and belief, MPE is controlled by D'Alessio.

25.    Defendant Bluestone 163-165 LLC ("Bluestone") is a New York limited liability

company formed in 2015. Upon information and belief, Bluestone is controlled by D'Alessio.

Bluestone is the managing member of East 62nd Holding and maintains its offices at 12 Water

Street, White Plains, New York 10601.

## FACTS

26.    East 62nd Holding was created in 2015 by D'Alessio to acquire the Property

through East 62nd Associates and to thereafter demolish the two existing townhouses and

construct in their place a new six-story building with 5 luxury condominium units.

5

27.     East 62nd Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

28.     All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601 serving as the office for the Company, with a promised "equity return" of 10% to 16% per year, with a quick turn-around on a return of all capital invested, and with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

29.     Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

30.     East 62nd Holding followed the investment structure used by D'Alessio.

31.     East 62nd Holding initially was planned to involve the development of two adjoining properties located at 163 and 165 East 62nd Street in New York City.

32.     In East 62nd Holding's Confidential Private Placement Memorandum dated July 27, 2015 (the "PPM"), East 62nd Holding, Bluestone, and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $31,358,496."

33.     Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the $31,358,496 Project cost.  The *Pro Forma* listed the costs as" Land Purchase Price, $15,320,000; Project Soft Costs, $3,307,584; Project Hard Costs, $9,609,912; and Preferred Return on Equity, $3,040,000.

6

34.     The *Pro Forma* also listed the source of funding for the Project Costs as: Senior

Debt, $10,000,000; Sponsor Equity Contribution $2,358,960; and "JV Investor's Equity

Contribution," $19,000,000.

35.     The PPM stated that the construction of the East 62nd Street Project would be

done by MPE, an affiliate of Bluestone and D'Alessio, for a "fixed price," and provided that the

"Mr. D'Alessio has personally guaranteed payment of hard costs of construction in excess of the

contract sum."

36.     The PPM provided that "Members of the Company, other than the Managing

Member . . . are entitled to (a) an Equity Return of 16% per annum, payable monthly on the

amount of their Capital Contribution, beginning as of the date such Capital Contribution is

actually fully paid to the Company . . . ; and (b) return of the full amount of their Capital

Contributions within 24 months."

37.     The PPM provided that "Payment of the Investors' Equity Return and repayment

of Capital Contributions in accordance with the foregoing will be guaranteed personally by the

Manager."

38.     The PPM identified Bluestone as the managing member of East 62nd Holding,

and identified D'Alessio individually as "the manager."

39.     The PPM provided that while funds raised or acquired by East 62nd Holding could

be maintained in a "general account," that such funds would "be in the Company control and

may be used for Company purposes."

40.     The PPM referenced the fact that D'Alessio was seeking to acquire additional

adjoining properties and that, if successful, they would be added to the East 62nd Street Project.

7

41.     On or about June 15, 2016, D'Alessio wrote, on the letterhead of MPE (the "June 15 Solicitation Letter"), to the plaintiffs and to other existing and potential investors, to announce: "Finally, we got the 3rd Building," located at 167 East 62nd Street.

42.     The June 15 Solicitation Letter stated that "we are in the process of purchasing the 3rd existing and adjoining" townhouse, and stated that the plan was now to "convert the three (3) individual townhouses into one (1) new 48 foot wide 7-story plus basement," building with 10 luxury units.

43.     D'Alessio stated that he was seeking to raise $19,000,000 from investors and stated that "I will be personally investing $2,832,256 of my own equity into this project."

44.     The June 15 Solicitation Letter stated: "The investor's equity would hold a primary position for capital distributions and would come out of the project before I, the Sponsor, receive reimbursement for any of my initial investment."

45.     The June 15 Solicitation Letter stated: "The investor's equity will be returned in full within 24 months."

46.     The June 15 Solicitation Letter stated. **"the investors will receive a 16% preferred annual return on their money payable monthly during the duration of the project.  I will be personally guaranteeing the return of both the investors' equity, as well as the 16% return on the money invested.**  Both funds will come out of the project prior to the return of the Sponsor's equity or proceeds."  (Emphasis in original.)

47.     The June 15 Solicitation Letter stated the "construction hard costs for this project are fixed and guaranteed by the Sponsor."

48.     Annexed as an exhibit to the June 15 Solicitation Letter was a *Pro Forma* statement that provided detail as to the investment.  It stated that the overall project cost would

be $46,832,256, and listed such costs as consisting of: Land Purchase Price, $24,243,840; Land

Soft Cost, $2,407,680; Project Soft Costs, $6,456,960; and Project Hard Costs, $13,723,776.

49.     The *Pro Forma* also listed the source of funding for the Project Costs as: Senior

Debt, $25,000,000; Sponsor Equity Contribution $2,832,256; and "JV Investor's Equity

Contribution," $19,000,000.

50.     D'Alessio represented to multiple investors in June, 2016 that all necessary

approvals for the East 62nd Street Project had been obtained and that the Project would move

forward expeditiously.

51.     Based on the promises and representations made by D'Alessio, each of the

plaintiffs invested in East 62nd Holding.

52.     In or about July, 2016, and October, 2016 plaintiff Attis executed subscription

agreements for 4 "units" in East 62nd Holding at a total price of $200,000.

53.     In or about July, 2016, plaintiff Fogliano executed a subscription agreement for

10 "units" in East 62nd Holding at a total price of $500,000, and signed second subscription

agreement in or about November 2016 for additional 10 "units" in East 62nd Holding for another

$500,000.

54.     In or about July, 2016, plaintiff Breda executed a subscription agreement for 6

"units" in East 62nd Holding at a total price of $300,000.

55.     In or about July, 2016, plaintiff Shendell executed a subscription agreement for 2

"units" in East 62nd Holding at a total price of $100,000.

56.     Plaintiff RNG executed a subscription agreement for 4 "units" in East 62nd

Holding at a total price of $200,000.

9

57.   In or about December 2015, plaintiff Martinez executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

58.   In or about November 2015, plaintiff Scibelli executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

59.   In or about June 2016, plaintiffs Joshua and Angie Brown jointly executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

60.   Plaintiffs Philip and Ellen Goldstein jointly executed a subscription agreement for 1 "unit" in East 62nd Holding at a total price of $50,000.

61.   Plaintiff Cicero executed a subscription agreement for 2 "units" in East 62nd Holding at a total price of $100,000.

62.   Plaintiff Hummel executed a subscription agreement for 4 "units" in East 62nd Holding at a total price of $200,000.

63.   Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and Bluestone thereafter entered into an Operating Agreement for East 62nd Holding (the "Holding Operating Agreement"). D'Alessio, on behalf of Bluestone and individually as "Guarantor," signed the Holding Operating Agreement.

64.   Thereafter, in 2017, D'Alessio began soliciting investments for his controlled entity, defendant Bluestone, in order to be able to "fund" his "Sponsor" obligation.

65.   D'Alessio solicited investments into Bluestone by making the same representations as to repayment of capital and a 12% preferred return, and personally guaranteed the repayment of all investor capital and all preferred returns.

10

66.     In reliance on D'Alessio's representations and promises, in or about June 2017, plaintiff Healy executed a subscription agreement for "units" in Bluestone at a total price of $250,000.

67.     In reliance on D'Alessio's representations and promises, in or about June 2017, plaintiff Attis executed a subscription agreement for "units" in Bluestone at a total price of $150,000.

68.     Thereafter, plaintiffs Healy and Attis and defendant Bluestone entered into an Operating Agreement for Bluestone (the "Bluestone Operating Agreement"). D'Alessio, on behalf of Bluestone and individually as "Guarantor," signed the Bluestone Operating Agreement.

**Defendants' Financial Defalcations**

69.     D'Alessio structured the investment so that money from investors would flow into East 62nd Holding and would be funneled to East 62nd Associates, and then to MPE, purportedly for work to be done on the East 62nd Street Project.

70.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

71.     At the time that he was soliciting investments from the plaintiffs and others, upon information and belief, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential returns.

72.    Despite doing no significant construction on the East 62nd Street Project in 2015 and 2016, MPE was paid approximately $8.56 million by East 62nd Associates for construction costs during 2015 and 2016 and additional funds were paid to D'Alessio directly.

73.    In 2015, MPE received from East 62nd Associates payments of $5,972,182. Defendants recorded this payment as a "construction advance." Upon information and belief, no construction was performed in 2015.

74.    In 2016, East 62nd Associates paid approximately $2,589,000 to MPE for construction. Upon information and belief, little, if any, construction occurred in 2016.

75.    In 2016, East 62nd Associates advanced approximately $573,000 to D'Alessio individually as a construction expense. Upon information and belief, little, if any, construction occurred in 2016.

76.    Upon information and belief, funds were funneled to MPE, where funds from multiple D'Alessio-sponsored investments were co-mingled and thereafter used for purposes in direct violation of the operating agreements of those investments.

77.    In January 2016, MPE sent an investor newsletter, representing as to the current status of the East 62nd Street Project that the demolition was completed, as well as part of the excavation. Such statements were untrue and were designed to convince investors that the Project was proceeding as scheduled and as had been represented.

78.    Upon information and belief, no significant work occurred on the East 62nd Street Project until 2017, and at a far slower, and less substantial rate than was represented.

79.    In January 2017, the defendants sent an MPE "investor newsletter" to plaintiffs and other investors. This newsletter stated that as to current status of the East 62nd Street Project, that the demolition was completed, as well as partial excavation of 2 of the 3 buildings.

80.    The statements in the January 2017 newsletter were false, as demolition was only beginning at that time and no substantial work had yet been done.

81.    Upon information and belief, East 62nd Associates expended approximately $1,210,000 in demolition and excavation costs and incurred little actual construction costs.

82.    In November 2017, MPE issued a "bill" to East 62nd Associates for construction costs of $13,605,776, which amount matched the "Fixed Construction Costs" represented to the investors in an investor letter dated July 12, 2016.

83.    Upon information and belief, the "construction costs" reflected on the November invoice were fictitious, as little, if any, of the work "billed" was actually performed.

84.    Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiffs, choosing instead to conceal their financial improprieties.

85.    The "equity return" promised to plaintiffs and other investors has been discontinued after initially being paid.

86.    According to the financial records of East 62nd Holding, by 2017, East 62nd Holding had incurred "capitalized construction costs" of $21,919,561.

87.    By letter dated November 27, 2017 (the "November Letter"), D'Alessio, writing on behalf of East 62nd Holding, advised plaintiffs and other investors that East 62nd Holding was suffering from a liquidity problem arising from "delays and litigation which has resulted in overruns in costs far beyond what could have been contemplated."

88.    The November Letter stated that there were insufficient funds to complete the East 62nd Street Project or to meet carrying costs; that the Project was only 20% completed; and that if the Project sold in its present state it would result in a significant loss of invested capital.

13

89.     The November Letter stated that "[i]n the current state of construction," the "fair market value" of the underlying property was $22 to $25 million.

90.     In the November Letter, the defendants asked "all investors to waive the guaranteed equity returns."

91.     The November Letter failed to diclose that the construction costs were fabricated and that D'Alessio had moved money into and out of the East 62nd Holding account as if it were his personal piggy bank.

92.     By letter dated February 20, 2018 (the "February Letter"), D'Alessio, writing on behalf of East 62nd Holding, notified investors that approximately 25% of the construction has been completed; however, the "Company lacked funds with which to pay the debt service due February 1st and the mortgagee has given notice of its intention to foreclose its mortgage." The letter goes on to state that the mortgagee has proposed accepting deeds to the property in lieu of foreclosure and cancelling D'Alessio's personal guarantee of the mortgage, and that East 62nd Holding intended to accept that offer on or about February 28, 2018.

93.     The February Letter stated that "local municipal approval and other issues had prolonged the development, driving up the Company's carrying costs."

94.     Upon information and belief, defendants have sold and/or are in the process of selling the Property to a third party at a below-market price, in a manner designed to free D'Alessio and his managing member entity of any gurantees to the first mortgagor, and to divest investors of 100% of their capital.

95.     Between 2015 and 2017, East 62nd Associates received in excess of $49 million in funds for the East 62nd Street Project, including $26,427,003 in investment funding from East 62nd Holding.

96.     Upon information and belief, substantial funds were transferred from East 62nd

Associates to MPE, where such funds were either co-mingled with funds of other D'Alessio

Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled

by him.

97.     Upon information and belief, funds were taken by the defendants for construction

that did not take place.

98.     Upon information and belief, the defendants utilized the funds of East 62nd

Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to East

62nd Holding.

99.     Upon information and belief, and given the lack of an available revenue source,

D'Alessio used funds invested by the plaintiffs and earmarked for the East 62nd Street Project for

his own personal use.

## FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, East 62nd Holding and Bluestone)

100.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in

paragraphs 1 to 99 above, as if fully set forth herein.

101.    To induce each of the plaintiffs to invest in East 62nd Holding and Bluestone,

D'Alessio, on behalf of himself and on behalf of East 62nd Holding and Bluestone, made multiple

misrepresentations, including, without limitation:

    a.   That the funds raised by East 62nd Holding would be used exclusively on behalf of

        East 62nd Holding and would not be co-mingled with funds belonging to other

        D'Alessio-sponsored investments, or used for any other purposes;

    b.   That the full capital of each investor would be returned within 24 months;

c.  That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns;

d.  That all of the permits for the work had been obtained and that demolition and construction would proceed expeditiously; and

e.  That investments made into East 62nd Holding and Bluestone would receive a return of their capital before D'Alessio received a repayment of his investment or any profit distribution.

102.  The foregoing representations were false, and D'Alessio, on behalf of himself, East 62nd Holding, and Bluestone, made these representations knowing them to be false.

103.  At the time that he was making these statements to induce investments in East 62nd Holding and Bluestone, D'Alessio knew:

a.  that money raised by East 62nd Holding and Bluestone would be comingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b.  that the East 62nd Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months;

c.  that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors;

d.  that the East 62nd Street Project lacked the necessary permits to proceed expeditiously, and that local and community approval had not been obtained; and that

16

e. D'Alessio intended to remove his funds - - whether through construction "advances," loans or distributions in advance of repaying the capital of investors.

104. D'Alessio, on behalf of himself, East 62nd Holding and Bluestone, made these representations to the plaintiffs in order to induce them to invest in the East 62nd Street Project.

105. Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, East 62nd Holding, and Bluestone.

106. As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $10,000,000, with interest thereon.

107. The conduct of East 62nd Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

108. Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 107 above, as if fully set forth in full herein.

109. Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

110. D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

111. The objective of the conspiracy was to induce each of the plaintiffs to invest in East 62nd Holding and Bluestone based on the false and fraudulent representations set forth above.

17

112.     Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from East 62nd Holding to East 62nd Associates and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to East 62nd Holding or the East 62nd Street Project.

113.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiffs.

114.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiffs' rights.

115.     Defendants intended these actions to occur and intended to cause injury to plaintiffs as a part of their conspiratorial scheme.

116.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs, defendants are liable for the above-described acts committed by each conspirator.

117.     As a result of these acts and conduct, plaintiffs have suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $10,000,000, plus interest and costs.

118.     Defendants' conduct, as described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in

a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against D'Alessio, East 62nd Associates, and MPE)

119.    Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 118 above, as if fully set forth in full herein.

120.    Defendants D'Alessio, East 62nd Associates, and MPE caused funds that were intended for the development of the East 62nd Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

121.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from East 62nd Holding.

122.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

123.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them. No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

124.    By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

### FOURTH CAUSE OF ACTION
(Conversion against all Defendants)

125.    Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 124 above, as if fully set forth in full herein.

19

126.    Plaintiffs invested their funds into East 62nd Holding for the purposes of construction and development of the East 62nd Street Project and to secure the returns that were promised.

127.    Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

128.    As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $5,000,000, plus interest and costs.

129.    By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $5,000,000, plus interest and costs.

## FIFTH CAUSE OF ACTION
### (Breach of Guaranty against D'Alessio)

130.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 129 above, as if fully set forth herein.

131.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

132.    At all times, D'Alessio has served as the manager of East 62nd Holding.

133.    The June 15 Solicitation Letter sent by D'Alessio to plaintiffs and other investors stated: "I will be personally guaranteeing the return of both the investors equity, as well as the 16% return on the money invested." (Emphasis in original.)

134.    D'Alessio executed each of the Operating Agreements of East 62nd Holding and Bluestone in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

135.   East 62nd Holding and Bluestone have discontinued the payment of the return on investor equity.

136.   In the February Letter, D'Alessio advised the plaintiffs that the underlying Property was being surrendered to the property mortgagor, thereby extinguishing all investor equity in the property, and all capital of the plaintiffs in East 62nd Holding and Bluestone.

137.   Upon information and belief, defendants have sold and/or are in the process of selling the Property to a third party at a below-market price, in a manner designed to free D'Alessio and his managing member entity of any gurantees to the first mortgagor, and to divest investors of 100% of their capital.

138.   There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial, but believed to be in excess of $250,000.

139.   There remains due and owing to the plaintiffs unrepaid investor capital of at least $2.8 million.

140.   By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $3,050,000, plus interest and costs.

<u>**SIXTH CAUSE OF ACTION**</u>
(Breach of Contract as against East 62nd Holding)

141.   Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 140 above, as if fully set forth herein.

142.   The Operating Agreement of East 62nd Holding constitutes a valid and binding contract between plaintiffs and defendant East 62nd Holding.

143.   Plaintiffs have performed all of their material obligations under that contract.

21

144.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

145.    East 62nd Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $2.8 million.

146.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against East 62nd Holding in an amount to be determined at trial, but believed to be excess of $3,050,000, plus interest and costs.

### SEVENTH CAUSE OF ACTION
(Breach of Contract as against Bluestone on behalf of plaintiffs Healy and Attis)

147.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 146 above, as if fully set forth herein.

148.    The Operating Agreement of Bluestone constitutes a valid and binding contract between plaintiffs Healy and Attis and defendant Bluestone.

149.    Plaintiffs Healy and Attis have performed all of their material obligations under that contract.

150.    Bluestone has breached its obligations to plaintiffs Healy and Attis under the contract by failing to pay the returns on equity invested.

151.    Bluestone has breached its obligations to plaintiffs Healy and Attis under the contract by failing to repay investor capital of at least $400,000.

152.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against Bluestone in an amount to be determined at trial, but believed to be excess of $450,000, plus interest and costs.

## EIGHTH CAUSE OF ACTION

(For A Constructive Trust as Against D'Alessio, East 62nd Associates, and MPE)

153.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 152 above, as if fully set forth herein.

154.    Pursuant to the terms of the Operating Agreements, D'Alessio and Bluestone were fiduciaries obligated to act in the best interest of East 62nd Holding and its investors.

155.    Each of D'Alessio and Bluestone, on behalf of themselves and East 62nd Associates and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the East 62nd Street Project and not to enrich themselves.

156.    Each of the plaintiffs invested in East 62nd Holding in reliance on the representations made to them in the PPM and by D'Alessio and Bluestone.

157.    D'Alessio has threatened to turn over the Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

158.    Upon information and belief, D'Alessio is attempting to sell the 62nd Street Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

159.    A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all of their interests in the Property.

160.    Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

23

### NINTH CAUSE OF ACTION

(Preliminary and Permanent Injunction as Against All Defendants)

161.    Plaintiffs repeat, reallege and incorporate paragraphs 1 through 160 above as if fully set forth herein.

162.    In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

163.    Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiffs will suffer irreparable harm in that plaintiffs will be divested of their capital interest in the Property.

164.    Plaintiffs have no adequate remedy at law.

165.    Accordingly, plaintiffs are entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.    On the First Cause of Action as against D'Alessio, East 62nd Holding and Bluestone, awarding plaintiffs damages in an amount to be determined at trial, but not less than $10,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.    On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $10,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.      On the Third Cause of Action as against defendants D'Alessio, East 62nd

Associates, and MPE, awarding plaintiffs damages in an amount to be determined at trial, but not

less than $5,000,000, with interest thereon;

d.      On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial, but not less than $5,000,000, with interest thereon;

e.      On the Fifth Cause of Action as against D'Alessio, awarding plaintiffs damages in

an amount to be determined at trial, but not less than $3,050,000, with interest thereon;

f.      On the Sixth Cause of Action as against defendant East 62nd Holding, awarding

plaintiffs damages in an amount to be determined at trial, but not less than $3,050,000, with

interest thereon;

g.      On the Seventh Cause of Action as against defendant Bluestone, awarding

plaintiffs Healy and Attis damages in an amount to be determined at trial, but not less than

$450,000, with interest thereon;

h.      On the Eighth Cause of Action as against defendants D'Alessio, East 62nd

Associates, and MPE, imposing a constructive trust with respect to the real property located at

163-167 East 62nd Street, New York, New York, or with respect to any proceeds paid as a result

of any sale of the real property located at 163-167 East 62nd Street, New York, New York;

i.      On the Ninth Cause of Action, issuing an Order preliminarily and permanently

enjoining and restraining defendants from selling or otherwise transferring the real property

located at 163-167 East 62nd Street, New York, New York;

j.      Awarding the costs and fees, including reasonable attorneys' fees, to the

plaintiffs; and

k.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
        March 13, 2018

ROSENFELD & KAPLAN, LLP

By: _____

Tab K. Rosenfeld
Steven M. Kaplan
Nicole E. Meyer
1180 Avenue of the Americas
Suite 1920
New York, New York 10036
(212) 682-1400
*Attorneys for plaintiffs*

## VERIFICATION

STATE OF NEW YORK     )
                                  ) ss.:
COUNTY OF WESTCHESTER   )

      MICHAEL KOHN, being duly sworn, deposes and says:

      I am an officer of the plaintiff Attis Properties, Inc. in this action. I have read the

foregoing Verified Complaint and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged upon information and belief, and

as to those matters, I believe them to be true.

 

                                                      Michael Kohn

Sworn to me before me this
13 day of March, 2018

CYNTHIA PALETTA
Notary Public – State of New York
NO. 01PA6282215
Qualified in Westchester County
My Commission Expires May 20, 2021

Notary Public

18-22552-rdd   Doc 39-6   Filed 06/08/18   Entered 06/08/18 16:17:13   Exhibit F
Pg 1 of 33

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------x
STACEY GENDELS, BONNI STANLEY,
MARILYN SHENDELL, ATTIS PROPERTIES, INC.,
PHILIP GOLDSTEIN, ELLEN GOLDSTEIN,                Plaintiffs designate Westchester
ROBERT CICERO, and KEITH HUMMEL,                  County as the Place of Trial

                              Plaintiffs,

        -against-                                 Index No.:

227 E 67th STREET HOLDING LLC,                    **SUMMONS**
227 E 67th ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 67 LLC,


                              Defendants.
---------------------------------------------------------------x
To the above named Defendants:

        **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:          227 E 67th STREET HOLDING LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                227 E 67th ASSOCIATES LLC
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

                                MICHAEL PAUL D'ALESSIO
                                c/o Michael Paul Enterprises, LLC
                                12 Water Street
                                White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

BLUESTONE 67 LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
     March 13, 2018

              **ROSENFELD & KAPLAN, LLP**

By:    Tab K. Rosenfeld
       Steven M. Kaplan
       Nicole E. Meyer
       1180 Avenue of the Americas, Suite 1920
       New York, NY 10036
       (212) 682-1400
       *Attorneys for Plaintiffs*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------x
STACEY GENDELS, BONNI STANLEY,
MARILYN SHENDELL, ATTIS PROPERTIES, INC.,
PHILIP GOLDSTEIN, ELLEN GOLDSTEIN,
ROBERT CICERO, and KEITH HUMMEL,

                                 Plaintiffs,               Index No.:

             -against-                        **VERIFIED COMPLAINT**

227 E 67th STREET HOLDING LLC,
227 E 67th ASSOCIATES LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC,
and BLUESTONE 67 LLC,

                               Defendants.
-------------------------------------------------------------------x

       Plaintiffs Stacey Gendels, Bonni Stanley, Marilyn Shendell, Attis Properties, Inc., Philip

Goldstein, Ellen Goldstein, Robert Cicero, and Keith Hummel, for their Verified Complaint

against defendants 227 E 67th Street Holding, LLC, 227 E 67th Street Associates, LLC, Michael

Paul D'Alessio, Michael Paul Enterprises, LLC, and Bluestone 67 LLC, allege as follows:

## NATURE OF THE ACTION

       1.      Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 227 E 67th Street, New York, New York (the

"East 67th Street Project").

       2.      The defendants purchased the property, which constituted a three-story building

located at 227 E 67th Street, with a plan to demolish it and construct a new six-story building

containing five newly-constructed luxury residential condominium units.

3.      Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the East 67th Street Project, with such investments made through 227 E 67th Street Holding LLC, which D'Alessio promised would bring in a "preferred return" of 18% per year and would allow for quick turn-around on a return of all capital invested.

4.      Rather than putting the funds toward their intended use, however, defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the East 67th Street Project with other projects owned and controlled by D'Alessio, using the assets of 227 E 67th Street Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.      Having divested 227 E 67th Street Holding LLC of its assets, and having looted and misused its funds, the defendants took on massive debt on the property, making a return to the investors an impossibility.  The defendants, nonetheless, continued to represent to the plaintiffs and other investors that the East 67th Street Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

6.      As a result of defendants' acts of financial defalcation, the East 67th Street Project has become overextended.  Because of this, the defendants are seeking in this and in other D'Alessio-controlled projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

2

## PARTIES

7.    Plaintiff Stacey Gendels ("Gendels") is a Connecticut resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801.  Gendels is a member of 227 E 67th Street Holding LLC.

8.    Plaintiff Bonni Stanley ("Stanley") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801.  Stanley is a member of 227 E 67th Street Holding LLC.

9.    Plaintiff Marilyn Shendell ("Shendell") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801.  Shendell is a member of 227 E 67th Street Holding LLC.

10.    Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528.  Attis was formerly known as S. & G. Gross Co., Inc.  Attis is a member of 227 E 67th Street Holding LLC.

11.    Plaintiff Philip Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463.  Philip Goldstein, together with his wife Ellen Goldstein, is a member of 227 E 67th Street Holding LLC.

12.    Plaintiff Ellen Goldstein is a New York resident with an address at 3975 Sedgwick Avenue, Apt 4H, Bronx New York 10463.  Ellen Goldstein, together with her husband Philip Goldstein, is a member of 227 E 67th Street Holding LLC.

13.    Plaintiff Robert Cicero ("Cicero") is a Connecticut resident with an address at 1 Fox Ridge Drive, New Milford, CT 06776.  Cicero is a member of 227 E 67th Street Holding LLC.

3

14.     Plaintiff Keith Hummel ("Hummel") is a New York resident with an address at 10 Carriage Hill Road, West Harrison, NY 10604. Hummel is a member of 227 E 67th Street Holding LLC.

15.     Defendant 227 E 67th Street Holding LLC ("67th Holding") is a New York limited liability company formed in 2014 as an investment vehicle to develop real property located at 227 E 67th Street, New York, New York (the "Property"). 67th Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC 12 Water Street, White Plains, New York 10601. 67th Holding is the sole member of 227 E 67th Street Associates LLC.

16.     Defendant 227 E 67th Street Associates, LLC ("67th Associates") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. 67th Associates holds title to the Property.

17.     Defendant Michael Paul D'Alessio is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.

18.     Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited liability company with an address at 12 Water Street, White Plains, New York 10601. Upon information and belief, MPE is controlled by D'Alessio.

19.     Upon information and belief, defendant Bluestone 67 LLC ("Bluestone") is a Delaware limited liability company. Upon information and belief, Bluestone is controlled by Michael Paul D'Alessio. Bluestone is the managing member of East 67th Holding and maintains its offices at 12 Water Street, #204, White Plains, New York 10601.

4

## FACTS

20.     67th Holding was created in 2014 by D'Alessio to acquire the Property through 67th Associates, demolish it, and construct a new six-story building containing five newly-constructed luxury residential condominium units, with the plan to thereafter sell the units.

21.     67th Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

22.     All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio; with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601, serving as the office for the Company; with a promised "equity return" of 10% to 18% per year; with a quick turn-around on a return of all capital invested; and with D'Alessio's personal guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

23.     Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have total and unfettered control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

24.     67th Holding followed the investment structure used by D'Alessio.

25.     67th Holding disseminated multiple versions of a Private Placement Memorandum (the "PPM") to investors.

26.     In 67th Holding's Confidential PPM dated October 15, 2014, 67th Holding, Bluestone and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $19,152,625."

5

27.     Exhibit 1 to the October 15 PPM was a *Pro Forma* statement that provided detail as to the supposed project costs.  The *Pro Forma* listed overall costs of $19,199,206, broken down as follows: Land Purchase Price, $10,045,000; Project Soft Costs, $1,771,831; and Project Hard Costs, $7,382,375.

28.     The *Pro Forma* also listed the source of funding for the Project Costs as: Senior Debt, $11,491,575; Bluestone's Capital Contribution $957,631; and "Offering Proceeds," $6,750,000.

29.     In 67th Holding's Confidential PPM dated October 20, 2014, 67th Holding, Bluestone and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $19,149,000."

30.     Exhibit 1 to the October 20 PPM was a *Pro Forma* statement that provided detail as to the supposed project costs.  The *Pro Forma* listed overall costs of $19,149,000, broken down as follows: Land Purchase Price, $10,045,000; Project Soft Costs, $1,721,625; and Project Hard Costs, $7,382,375.

31.     The *Pro Forma* also listed the source of funding for the Project Costs as: Senior Debt, $11,491,000; Bluestone's Capital Contribution $958,000; and "Offering Proceeds," $6,700,000.

32.     Both the October 15 and October 20 PPMs stated in Section J, paragraph 1, that the construction of the East 67th Street Project would be done by MPE, an affiliate of Bluestone and D'Alessio, for a "fixed price of $7,382,375," and provided that D'Alessio, who was defined as the "Manager," has "personally guaranteed payment of hard costs of construction in excess of the contract sum."

6

33.     Both the October 15 and October 20 PPMs provided that "Members of the Company, other than the Managing Member . . . are entitled to (a) an Equity Return of 18% per annum, payable monthly on the amount of their Capital Contribution, beginning as of the date such Capital Contribution is actually fully paid to the Company . . . ; and (b) return of the full amount of their Capital Contributions, prior to the Managing Member receiving its Equity Return or return of its any [sic] portion of its Capital Contribution."

34.     Both the October 15 and October 20 PPMs provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

35.     Both the October 15 and October 20 PPMs provided that while funds raised or acquired by 67th Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

36.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in 67th Holding.

37.     In or about October, 2014, plaintiff Gendels executed a subscription agreement for "units" in 67th Holding.  Gendels thereafter forwarded payment of $67,000.

38.     In or about October, 2014, plaintiff Stanley executed a subscription agreement for "units" in 67th Holding.  Stanley thereafter forwarded payment of $67,000.

39.     In or about October, 2014, plaintiff Shendell executed a subscription agreement for "units" in 67th Holding.  Shendell thereafter forwarded payment of $67,000.

40.     Plaintiffs Philip and Ellen Goldstein jointly executed a subscription agreement for "units" in 67th Holding at a total price of $67,000.

41.     In or about May, 2017, Plaintiff Cicero executed a subscription agreement for "units" in 67th for a price of $67,000.

42.     In or about May, 2017, Plaintiff Hummel executed a subscription agreement for "units" in 67th Holding for a price of $134,000.

43.     In or about September, 2017, plaintiff Attis executed a subscription agreement for "units" in 67th Holding.  Attis thereafter forwarded payment of $268,000.

44.     Attis' investment was made subject to a Confidential Private Placement Memorandum dated May 10, 2017 (the "PPM 3").

45.     After entering into their respective subscription agreements, each of the plaintiffs and Bluestone entered into an Operating Agreement for 67th Holding (the "Operating Agreement").

46.     D'Alessio, on behalf of Bluestone and individually, signed the Operating Agreement.

47.     Paragraph 6 of the Operating Agreement afforded Bluestone, as manager, with "full and complete authority, power and discretion" to control all of 67th Holding's affairs, including full control over the financial affairs of 67th Holding and the use of investments and funds acquired by it.

48.     The *Pro Forma* annexed as Exhibit 1 to the PPM3 reflected that as of May, 2017 the East 67th Street Project had an anticipated "Net Annual Income" of $340,004 based on the full rental of the Project at an annual rent of $1,150,000.

## Defendants' Financial Defalcations

49.     D'Alessio structured the investment so that money from investors would flow into 67th Holding and would be funneled to 67th Associates, and then to MPE, purportedly for work to be done on the East 67th Street Project.

50.     At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

51.     At the time that he was soliciting investments from the plaintiffs and others, upon information and belief, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential returns.

52.     Per the PPM, the equity investment of Bluestone was to be $958,000. Upon information and belief, instead of making an equity investment, D'Alessio and Bluestone moved money into and out of 67th Holding's account, depositing funds from unknown sources and then withdrawing those funds.

53.     Upon information and belief, the source of the funds was MPE, where funds from multiple D'Alessio-sponsored investments were co-mingled and thereafter used for purposes in direct violation of the operating agreements of each of those investments.

54.     According to 67th Holding's books and records, by 2016, Bluestone had put $1,469,000 into East 67th Holding. By June 30, 2017 that amount had risen to $2,392,731, at which time Bluestone withdrew $2,897,000, leaving Bluestone with a negative equity position of $500,000.

9

55.     By the end of 2017, Bluestone had an equity balance of $223,731, well short of
the $958,000 represented in the PPM and Operating Agreement.

56.     Neither D'Alessio nor any of the defendants disclosed to plaintiffs or any other
investors that Bluestone was moving money into and out of the 67th Holding account.

57.     Instead, in an e-mail to investors dated May 1, 2017 the defendants represented
that Bluestone and D'Alessio had an equity position in 67th Holding of $3.3 million.

58.     As of May, 1, 2017, Bluestone's actual equity position in 67th Holding was
$1,947,000, and by June 30, 2017, that entire amount had been withdrawn, and Bluestone had a
negative position of $500,000.

59.     In the May 1, 2017 e-mail, D'Alessio stated that "Upon a capital event, after
repayment of the first mortgage, the funds will next return all equity to the Investors, and then
the $3.3 million to the sponsor."

60.     Upon information and belief, the transfers of funds into and out of the 67th
Holding account were in furtherance of the financial fraud being engaged in by D'Alessio,
whereby he was moving funds between his various sponsored investments, using MPE as his
conduit, and in total disregard for the manner in which such funds could be used under the terms
of the applicable Operating Agreements of the D'Alessio-sponsored investments.

61.     Construction on the building was completed by the end of 2016, and in January
2017, MPE sent an "Investor Newsletter" via email to the investors stating the East 67th Street
Project "is 100% complete and is awaiting issuance of the Certificate of Occupancy" and that it
is negotiating with several buyers.

62.     Neither D'Alessio nor any of the defendants advised the plaintiffs or any of 67th
Holding's investors as to the improper movement of funds.

63. According to the books of 67th Holding, gross expenses recorded for construction totaled $8,469,719, in excess of the $7,382,375 "fixed fee" construction contract represented in the PPM and personally guaranteed by D'Alessio.

64. Upon information and belief, fictitious records were created by MPE and the defendants to document construction expenses.

65. Upon information and belief, funds were transferred from 67th Holding to 67th Associates and then to MPE for the ostensible purpose of paying subcontractor invoices, which were then not paid and which remain due and owing.

66. Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiffs, choosing instead to conceal their financial improprieties.

67. Despite the fact that the costs of the East 67th Street Project were fixed, consisting primarily of the purchase price and the construction contract, with any cost overruns guaranteed by D'Alessio, according to the PPM3, the senior debt on the East 67th Street Project as of May, 2017 had risen to $17 million, an increase of $5,509,000 (48%) over the debt reflected in the October 15 and October 20 PPMs.

68. Additional senior debt has been taken on the East 67th Street Project, increasing the total amount to $20 million, an increase of $8,509,000 (74%) over the debt reflected in the October 15 and October 20 PPMs.

69. In April 2017 (the "April Letter"), D'Alessio, writing on behalf of 67th Holding, advised plaintiffs and other investors that after marketing the Property for six months without success, selling the units was no longer a feasible option, and he was now planning on attempting to rent the units instead.

70.     The April Letter went on to state that given the change in direction of the East

67th Street Project, 67th Holding was considering offering investors the opportunity to redeem

their investments, and asked investors to respond whether they would like to have their equity

returned or keep their investment.

71.     The April Letter went on to say that it was no longer feasible to continue paying

equity returns at 18%, and asked investors to waive their guaranteed equity return payments.

72.     The April Letter represented that on a rental basis, the pro forma is expected to

conservatively pay out approximately a 5% annual return, in addition to income tax advantages

that come with depreciation write-offs.

73.     The April Letter did not disclose the fact that senior debt on the underlying 67th

Street Property had increased by 74% (over $8.5 million), that Bluestone had already taken out

virtually all of its capital, that construction costs had been fabricated, that sub-contractors had not

been paid, and that Bluestone and D'Alessio had moved money into and out of the 67th Holding

account as if it were their personal piggy bank.

74.     Thereafter, the "guaranteed" "equity return" promised in the PPM and provided

for in the Operating Agreement was discontinued to plaintiffs and other investors.

75.     In a May 1, 2017 e-mail (the "May e-mail"), D'Alessio and Bluestone solicited

additional investments in East 67th Holding.

76.     The May e-mail stated: "Over the years, many of you have expressed interest in

investing in a longer-term equity investment that would result in a steady income stream with the

tax benefits of depreciation as well as appreciation in the asset." (Emphasis in original).

77.     The May e-mail stated that "This investment would allow investors to own pro rata shares of a brand-new construction, high end rental building . . . The building is projected to generate positive cash flow of approximately 5% annually."

78.     The May e-mail stated that "Upon a capital event, after repayment of the first mortgage, the funds will next return all equity to the Investors and then the $3.3mm to the sponsor."

79.     Once more, the May e-mail did not disclose that senior debt on the underlying 67th Street Property had increased by 74% (over $8.5 million), that Bluestone had already taken out virtually all of its capital, that construction costs had been fabricated, that sub-contractors had not been paid, and that Bluestone and D'Alessio had moved money into and out of the 67th Holding account as if it were their personal piggy bank.

80.     In reliance on the May e-mail, investments in 67th Holding were made by Phillip and Ellen Goldstein, Cicero, Hummel, and Attis.

81.     By letter dated October 26, 2017 (the "October Letter"), D'Alessio, writing on behalf of 67th Holding, wrote to investors who requested repayment of their principal, stating that three of the five units were currently rented with a total monthly income of $160,000; that they were working on renting the other two units, and that the current rental income was sufficient to cover operating expenses and secured debt service but, with only three units rented, there was insufficient fund to make dividend payments.

82.     Once more, D'Alessio failed to advise plaintiffs or other investors as to the 50% rise in bank debt, or as to his looting of the assets of 67th Holding.

83.     D'Alessio stated in the October Letter that he was evaluating all of his real estate holdings and monetizing them where it is appropriate and doing "everything possible to honor

13

the agreement" with them, and requested that they "reconsider" their decision to request repayment of their principal.

84.    By letter dated November 27, 2017 (the "November Letter"), D'Alessio, writing on behalf of 67th Holding, wrote to investors advising them that he retained a national Financial Advisory firm, Ankura Consulting Group, LLC, to help him evaluate his current situation and recommend possible actions for his properties.

85.    He went on to state that he believed that best possible approach for the East 67th Street Project would be: a) for investors to reconsider opting out of the Project and waive guaranteed equity returns in exchange for increasing investors' ownership proportionally by divesting D'Alessio's personal holdings in the project from 50% to 25% and receiving future dividends starting in January 2019 based on the operating performance for the prior 12 months; b) to convert any vacancies in the Property to rentals; c) to defer all sales activities until market conditions improve; and d) to continue debt service payments allowing for principal amortization reducing the senior debt.  D'Alessio stated that the letter would be followed up by a package containing documentation allowing for such plan to take place.

86.    By letter dated January 17, 2018 (the "January Letter"), D'Alessio, writing on behalf of 67th Holding, wrote investors asking them to agree to amend the Operating Agreement, which would accomplish the following proposal:

> 1.  Equity Returns will terminate, effective immediately. The unusually high rate of such obligation was not intended to extend as long as we have continued to pay it.
>
> 2.  I won't get any of that money back until all investors are made whole on their capital investment.
>
> 3.  My personal guaranty of the Company's discretionary obligation to make Distributions will terminate, effective immediately. The Company's ability to support its own obligations

14

will depend upon its own financial condition going forward. We will continue to use our best efforts to operate the Company in a manner we deem most beneficial to the investors.

4. Your Capital Contribution shall remain fully payable by the Company if, as and when proceeds become available, either annually or upon a capital transaction, whichever comes first, however the Equity Return payments made to date shall be applied in reduction of that obligation to you.

87.    The January Letter threatened that if his proposal was not agreed to, his "only option is to file corporate and personal bankruptcy."

88.    By letter dated February 26, 2018 (the "February Letter"), D'Alessio, writing on behalf of 67th Holding, stated his view that continued efforts to operate the Property no longer made economic sense and that while construction has been completed, the "Company lacked funds with which to pay the debt service due February 1st and the mortgagee has given notice of its intention to foreclose its mortgage." The letter went on to state that the mortgagee has proposed accepting deeds to the property in lieu of foreclosure and cancelling D'Alessio's personal guarantee of the mortgage, and that 67th Holding intended to accept that offer on or about March 5, 2018.

89.    The February Letter stated that "local municipal approval and other issues had prolonged the development, driving up the Company's carrying costs."

90.    Upon information and belief, defendants have or are about to surrender the property to the bank or otherwise dispose of the Property at a below-market cost.

91.    Upon information and belief, substantial funds were transferred from 67th Associates to MPE, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

15

92. Upon information and belief, funds were taken by the defendants for construction that did not take place.

93. Upon information and belief, the defendants utilized the funds of 67th Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to 67th Holding.

94. Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the East 67th Street Project for his own personal use.

95. Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and divesting investors of 100% of their capital.

### FIRST CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, 67th Holding and Bluestone)

96. Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 95 above, as if fully set forth herein.

97. To induce each of the plaintiffs to invest in 67th Holding, D'Alessio, on behalf of himself and on behalf of 67th Holding and Bluestone, made multiple misrepresentations, including, without limitation:

   a. That the funds raised by 67th Holding would be used exclusively on behalf of 67th Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

   b. That the full capital of each investor would be returned;

   c. That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns;

16

d. That financial statements would be provided annually giving a true and accurate account of the financial affairs of 67th Holding; and

e. That investments made into 67th Holding would receive a return of their capital before D'Alessio received a repayment of his investment or any profit distribution.

98.    The foregoing representations were false, and D'Alessio, on behalf of himself, 67th Holding, and Bluestone, made these representations knowing them to be false.

99.    At the time that he was making these statements to induce investments in 67th Holding and Bluestone, D'Alessio knew:

a. that money raised by 67th Holding would be comingled with funds raised for other D'Alessio-sponsored investments, and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b. that the East 67th Street Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible;

c. that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors; and

d. that D'Alessio intended to remove his funds in advance of repaying the capital of investors.

100.    D'Alessio, on behalf of himself and on behalf of 67th Holding and Bluestone, made these representations to the plaintiffs in order to induce them to invest the East 67th Street Project.

101.    Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, 67th Holding, and Bluestone.

102.    As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $500,000, with interest thereon.

103.    The conduct of 67th Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
(Lulling Fraud as Against Defendants D'Alessio, 67th Holding and Bluestone)

104.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 103 above, as if fully set forth herein.

105.    From the time defendants 67th Holding and D'Alessio notified investors that the direction of the East 67th Street Project was changing from sale to rental, they engaged in a scheme to lull plaintiffs into a false sense of security and persuade plaintiffs and other investors not to sell their shares.

106.    D'Alessio, on his own behalf and on behalf of 67th Holding, repeatedly advised and reassured plaintiffs through letters that the rental income was sufficient to cover operating expenses and secured debt service, that renting the Property would pay out approximately a 5% annual return, in addition to income tax advantages that come with depreciation write-offs, and that D'Alessio would not take any money until all investors are made whole on their capital investment.

107.    These statements by D'Alessio were intended to induce plaintiffs to forego selling their shares in 67th Holding.

108.    These statements were untrue when made.

18

FILED: WESTCHESTER COUNTY CLERK 03/13/2018 01:18 PM    INDEX NO. 53520/2018
NYSCEF DOC. NO. 2    Doc 29-1    Filed 06/08/18    Entered 06/08/18 16:17:15    Exhibit A
Pg 162 of 199

19 of 30

109.   The defendants failed to disclose the massive increase in the secured debt and the defalcations which had occurred, all of which made the statements as to payment of operating expenses, as well as the statements as to potential profit, knowingly untrue.

110.   In reliance on D'Alessio's statements and reassurances, plaintiffs and other investors did not redeem their capital investments.

111.   Plaintiffs have been damaged as a proximate result of defendants' fraud in an amount to be determined at trial but believed to be in excess of $500,000, with interest thereon.

112.   Defendants' fraud was a substantial factor in causing damages to plaintiffs.

113.   Defendants' conduct was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Fraud as Against Defendants D'Alessio, 67th Holding and Bluestone
on behalf of Plaintiffs Phillip and Ellen Goldstein, Cicero, Hummel and Attis)

114.   Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 113 above, as if fully set forth herein.

115.   The May e-mail was issued by D'Alessio, on behalf of himself and on behalf of East 67nd Holding and Bluestone, in order to induce each of plaintiffs Phillip and Ellen Goldstein, Cicero, Hummel and Attis to invest in 67th Holding.

116.   The May e-mail was false and fraudulent and contained multiple misrepresentations, including, without limitation:

    a.   that Bluestone and D'Alessio had an equity position in 67th Holding of $3.3 million;

    b.   that Bluestone and D'Alessio would not receive back any of its $3.3 equity position until 100% of all investor equity was repaid;

    c.   that "Investor equity would hold a primary position for capital distributions and would come out of the project before the sponsor receives any equity back"; and

    d.   that $3,350,000 of investor capital had agreed to the proposed new equity structure.

117.    The foregoing representations were false, and D'Alessio, on behalf of himself, 67th Holding, and Bluestone, made these representations knowing them to be false.

118.    At the time that he was making these statements to induce investments in 67th Holding and Bluestone, D'Alessio knew:

    a.   that as of May 1, 2017, Bluestone's actual equity position in 67th Holding was $1,947,000 and not $3.3 million;

    b.   that Bluestone was moving funds into and out of the 67th Holding account, and was withdrawing its equity investment so that by June 30, 2017, the entire amount had been withdrawn, and Bluestone had a negative position of $500,000;

    c.   that Bluestone was going to take its equity out of 67th Holding before investors were paid; and

    d.   that $3,350,000 of investor capital had not agreed to the proposed new equity structure.

119.    D'Alessio, on behalf of himself and on behalf of 67th Holding and Bluestone, made these representations to the plaintiffs in order to induce them to invest the East 67th Street Project.

120.    Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, 67th Holding, and Bluestone.

121.    In addition to the misrepresentations set forth above, the defendants failed to disclose that senior debt on the underlying 67th Street Property had increased by almost 50% (over $5.5 million), that construction costs had been fabricated, that sub-contractors had not been paid, and that Bluestone and D'Alessio had moved money into and out of the 67th Holding account as if it were their personal piggy bank.

122.    The defendants also failed to disclose that as a result of the increase in the senior debt and the removal of funds by the defendants, that the profit projections contained in the May e-mail were without basis and known to the defendants to be false and fraudulent.

123.    As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $500,000, with interest thereon.

124.    The conduct of 67th Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## FOURTH CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

125.    Plaintiffs repeat, reallege and incorporate each of the allegations set forth in paragraphs 1 through 124 above, as if fully set forth in full herein.

126.    Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

21

127.    D'Alessio devised the overall objective of the conspiracy, and each of the other

defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts

in furtherance of the fraudulent scheme.

128.    The objective of the conspiracy was to induce each of the plaintiffs to invest in

67th Holding based on the false and fraudulent representations set forth above.

129.    Each of the defendants participated fully in the conspiracy, as the funds

fraudulently induced were transferred from 67th Holding to 67th Associates and then to MPE,

which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy

D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to

67th Holding or the East 67th Street Project.

130.    In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the

defendants, made the false and fraudulent statements set forth above, and thereafter conspired to

loot the funds invested by the plaintiffs.

131.    Through concerted action, as agreed upon among associated companies,

associates and managers, as described above, defendants in fact engaged in conduct violative of

plaintiffs' rights.

132.    Defendants intended these actions to occur and intended to cause injury to

plaintiffs as a part of their conspiratorial scheme.

133.    By virtue of the formation and operation of this unlawful conspiracy, and as a

consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs,

defendants are liable for the above-described acts committed by each conspirator.

134.    As a result of these acts and conduct, plaintiffs have suffered and will continue to

suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an

amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

135.    Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### FIFTH CAUSE OF ACTION
(Unjust Enrichment against D'Alessio, 67th Associates, and MPE)

136.    Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 135 above, as if fully set forth in full herein.

137.    Defendants D'Alessio, 67th Associates, and MPE caused funds that were intended for the development of the East 67th Street Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

138.    Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from 67th Holding.

139.    By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

140.    The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them. No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

141.    By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $2,000,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
(Conversion against all Defendants)

142.    Plaintiffs repeat, reallege and incorporate each of the allegations set forth in paragraphs 1 through 141 above, as if fully set forth in full herein.

143.    Plaintiffs invested their funds into 67th Holding for the purposes of construction and development of the East 67th Street Project and to secure the returns that were promised.

144.    Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

145.    As a proximate cause of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $2,000,000, plus interest and costs.

146.    By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $2,000,000, plus interest and costs.

## SEVENTH CAUSE OF ACTION
(Breach of Guaranty against D'Alessio)

147.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 146 above, as if fully set forth herein.

148.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Manager."

149.    At all times, D'Alessio has served as the manager of 67th Holding.

150.    D'Alessio executed each of the Operating Agreements of 67th Holding in an individual capacity as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

24

151.    67th Holding has discontinued the payment of the return on investor equity.

152.    In the February Letter, D'Alessio advised the plaintiffs that the underlying property was being surrendered to the property mortgagor, thereby extinguishing all investor equity in the property, and all capital of the plaintiffs in 67th Holding.

153.    There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial, but believed to be in excess of $200,000, with interest thereon.

154.    There remains due and owing to the plaintiffs unrepaid investor capital of at least $737,000.00.

155.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against D'Alessio personally in an amount to be determined at trial, but believed to be excess of $937,000, plus interest and costs.

### EIGHTH CAUSE OF ACTION
(Breach of Contract as against 67th Holding)

156.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 155 above, as if fully set forth herein.

157.    The Operating Agreement of 67th Holding constitutes a valid and binding contract between plaintiffs and defendant 67th Holding.

158.    Plaintiffs have performed all of their material obligations under that contract.

159.    67th Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

160.    67th Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $737,000.00.

161.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against 67th Holding in an amount to be determined at trial, but believed to be excess of $937,000, plus interest and costs.

### NINTH CAUSE OF ACTION
(For A Constructive Trust as Against D'Alessio, 67th Associates, and MPE)

162.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 161 above, as if fully set forth herein.

163.    Pursuant to the terms of the Operating Agreement, D'Alessio and Bluestone were fiduciaries obligated to act in the best interest of 67th Holding and its investors.

164.    Each of D'Alessio and Bluestone, on behalf of themselves and 67th Associates and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the East 67th Street Project and not to enrich themselves.

165.    Each of the plaintiffs invested in 67th Holding in reliance on the representations made to them in the PPM and by D'Alessio and Bluestone.

166.    D'Alessio has threatened to turn over the Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

167.    Upon information and belief, D'Alessio is attempting to sell the 67th Street Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

168.    A constructive trust should be imposed to prevent the defendants from being unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to

satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all of their interests in the Property.

169.     Accordingly, a constructive trust should be imposed with respect to the Property and any proceeds derived from the sale of said Property.

## TENTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

170.     Plaintiffs repeat, reallege and incorporate paragraphs 1 through 169 above as if fully set forth herein.

171.     In furtherance of his fraudulent scheme, D'Alessio and the other defendants have left the Property financially overextended, are seeking to dispose of the Property at a massive discount and in a manner designed to rid D'Alessio and his managing member entity of any guarantees to the first mortgagor, and thereby to divest the investors of their capital.

172.     Unless defendants are restrained and enjoined from the transfer and/or sale of the Property, plaintiffs will suffer irreparable harm in that plaintiffs will be divested of their capital interest in the Property.

173.     Plaintiffs have no adequate remedy at law.

174.     Accordingly, plaintiffs are entitled to an Order preliminary and permanently enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.     On the First Cause of Action as against defendants D'Alessio, 67th Holding and Bluestone, awarding plaintiffs damages in an amount to be determined at trial but believed to be in excess of $500,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

27

b.      On the Second Cause of Action as against D'Alessio, 67th Holding and Bluestone,

awarding plaintiffs damages in an amount to be determined at trial but believed to be in excess of

$500,000, with interest thereon, as well as punitive damages in an amount to be determined at

trial;

c.      On the Third Cause of Action as against D'Alessio, 67th Holding and Bluestone,

awarding plaintiffs Phillip and Ellen Goldstein, Cicero, Hummel and Attis damages in an amount

to be determined at trial but believed to be in excess of $500,000, with interest thereon, as well

as punitive damages in an amount to be determined at trial;

d.      On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial but believed to be in excess of $1,000,000, with interest thereon, as well as

punitive damages in an amount to be determined at trial;

e.      On the Fifth Cause of Action as against defendants D'Alessio, 67th Associates,

and MPE, awarding plaintiffs damages in an amount to be determined at trial but believed to be

in excess of $2,000,000, with interest thereon;

f.      On the Sixth Cause of Action, awarding plaintiffs damages in an amount to be

determined at trial but believed to be in excess of $2,000,000, with interest thereon;

g.      On the Seventh Cause of Action as against D'Alessio, awarding plaintiffs

damages in an amount to be determined at trial but believed to be in excess of $937,000, with

interest thereon;

h.      On the Eighth Cause of Action as against 67th Holding, awarding plaintiffs

damages in an amount to be determined at trial but believed to be in excess of $937,000, with

interest thereon;

28

i.      On the Ninth Cause of Action as against defendants D'Alessio, 67th Associates, and MPE, imposing a constructive trust with respect to the real property located at 227 East 67th Street, New York, New York, or with respect to any proceeds paid as a result of any sale of the real property located at 227 East 67th Street, New York, New York;

j.      On the Tenth Cause of Action, issuing an Order preliminarily and permanently enjoining and restraining defendants from selling or otherwise transferring the real property located at 227 East 67th Street, New York, New York;

k.      Awarding the costs and fees, including reasonable attorneys' fees, to the plaintiffs; and

l.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
        March 13, 2018

                                        ROSENFELD & KAPLAN, LLP

                                        By: _____
                                            Tab K. Rosenfeld
                                            Steven M. Kaplan
                                            Nicole E. Meyer
                                            1180 Avenue of the Americas
                                            Suite 1920
                                            New York, New York 10036
                                            (212) 682-1400
                                            *Attorneys for plaintiffs*

# VERIFICATION

STATE OF NEW YORK          )
                             )ss.:
COUNTY OF NEW YORK   )

I, Tab K. Rosenfeld, affirm that I am an attorney admitted to practice law in the courts of

the State of New York, and that I am the attorney of record for the plaintiffs in this matter.  I

have read the foregoing Verified Complaint and know the contents thereof; the same is true to

my own knowledge, except as to the matters therein alleged to be on information and belief, and

as to those matters I believe them to be true.  The reason this verification is made by me and not

by any of the plaintiffs is because each of the plaintiffs reside outside the county where the office

with which I am associated maintains its office.

Dated: New York, New York
      March 13, 2018

                                              _____
                                           Tab K. Rosenfeld

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------x
MARILYN SHENDELL, ATTIS PROPERTIES,
INC., and KEITH HUMMEL,

                             Plaintiffs,

                 -against-

3 SANDPIPER COURT HOLDING LLC,
3 SANDPIPER COURT LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
BLUESTONE SANDPIPER LLC,

                             Defendants.
-------------------------------------------------------------------x

Plaintiffs designate Westchester
County as the Place of Trial

Index No.:

**SUMMONS**

To the above named Defendants:

      **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and
to serve a copy of your answer, or, if the verified complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiffs' Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the verified complaint.

Defendants' Addresses:       3 SANDPIPER COURT HOLDING LLC
                                 c/o Michael Paul Enterprises, LLC
                                 12 Water Street
                                 White Plains, New York 10601

                                 3 SANDPIPER COURT LLC
                                 c/o Michael Paul Enterprises, LLC
                                 12 Water Street
                                 White Plains, New York 10601

                                 MICHAEL PAUL D'ALESSIO
                                 c/o Michael Paul Enterprises, LLC
                                 12 Water Street
                                 White Plains, New York 10601

MICHAEL PAUL ENTERPRISES, LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

BLUESTONE SANDPIPER LLC
c/o Michael Paul Enterprises, LLC
12 Water Street
White Plains, New York 10601

Dated: New York, New York
March 27, 2018

                    ROSENFELD & KAPLAN, LLP

        By:    Tab K. Rosenfeld
               Steven M. Kaplan
               Nicole E. Meyer
               1180 Avenue of the Americas, Suite 1920
               New York, NY 10036
               (212) 682-1400
               *Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

MARILYN SHENDELL, ATTIS PROPERTIES,
INC., and KEITH HUMMEL,

                            Plaintiffs,                Index No.:

            -against-                   **VERIFIED COMPLAINT**

3 SANDPIPER COURT HOLDING LLC,
3 SANDPIPER COURT LLC,
MICHAEL PAUL D'ALESSIO,
MICHAEL PAUL ENTERPRISES, LLC, and
BLUESTONE SANDPIPER LLC,

                        Defendants.

-----------------------------------------------------------------x

       Plaintiffs Marilyn Shendell, Attis Properties, Inc., and Keith Hummel (collectively, the

"plaintiffs") for their Verified Complaint against defendants 3 Sandpiper Court Holding LLC, 3

Sandpiper Court LLC, Michael Paul D'Alessio, Michael Paul Enterprises, LLC, and Bluestone

Sandpiper LLC (collectively, the "defendants"), allege as follows:

### NATURE OF THE ACTION

      1.     Plaintiffs bring this action to seek redress from the injury caused by a massive

scheme undertaken by defendant Michael Paul D'Alessio ("D'Alessio") and several entities

owned and/or controlled by him to defraud the plaintiffs, each of whom are investors in a real

estate project devised by defendants located at 3 Sandpiper Court, Westhampton, New York (the

"Sandpiper Court Project").

      2.     The defendants purchased the property, which consisted of a 2-story residential

home, with a plan to renovate and complete a new 2,715 square-foot, one-family luxury home

with a swimming pool to be offered for sale upon completion.

3.    Plaintiffs were induced by defendants to invest hundreds of thousands of dollars in the Sandpiper Court Project, with such investments being made through 3 Sandpiper Court Holding LLC, which D'Alessio promised would bring in an "equity return" of 9% per year and would allow for quick turn-around on a return of all capital invested.

4.    Rather than putting the funds toward their intended use, however, the defendants, upon information and belief, began siphoning the investor funds for personal use, co-mingling funds earmarked for the Sandpiper Court Project with other projects owned and controlled by D'Alessio, using the assets of 3 Sandpiper Court Holding LLC to finance other D'Alessio-controlled projects, and otherwise engaging in acts of financial malfeasance with regard to the funds entrusted to him by investors.

5.    Defendants have paid themselves over $700,000 for "construction" costs, despite no construction having taken place, issued fabricated invoices for construction services which have not been rendered, and have taken for themselves and their associates additional hundreds of thousands of dollars for a real estate project that remains a vacant lot with no prospect of completion.

6.    Having divested 3 Sandpiper Court Holding LLC of its assets, and having looted and misused its funds, the defendants, nonetheless, continued to represent to the plaintiffs and other investors that the Sandpiper Court Project could still be profitable, and refused to apprise investors as to the actual financial condition or the massive amount of debt that had been incurred.

7.    As a result of defendants' acts of financial defalcation, the Sandpiper Court Project has become economically unviable, with no prospect of recovery by the plaintiffs from the Project itself.  The defendants are now seeking in this and in other D'Alessio-controlled

2

projects to sell the properties at a massive loss and utilize the funds realized to advance the defendants' interests, at a total loss to the plaintiffs and other investors.

## PARTIES

8.      Plaintiff Marilyn Shendell ("Shendell") is a New York resident with an address c/o Cornell Pace, Inc., 542 Main Street, New Rochelle, New York 10801. Shendell is a member of 3 Sandpiper Court Holding LLC.

9.      Plaintiff Attis Properties, Inc. ("Attis") is a New York corporation with offices at 500 Mamaroneck Ave, Harrison, New York 10528. Attis was formerly known as S. & G. Gross Co., Inc. Attis is a member of 3 Sandpiper Court Holding LLC.

10.     Plaintiff Keith Hummel ("Hummel") is a New York resident with an address at 10 Carriage Hill Road, West Harrison, NY 10604. Hummel is a member of 3 Sandpiper Court Holding LLC.

11.     Defendant 3 Sandpiper Court Holding LLC ("Sandpiper Court Holding") is a domestic limited liability company formed in 2016 as an investment vehicle to develop real property located at 3 Sandpiper Court, Westhampton, New York (the "Property"). Sandpiper Court Holding lists its office for the conduct of business as c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. Sandpiper Court Holding is the sole member of 3 Sandpiper Court LLC.

12.     Defendant 3 Sandpiper Court LLC ("Sandpiper Court") is a New York limited liability company with an address at c/o Michael Paul Enterprises, LLC, 12 Water Street, White Plains, New York 10601. Sandpiper Court holds title to the Property.

13.     Defendant Michael Paul D'Alessio is a New York resident with a business address at 12 Water Street, White Plains, New York 10601.

3

14.       Defendant Michael Paul Enterprises, LLC ("MPE") is a New York limited liability company with an address at 12 Water Street, White Plains, New York 10601. Upon information and belief, MPE is controlled by D'Alessio.

15.       Defendant Bluestone Sandpiper LLC ("Bluestone") is a domestic limited liability company formed in 2016. Upon information and belief, Bluestone is controlled by Michael Paul D'Alessio. Bluestone is the managing member of Sandpiper Court Holding and maintains its offices at 12 Water Street, #204, White Plains, New York 10601.

## FACTS

16.       Sandpiper Court Holding was created in 2016 by D'Alessio to acquire the Property through Sandpiper Court and to thereafter to renovate the property and complete a new 2,715 square-foot, one-family luxury home with a swimming pool.

17.       Sandpiper Court Holding is one of a number of real estate investment companies created by D'Alessio (the "D'Alessio Holding Companies").

18.       All of the D'Alessio Holding Companies utilize a similar structure, with D'Alessio or an affiliated company serving as the managing member; with construction to be done by an entity affiliated with D'Alessio, with D'Alessio's office, located at 12 Water Street, White Plains, New York 10601 serving as the office for the Company, with a promised "equity return" of 9% to 16% per year, with a quick turn-around on a return of all capital invested, and with a guarantee as to all construction cost overruns exceeding the amount of the fixed price contracts with D'Alessio's affiliated construction contract.

19.       Each of the D'Alessio Holding Companies are structured so that D'Alessio or his affiliated entities have control over the finances of the D'Alessio Holding Company and the use of the capital secured by such D'Alessio Holding Company.

20. Sandpiper Court Holding followed the investment structure used by D'Alessio.

21. Sandpiper Court Holding's Confidential Private Placement Memorandum, dated June 13, 2016 (the "PPM"), stated that the "Company, through its wholly-owned subsidiary, the Owner, will acquire title to the Premises. Owner will then renovate the Premises and offer it for sale, although, depending upon market conditions and other factors, the Owner may decide to furnish and rent the Premises."

22. The PPM stated that "Renovation of the existing Premises is expected to start shortly after the Owner acquires title to the Premises."

23. The PPM stated that "The projected date for completion of the renovations is approximately 18-24 months after acquisition."

24. In the PPM, Bluestone and D'Alessio represented that the "[p]rojected overall cost of the Project is approximately $3,125,250."

25. Exhibit 1 to the PPM was a *Pro Forma* statement that provided detail as to the $3,125,250 Project cost. The *Pro Forma* listed the costs as: Land Purchase Price, $1,875,000; Project Soft Costs, $300,000; Project Hard Costs, $950,250.

26. The *Pro Forma* also listed the source of funding for the Project Costs as: Senior Debt, $1,400,000; Sponsor's Equity, $225,250; and Investors' Equity, $1,500,000.

27. The PPM stated in Section J, paragraph 1, that the construction of the Project would be done by MPE, an affiliate of Bluestone and D'Alessio, for a "fixed price in the amount of $950,250," and provided that "Bluestone has personally guaranteed payment of hard costs of construction in excess of the contract sum."

28. The PPM provided that "Members of the Company, other than the Managing Member . . . are entitled to (a) an Equity Return of 9% per annum, payable monthly on the

5

amount of their Capital Contribution, beginning as of the date such Capital Contribution is actually fully paid to the Company, until repayment in full of the such Capital Contribution; and (b) return of the full amount of their Capital Contributions within 24 months and prior to the Managing Member receiving return of any portion of its Capital Contribution."

29.     The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Managing Member."

30.     The PPM identified Bluestone as the managing member of Sandpiper Court Holding, and identified D'Alessio as manager.

31.     The PPM provided that while funds raised or acquired by Sandpiper Court Holding could be maintained in a "general account," that such funds would "be in the Company control and may be used for Company purposes."

32.     Based on the promises and representations made by D'Alessio, each of the plaintiffs invested in Sandpiper Court Holding.

33.     On or about October 13, 2016, plaintiff Attis executed a subscription agreement for 1 "unit" in Sandpiper Court Holding at a total price of $50,000.

34.     Plaintiff Shendell executed a subscription agreement for 1 "unit" in Sandpiper Court Holding at a total price of $50,000.

35.     On or about June 16, 2016, plaintiff Hummel executed a subscription agreement for 2 "units" in Sandpiper Court Holding at a total price of $100,000.

36.     Following each of the plaintiffs' entry into the subscription agreements, each of the plaintiffs and Bluestone thereafter entered into an Operating Agreement for Sandpiper Court

Holding (the "Operating Agreement"). D'Alessio, on behalf of Bluestone, signed the Operating Agreement.

37. Paragraph 6 of the Operating Agreement afforded D'Alessio, as manager, with "full and complete authority, power and discretion" to control all of Sandpiper Court Holding's affairs, including full control over the financial affairs Sandpiper Court Holding and the use of investments and funds acquired by it.

**Defendants' Financial Defalcations**

38. D'Alessio structured the investment so that money from investors would flow into Sandpiper Court Holding and would be funneled to Sandpiper Court, and then to MPE, purportedly for work to be done on the Sandpiper Court Project.

39. At the time that D'Alessio and the defendants were soliciting investments from the plaintiffs and others, he was also soliciting investments on other D'Alessio-sponsored investments and/or attempting to develop those investments.

40. At the time that he was soliciting investments from the plaintiffs and others, D'Alessio lacked the financing to meet his obligations on his multiple projects, did not have the ability to satisfy his personal obligations, and could not timely complete any of his promised developments in order to return either capital to his investors or pay the promised preferential return.

41. The defendants promised in the PPM that construction of the Sandpiper Court Project would commence soon after the Property was acquired. Instead of commencing such construction, the defendants instead began paying themselves for construction and creating invoices to support those construction charges.

42.     According to the books and records of Sandpiper Court Holding, gross expenses for construction in 2016 totaled $718,192.

43.     According to the books and records of Sandpiper Court Holding, Sandpiper Court Holding issued checks to MPE in June and July, 2016 totaling $330,000.

44.     According to the books and records of Sandpiper Court Holding, MPE issued two construction invoices in 2016 for work on the Sandpiper Court Project.

45.     One of the invoices issued by MPE and dated 12/31/2016, was for a total of $369,773, and included charges for, among other things, $127,700 for a Siding Subcontractor, $81,648.58 for "Rough Carpentry," $74,100 for a Roofing subcontractor, and $90,000 for "Project Supervision."

46.     A second invoice issued by MPE and also dated 12/31/2016 sought payment of $348,419, and included charges for, among other things, $180,000 for a "Rough Carpentry" Subcontractor, $70,000 for a Foundation Subcontractor, and $21,000 for a "Main-Subcontractor" Interior.

47.     Despite the construction charges and payments, however, there was minimal construction done in 2016 or 2017.

48.     According to the PPM, the Sandpiper Court Project was to consist of the development of a 2,715 square-foot, one-family luxury home with a swimming pool, with construction to commence soon after acquisition of the real property.  The Project itself kept changing with, however, the only constant being that no substantial development was ever done.

49.      On or about October 6, 2016, MPE sent an "Investor Newsletter" via e-mail to investors, stating: "We have closed on the property and we are in the process of seeking approval for our amended plans. Our new plans are to build a contemporary 4000sf 4 bedroom, 4.5

bathroom home with high ceilings, a magnificent open chefs kitchen and vast panoramic views of the Moriches Bay on this spectacular waterfront property."

50.    On or about January 10, 2017, MPE sent an "Investor Newsletter" via e-mail to investors, stating that as the status of the Sandpiper Court Project: "We are in the process of seeking approval for our amended plans and awaiting wetlands approval." The Newsletter went on to state that "Within the next 90 days we will look to receive all approvals and begin construction."

51.    On or about April 3, 2017, MPE sent an "Investor Newsletter" via email to investors, stating as the status of the Sandpiper Court Project: "We have been approved by wetlands and are waiting for our final approval for our amended plans from the town." This Newsletter now described the Sandpiper Court Project as being for a "5000 sf 5 bedroom, 5.5 bathroom home," and stated that MPE "hoped" to start construction within the next 90 days.

52.    On or about July 17, 2017, MPE sent an "Investor Newsletter" via email to investors, stating as the status of the Sandpiper Court Project: "We have been approved by wetlands and expect to receive our full permit in the coming weeks, at which point we will commence construction." The Sandpiper Court Project was now described as being for a "5391 sf 5 bedroom, 5.5 bathroom home."

53.    The July 17, 2017, "Investor Newsletter" further stated as to "Investment Status": that it was "Open - 9% Guaranteed Return – 18 mo. Commitment."

54.    By letter dated February 26, 2018, D'Alessio, writing as the "Manager" of Sandpiper Court Holding, stated that as of that date, he demolished all existing structures and that the "Property is now a vacant lot."

9

55.     At the same time as the defendants were charging Sandpiper Court Holding for construction that was not done, and paying MPE for such construction, the defendants were also transferring funds into and out of Sandpiper Court Holding's account.

56.     Per the PPM, Bluestone was obligated to invest $225,250 in capital in Sandpiper Court Holding.

57.     Sandpiper Court Holding's books and records reflect that in 2016, Bluestone transferred $310,000 into Sandpiper Court Holding but then withdrew $200,000, leaving it with an equity position of $110,000.

58.     Sandpiper Court Holding's books and records reflect that in 2017, Bluestone transferred $374,000 into Sandpiper Court Holding but then withdrew $97,000.

59.     The PPM provided that distributions were to be made based on the following priority: first to the investors to pay to them their 9% Equity Return and second to return the full amount of each investors capital contribution.

60.     Under the terms of the PPM, Bluestone was not to receive any Equity Return or repayment of any of its capital until all of the payments due to the investors, such as the plaintiffs, had been made.

61.     Despite the representations in the PPM and Operating Agreement, Sandpiper Court Holding's books and records reflect that, beginning in February 2017, Bluestone began receiving a monthly equity return of 9%.

62.     Bluestone also removed its capital contributions before returning any capital to any of the investors.

63.     Neither D'Alessio nor any of the defendants disclosed to plaintiffs or any other investors that Bluestone was moving money into and out of the Sandpiper Court Holding account

or that Bluestone began receiving equity return payments despite the prohibitions in the PMM and Operating Agreement.

      64.     Upon information and belief, funds were transferred from Sandpiper Court Holding to Sandpiper Court and then to MPE for the ostensible purpose of paying subcontractor invoices, which were then not paid and which remain due and owing.

      65.     Despite an obligation to provide annual financial statements, neither D'Alessio nor any of the defendants ever provided such information to the plaintiffs, choosing instead to conceal their financial improprieties.

      66.     The "guaranteed" "equity return" promised in the PPM and provided for in the Operating Agreement was discontinued to plaintiffs and other investors.

      67.     By letter dated February 26, 2018 (the "February Letter"), D'Alessio, writing on behalf of Sandpiper Court Holding, stated his view that continued efforts to operate the Property no longer made economic sense.

      68.     The February Letter went on to state that the "Company lacked funds with which to pay the debt service due February 1st and the mortgagee has given notice of its intention to foreclose its mortgage." D'Alessio then stated that the mortgagee has proposed: "In exchange for the Owner delivering to the mortgagee a deed to the Property in lieu of foreclosure, the mortgagee will, for no additional consideration, (a) release my personal guaranty of the mortgage and (b) give the Company a six-month, assignable option to re-purchase the Property," and that Sandpiper Court Holding intended to accept that offer on or about March 5, 2018.

      69.     The February Letter stated that "local municipal approval issues have prolonged the development, driving up the Company's carrying costs, including payment of mortgage debt service and Investors' Equity Return payments."

70.     Upon information and belief, defendants are attempting to sell the Property and extinguish their obligations to the investors in Sandpiper Court Holding.

71.     Upon information and belief, substantial funds were transferred from Sandpiper Court to MPE, where such funds were co-mingled with funds of other D'Alessio Holding Companies and/or diverted to D'Alessio or other entities owned, operated, or controlled by him.

72.     Upon information and belief, funds were taken by the defendants for construction that did not take place.

73.     Upon information and belief, the defendants utilized the funds of Sandpiper Court Holding to pay for fictitious expenses in order to conceal the misuse of funds belonging to Sandpiper Court Holding.

74.     Upon information and belief, and given the lack of an available revenue source, D'Alessio used funds invested by the plaintiffs and earmarked for the Sandpiper Court Project for his own personal use.

75.     Over the past weeks, D'Alessio has liquidated or sold properties of other D'Alessio-sponsored investments at a fraction of the value he had placed on such properties and in a manner designed to simply free D'Alessio and his managing member entity of any guarantees to the first mortgagor, and to divest investors of 100% of their capital.

### FIRST CAUSE OF ACTION

(Fraud as Against Defendants D'Alessio, Sandpiper Court Holding, and Bluestone)

76.     Plaintiffs repeat, reallege and incorporate each and every allegation contained in paragraphs 1 to 75 above, as if fully set forth herein.

77.     To induce the plaintiffs to invest in Sandpiper Court Holding, D'Alessio, on behalf of himself and on behalf of Sandpiper Court Holding and Bluestone, made multiple misrepresentations, including, without limitation:

12

a. That the funds raised by Sandpiper Court Holding would be used exclusively on behalf of Sandpiper Court Holding and would not be co-mingled with funds belonging to other D'Alessio-sponsored investments, or used for any other purposes;

b. That Bluestone would not receive equity return payments and would not receive any return of its invested capital until investors received a full return of their capital contribution;

c. That renovation of the Property would start shortly after title was acquired;

d. That the Project would be completed within 18 to 24 months;

e. That the full capital of each investor would be returned within 24 months;

f. That D'Alessio personally guaranteed the payment to each investor of the full amount of capital invested, and the payment of the all preferred returns.

78. The foregoing representations were false and D'Alessio, on behalf of himself, Sandpiper Court Holding, and Bluestone, made these representations knowing them to be false.

79. At the time that he was making these statements to induce investments in Sandpiper Court Holding, D'Alessio knew:

a. that money raised by Sandpiper Court Holding would be co-mingled with funds raised for other D'Alessio-sponsored investments and that such funds would be used to finance other D'Alessio-sponsored investments and meet the obligations of other D'Alessio-sponsored investments;

b. that Bluestone would improperly receive monthly return payments;

c. that renovation could not take place soon after closing because the Sandpiper Court Project did not have the necessary permits and approvals to begin construction;

13

    d.  that the Sandpiper Court Project could not be completed within 18 to 24 months because defendants needed to obtain approvals/permits from the town no construction could commence until such permits and approvals were obtained;

    e.  that the Sandpiper Court Project could not be completed, or substantially completed, in a timeframe that would make the repayment of capital possible within 24 months; and

    f.  that D'Alessio lacked the ability to satisfy his personal guarantee, and thus that the promise of D'Alessio's personal guarantee was a fiction which provided no protection for investors.

80.    D'Alessio, on behalf of himself, Sandpiper Court Holding, and Bluestone, made these representations to the plaintiffs in order to induce them to invest the Sandpiper Court Project.

81.    Plaintiffs reasonably relied on the accuracy of the information provided to them by D'Alessio, on behalf of himself, Sandpiper Court Holding, and Bluestone.

82.    As a direct and proximate result of the fraud, plaintiffs have been damaged in an amount to be determined at trial, but not less than $1,000,000, with interest thereon.

83.    The conduct of Sandpiper Court Holding, D'Alessio, and Bluestone was willful, wanton and in reckless disregard of plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

## SECOND CAUSE OF ACTION
### (Conspiracy to Defraud against all Defendants)

84.    Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 83 above, as if fully set forth in full herein.

14

85.     Defendants formed and operated an unlawful conspiracy among associated companies, associates, and managers to defraud plaintiffs as described above.

86.     D'Alessio devised the overall objective of the conspiracy, and each of the other defendants agreed to the overall objective of the conspiracy, or agreed to commit personally, acts in furtherance of the fraudulent scheme.

87.     The objective of the conspiracy was to induce the plaintiffs to invest in Sandpiper Court Holding based on the false and fraudulent representations set forth above.

88.     Each of the defendants participated fully in the conspiracy, as the funds fraudulently induced were transferred from Sandpiper Court Holding to Sandpiper Court and then to MPE, which thereafter wrongfully utilized such funds to make payments to D'Alessio and to satisfy D'Alessio's obligations, and the obligations of other D'Alessio-controlled entities, unrelated to Sandpiper Court Holding or the Sandpiper Court Project.

89.     In furtherance of this conspiracy, D'Alessio, acting on behalf of each of the defendants, made the false and fraudulent statements set forth above, and thereafter conspired to loot the funds invested by the plaintiffs.

90.     Through concerted action, as agreed upon among associated companies, associates and managers, as described above, defendants in fact engaged in conduct violative of plaintiffs' rights.

91.     Defendants intended these actions to occur and intended to cause injury to plaintiffs as a part of their conspiratorial scheme.

92.     By virtue of the formation and operation of this unlawful conspiracy, and as a consequence of the above-described wrongful acts and conduct and the harm caused to plaintiffs, defendants are liable for the above-described acts committed by each conspirator.

93.     As a result of these acts and conduct, plaintiffs have suffered and will continue to suffer financial harm.  By virtue of the foregoing, plaintiffs are entitled to recover damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

94.     Defendants' conduct as, described above, was willful, wanton, and undertaken in reckless disregard of the plaintiffs' rights, entitling plaintiffs to an award of punitive damages in a presently undetermined amount, the exact amount to be determined upon a full trial on the merits.

### THIRD CAUSE OF ACTION
(Unjust Enrichment against all D'Alessio, Sandpiper Court, and MPE)

95.     Plaintiffs repeat, reallege and incorporates each of the allegations set forth in paragraphs 1 through 94 above, as if fully set forth in full herein.

96.     Defendants D'Alessio, Sandpiper Court, and MPE caused funds that were intended for the development of the Sandpiper Court Project to be diverted for improper purposes, including, without limitation, to other D'Alessio-controlled projects and to D'Alessio personally.

97.     Such funds included funds paid to MPE for construction that was not performed, advances to D'Alessio and MPE, funds allegedly used to pay fictitious invoices, and other funds wrongfully taken from Sandpiper Court Holding.

98.     By the wrongful acts and omissions alleged above, these defendants received funds to which they were not entitled, and were unjustly enriched at the expense of and to the detriment of plaintiffs.

99.     The circumstances are such that it is inequitable for these defendants to retain the benefit conferred upon them. No other remedy at law can adequately compensate plaintiffs for the economic damages resulting to them from the defendants' wrongful actions as alleged herein.

100.     By virtue of the foregoing, plaintiffs seek damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

### FOURTH CAUSE OF ACTION
(Conversion against all Defendants)

101.     Plaintiffs repeat, reallege, and incorporate each of the allegations set forth in paragraphs 1 through 100 above, as if fully set forth in full herein.

102.     Plaintiffs invested funds into Sandpiper Court Holding for the purposes of construction and development of the Sandpiper Court Project and to secure the returns that were promised.

103.     Each of the defendants wrongfully misappropriated the invested funds for their own benefit and to the detriment of plaintiffs.

104.     As a proximate result of defendants' acts of conversion, plaintiffs have been deprived of their rights, and have suffered damages in an amount to be determined, but believed to be in excess of $1,000,000, plus interest and costs.

105.     By virtue of the foregoing, plaintiffs seek damages from defendants in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest and costs.

### FIFTH CAUSE OF ACTION
(Breach of Guaranty against Bluestone)

106.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 105 above, as if fully set forth herein.

107.    The PPM provided that "Payment of the Investors' Equity Return and repayment of Capital Contributions in accordance with the foregoing will be guaranteed personally by the Managing Member."

108.    At all times, Bluestone has served as the managing manager of Sandpiper Court Holding.

109.    D'Alessio executed the Operating Agreement of Sandpiper Court Holding on behalf of Bluestone, as guarantor, guaranteeing the payment of the both the investor equity as well as the return on money invested.

110.    Sandpiper Court Holding has discontinued the payment of the return on investor equity.

111.    There remains due and owing to the plaintiffs unpaid returns on the equity invested in an amount to be determined at trial.

112.    There remains due and owing to the plaintiffs unrepaid investor capital of at least $200,000.

113.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against Bluestone in an amount to be determined at trial, but believed to be excess of $300,000, plus interest and costs.

## SIXTH CAUSE OF ACTION
(Breach of Contract as against Sandpiper Court Holding)

114.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 113 above, as if fully set forth herein.

115.    The Operating Agreement of Sandpiper Court Holding constitutes a valid and binding contract between plaintiffs and defendant Sandpiper Court Holding.

116.    Plaintiffs have performed all of their material obligations under that contract.

18

117.    Sandpiper Court Holding has breached its obligations to plaintiffs under the contract by failing to pay the returns on equity invested.

118.    Sandpiper Court Holding has breached its obligations to plaintiffs under the contract by failing to repay investor capital of at least $200,000.

119.    By virtue of the foregoing, plaintiffs are entitled to the recovery of damages as against Sandpiper Court Holding in an amount to be determined at trial, but believed to be excess of $300,000, plus interest and costs.

**SEVENTH CAUSE OF ACTION**

(For a Constructive Trust against D'Alessio, Sandpiper Court, and MPE)

120.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in paragraphs 1 to 119 above, as if fully set forth herein.

121.    Pursuant to the terms of the Operating Agreement, D'Alessio and Bluestone were fiduciaries obligated to act in the best interest of Sandpiper Court Holding and its investors.

122.    D'Alessio and Bluestone, on behalf of themselves and Sandpiper Court and MPE, expressly promised that they would utilize the funds invested by plaintiffs and other investors, and the funds obtained from other sources, solely for the development of the Sandpiper Court Project and not to enrich themselves.

123.    The plaintiffs invested in Sandpiper Court Holding in reliance on the representations made to them in the PPM and by D'Alessio and Bluestone.

124.    D'Alessio has threatened to turn over the Property to its secure lenders simply to relieve himself of potential liability to such lenders, and to divest the plaintiffs and all other investors of 100% of their equity.

125.    Upon information and belief, D'Alessio is attempting to sell the Property to pay off his obligations and to divest the plaintiffs and all other investors of 100% of their equity.

19

126.     A constructive trust should be imposed to prevent the defendants from being

unjustly enriched by obtaining the proceeds of a sale of the Property and using said proceeds to

satisfy their obligations while simultaneously stripping the plaintiffs of all of their capital and all

of their interest in the Property.

127.     Accordingly, a constructive trust should be imposed with respect to the Property

and any proceeds derived from the sale of said Property.

### EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction as Against All Defendants)

128.     Plaintiffs repeat, reallege, and incorporate paragraphs 1 through 127 above as if

fully set forth herein.

129.     In furtherance of his fraudulent scheme, D'Alessio and the other defendants have

left the Property financially overextended, are seeking to dispose of the Property at a massive

discount and in a manner designed to rid D'Alessio and his managing member entity of any

guarantees to the first mortgagor, and thereby to divest the investors of their capital.

130.     Unless defendants are restrained and enjoined from the transfer and/or sale of the

Property, plaintiffs will suffer irreparable harm, in that plaintiffs will be divested of their capital

interest in the Property.

131.     Plaintiffs have no adequate remedy at law.

132.     Accordingly, plaintiffs are entitled to an Order preliminary and permanently

enjoining and restraining defendants from selling or otherwise transferring the Property.

**WHEREFORE**, it is respectfully requested that an Order be entered:

a.     On the First Cause of Action as against defendants D'Alessio, Sandpiper Court

Holding, and Bluestone, awarding plaintiffs damages in an amount to be determined at trial, but

not less than $1,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

b.      On the Second Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon, as well as punitive damages in an amount to be determined at trial;

c.      On the Third Cause of Action as against defendants D'Alessio, Sandpiper Court, and MPE, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon;

d.      On the Fourth Cause of Action, awarding plaintiffs damages in an amount to be determined at trial, but not less than $1,000,000, with interest thereon;

e.      On the Fifth Cause of Action as against Bluestone, awarding plaintiffs damages in an amount to be determined at trial but not less than $300,000, with interest thereon;

f.      On the Sixth Cause of Action as against Sandpiper Court Holding, awarding plaintiffs damages in an amount to be determined at trial but not less than $300,000, with interest thereon;

g.      On the Seventh Cause of Action as against defendants D'Alessio, Sandpiper Court, and MPE, imposing a constructive trust with respect to the real property located at 3 Sandpiper Court, Westhampton, New York, or with respect to any proceeds paid as a result of any sale of the real property located at 3 Sandpiper Court, Westhampton, New York;

h.      On the Eighth Cause of Action, issuing an Order preliminarily and permanently enjoining and restraining defendants from selling or otherwise transferring the real property located at 3 Sandpiper Court, Westhampton, New York;

21

i.      Awarding the costs and fees, including reasonable attorneys' fees, to the

plaintiffs; and

j.      Awarding such other and further relief as is just and proper.

Dated: New York, New York
       March 27, 2018

                                        ROSENFELD & KAPLAN, LLP

                              By: _____

                                        Tab K. Rosenfeld
                                        Steven M. Kaplan
                                        Nicole E. Meyer
                                        1180 Avenue of the Americas
                                        Suite 1920
                                        New York, New York 10036
                                        (212) 682-1400
                                        *Attorneys for the plaintiffs*

22

## VERIFICATION

STATE OF NEW YORK     )
                       )ss.:
COUNTY OF NEW YORK  )

I, Tab K. Rosenfeld, affirm that I am an attorney admitted to practice law in the courts of the State of New York, and that I am the attorney of record for the plaintiffs in this matter. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe them to be true. The reason this verification is made by me and not by any of the plaintiffs is because each of the plaintiffs reside outside the county where the office with which I am associated maintains its office.

Dated: New York, New York
      March 27, 2018

                                             Tab K. Rosenfeld

23